# EXHIBIT A

# EXHIBIT A-1

3/22/2019 2:37 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 32167751
By: Nelson Cuero
Filed: 3/22/2019 1:59 PM

## 2019-20985 / Court: 011

CAUSE NO. _____

| | | |
|---|---|---|
| ROGELIO LOPEZ MUNOZ, et al., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiffs,* | § | |
| | § | HARRIS COUNTY, TEXAS |
| VS. | § | |
| | § | _____ JUDICIAL DISTRICT |
| INTERCONTINENTAL TERMINAL | § | |
| COMPANY, LLC, | § | |
| | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

### PLAINTIFFS' ORIGINAL PETITION

Plaintiffs ROGELIO LOPEZ MUNOZ, INDIVIDUALLY, DAISY VILLANUEVA, INDIVIDUALLY, ROGELIO LOPEZ MUNOZ AND DAISY VILLANUEVA, A/N/F EVELYN MUNOZ, A MINOR, and JANET VILLANUEVA (collectively "Plaintiffs"), submit this Original Petition, complaining of Defendant INTERCONTINENTAL TERMINAL COMPANY, LLC. ("Defendant" and/or "ITC"), and for cause would show as follows:

### I.     SUMMARY OF THE CASE

1.      Intercontinental Terminal Company, LLC ("ITC") has a long history of violating the rights of the people in La Porte, Deer Park, Galena Park, and Harris County.  From its beginning, ITC ignored and violated air pollution laws and guidelines.  ITC contributed to Harris County having one of the worst air quality environments in America, and the people of the community have suffered.  During ITC's tenure, the company earned significant sums of money while polluting the breathable atmosphere and environment of this area by failing to implement reasonable safeguards to ensure plant safety and mitigate pollution.

2.      The case at hand focuses on a single pollution act perpetrated by ITC between March 17, 2019 to the date of this filing (the "Incident").  Specifically, at around 10:30 a.m. on Sunday, March 17, 2019 a fire started in the ITC tank yard that first spread to a tank containing

naptha. The blaze then continued to spread through the ITC terminal, engulfing as many as eight units and sending a massive plume of black smoke drifting throughout Deer Park, La Porte and across the Houston area.

3.      On Wednesday, March 20, 2019, the *Houston Chronicle* quoted an unidentified worker as saying the fire may have been started when a tank overheated and a safety valve did not shut that tank down. Apparently, the unidentified worker reported that it was common for the tanks to overheat, but this time the safety mechanism did not work properly and was unable to prevent the fire. While the fire was ultimately extinguished on March 20, 2019, residents of Deer Park and La Porte awoke to another warning to shelter-in-place on March 21, 2019 due to high elevations of Benzene emitting from the ITC plant. Therefore, from March 17, 2019 through the date of this fling, ITC has released *Toluene, Xylene, Naphtha, Benzene* and other **toxic chemicals** into the atmosphere.  Residents of the surrounding communities have been negatively impacted with shelter in place conditions and prolonged school closures.

4.      Plaintiffs seek remedy for the repeated exposures that have occurred as a result of the release of chemicals from ITC's plant and also to send a message to ITC, its officers and its Board of Directors – that the wanton poisoning of an entire community is not an acceptable business practice.   In this effort, Plaintiffs seek punitive damages against ITC in excess of **$2 Million Dollars.**

## II.      PARTIES

5.      The Plaintiffs in this case are responsible, productive members of Harris County, Texas.  Each Plaintiff in this case was directly affected and harmed by the release in question. Each Plaintiff is bringing suit to recover not only damages from this release but also to force ITC to accept responsibility for the harm it did to this community.

6.      There are four Plaintiffs in this case that were severely harmed and made sick by ITC's conduct and have sought medical attention for the injuries they suffered from the Incident. It is anticipated that more Plaintiffs will intervene in this suit as this incident continues to impact the community.

7.      Plaintiff ROGELIO LOPEZ MUNOZ resides in La Porte, Harris County, Texas, and can be served through his attorneys of record.

8.      Plaintiff DAISY VILLANUEVA resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

9.      Plaintiff ROGELIO LOPEZ MUNOZ AND DAISY VILLANUEVA, A/N/F EVELYN MUNOZ, A MINOR resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

10.     Plaintiff JANET VILLANUEVA resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

11.     Defendant INTERCONTINENTAL TERMINALS COMPANY, LLC. is a corporation doing business in Texas at all times material herein. The defendant maintains a registered agent for service of process in the State of Texas and may be served with process by serving its statutory agent for service of process, CT Corporation System at 1999 Bryan Street, Ste. 900, Dallas, TX 75201.

### III.     REQUEST PURSUANT TO RULE 28

12.     To the extent that Defendant ITC is conducting business pursuant to a trade name or assumed name, then suit is brought against Defendant ITC pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiffs demand that, upon answer to this petition, that Defendant ITC answer in its correct legal and assumed name.

## IV.      JURISDICTION AND VENUE

13.      Venue is proper in this matter, in that a substantial number of the actions complained of occurred in Harris County; Plaintiffs reside in Harris County, and Defendant regularly conducts business in Harris County.

14.      The amount in controversy is within the jurisdictional limits of this Court.

## V.      FACTUAL ALLEGATIONS

15.      This case arises from a single event. On around 10:30 a.m. on Sunday, March 17, 2019 a fire started in the ITC tank yard and first spread to a tank containing naphtha. The blaze continued to spread through the ITC terminal, engulfing as many as eight units and sending a massive plume of black smoke drifting across the Houston area. The fire would not be extinguished until the early morning hours of March 20, 2019. As soon as residents of Deer Park, La Porte and other surrounding communities believed that they were finally in the clear, they were again ordered to shelter-in-place on March 21, 2019 due to elevated levels of Benzene emitting from the ITC Plant.

16.      Upon information and belief, the fire may have been started when a tank overheated, and the safety mechanism did not work properly and was unable to prevent the fire. As a result, from March 17, 2019 through the date of this fling, ITC has released *Toluene, Xylene, Naphtha, Benzene* and other *toxic chemicals* into the atmosphere.  The above mentioned Plaintiffs are all individuals who were exposed to toxic chemicals from the release and had physical symptoms due to this release.

## VI.      CAUSES OF ACTION

### A.      NEGLIGENCE

17.      Plaintiffs re-allege each and every allegation set forth above.

18.     Upon information and belief, Plaintiffs aver that the ITC plant fire, and the resulting injuries suffered by Plaintiffs were caused by the negligence and fault of the Defendant in the following non-exclusive particulars:

a.      Failure to maintain a safe work place;

b.      Failure to have a reliable system or device at its plant to prevent the fire or adequately warn the community of the fire;

c.      Failure to perform work in a safe and prudent manner;

d.      Failure to exercise reasonable and prudent care in the operations which were occurring at the ITC plant on the dates at issue;

e.      Failure to implement, follow and enforce proper operations procedures;

f.      Failure to implement, follow and enforce proper safety procedures;

g.      Failure to implement, follow, and enforce proper hazard analysis;

h.      Operating the Plant with institutional ignorance of or defiance to a culture of safety and accountability;

i.      Failing to inspect and maintain the equipment associated with the refining storage process;

j.      Ignoring process safety hazard data related to past incidents at the Plant;

k.      Causing and permitting to be caused a release of numerous toxic chemicals which resulted in a continuous toxic cloud over Deer Park, La Porte and other parts of Harris County;

l.      Operating the Plant without appropriate and trained staffing and supervision of Plant units;

m.      Operating the Plant with equipment and processes that defy reasonable engineering, industry and regulatory practices;

n.      Managerial acceptance or encouragement of normalized deviation from appropriate refining storage procedures;

o.      Failing to implement, follow, enforce and/or train regarding proper hazard analysis;

5

p.      Failing to maintain a reliable system and/or device at the Plant to prevent the fire;

q.      Undertaking a conscious effort to reduce costs and staffing at the expense of safety;

r.      Continuing to operate damaged and dysfunctional equipment at the expense of safety and well being of the workers at the Plant and the Deer Park, La Porte, surrounding Harris County community;

s.      Failing to adopt and comply with proper operating procedures;

t.      Improperly supervising and failing to supervise operation of the unit;

u.      Ratifying and approving improper and dangerous operating procedures, routines and practices;

v.      Failing to make proper modifications and perform appropriate maintenance;

w.      Failing to budget proper maintenance and required modifications, improvements and updates to the equipment and facility;

x.      Failing to properly warn and notify the neighboring residents regarding the release and emissions from prior and subsequent releasing events;

y.      Failing to have a proper air monitoring network in place that could warn the surrounding communities of harmful emissions being released during the fire; and

z.      Failing to have proper fire suppression devices to contain fires at the plant

aa.     Such other acts and omissions which may be discovered through discovery and presented at trial.

19.     As a result of these negligent acts and omissions, Plaintiffs have been damaged.

**B.      NEGLIGENT TRAINING**

20.     Plaintiffs re-allege each and every allegation set forth above.

21.     ITC had a legal duty to use ordinary care in adequately training its employees. ITC failed to provide adequate training to its employees by among other things, failing to properly/adequately train its employees in supervising and assisting third parties at the worksite and/or failing to properly/adequately train its employees in operation and maintenance of the

6

Plant. A reasonably prudent employer would have provided adequate training to its employees beyond what was given; to the extent any training was given. As a result of its negligent training, ITC's employees were negligent in their operation of the Plant. ITC's failure to adequately train its employees was a proximate cause of the injuries to the Plaintiffs.

C.     **NEGLIGENCE *PER SE***

22.     Plaintiffs re-allege each and every allegation set forth above.

23.     Defendant's actions leading up, during and after the Incident violate Texas and federal law (including without limitation, the Texas Clean Air Act, Chapter 382 of the Texas Health and Safety Code, Chapter 7 of the Texas Water Code, and TCEQ rules and orders promulgated under these statutes) which are intended to protect the public's health and safety by regulating Plant operations, emissions and the reporting of toxic chemical emissions, releases, leaks and spills. Plaintiffs are among those classes of persons intended to be protected by the environmental laws of this state and country.

24.     As a result of these unprecedented acts and omissions by Defendant, such violations of state law have resulted in a breach of duty to Plaintiffs. The aforementioned flagrant, historic and continuous violations by the Defendant of state and federal laws and regulations presents the proximate cause of Plaintiffs' damages.

D.     **GROSS NEGLIGENCE/MALICE**

25.     Plaintiffs re-allege each and every allegation set forth above.

26.     As set forth above, Defendant's acts and omissions, when viewed from the standpoint of the actors at the time of the occurrence at issue, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

27.     Further, Defendant's conduct illustrates not only an attitude of conscious indifference to the rights, safety and welfare of Plaintiffs and others, but also shows Defendant's actual and subjective awareness of the dangers of such conduct.

28.     Nevertheless, Defendant proceeded with a conscious indifference to the rights, safety or welfare of others, including Plaintiffs.  Thus, Defendant's were grossly negligent and acted with malice and as a result, Plaintiffs suffered damages.

**E.      NUISANCE**

29.     Plaintiffs re-allege each and every allegation set forth above.

30.     Plaintiffs include those who own or occupy land near the Plant during the relevant time period. Defendant's acts and omissions resulting in the Incident caused the Plant to be a private and public nuisance and a nuisance *per se*.

31.     The ongoing release of chemicals and particulate matter from the Incident substantially trespassed upon, interfered with, and invaded the Plaintiffs' use and enjoyment of their land, as well as the interests of those owning or occupying land in or near the Plant by Defendant's intentional conduct, negligence, gross negligence, and negligence as a matter of law. Defendant's acts and omissions clearly impair the comfortable enjoyment of life and property for those who own or occupy property near the Plant and have caused such persons extreme annoyance, discomfort, fear and loss of peace of mind.

32.     Further, the acts and omissions complained herein caused contamination of one or more Plaintiffs' property, the soil on and adjacent to one or more of Plaintiffs' property, the air over one or more Plaintiffs' property, and further caused the inside of one or more Plaintiffs' homes to be contaminated with toxins.  This contamination was and is harmful to the health of one or more Plaintiff property owners, was and is offensive to their senses, and will obstruct the

8

free use and enjoyment of their property, including the right to sell their property at its fair market value.

33.     As a direct and proximate consequence of the nuisance created by Defendant, Plaintiffs have been damaged.

**F.     TRESPASS**

34.     Plaintiffs re-allege each and every allegation set forth above.

35.     Plaintiffs would show that Defendant, in furtherance of its business interests, caused the aforementioned toxins to be produced and released during the conduct of their business at the Plant during the Incident.

36.     Defendant, at all relevant times, negligently, recklessly or intentionally, or as a result of the abnormally dangerous activity, caused the property of Plaintiffs to be invaded by the aforementioned toxins, causing great and substantial harm to the person, land and chattels of the property-owning Plaintiffs.

37.     As a direct and proximate result of Defendant's trespass, Plaintiffs have been damaged.

**G.     STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY**

38.     Plaintiffs re-allege each and every allegation set forth above.

39.     Plaintiffs further allege that the operation of the Plant (leading up to, during and after the Incident) in its original and damaged/defective condition was extremely hazardous and fraught with danger and therefore, constituted an ultra-hazardous activity under Texas law. Accordingly, Defendant is strictly liable for Plaintiffs' injuries and damages proximately caused by the release of toxic chemicals into the atmosphere.

**H.     VICARIOUS/DERIVATIVE AND JOINT THEORIES OF LIABILITY**

40.    Plaintiffs re-allege each and every allegation set forth above.

41.    ITC is legally responsible to Plaintiffs for the negligent conduct of its vice-principals and for the negligent conduct of ITC's other employees, agents, servants and representatives (collectively the "ITC employees") under the legal doctrines of *respondeat superior*, agency and/or ostensible agency because ITC's vice principals and the ITC employees were at all times material hereto agents, ostensible agents, servants and/or employees of ITCs, and were acting within the course and scope of such agency, servitude or employment.  As a result thereof, ITC is vicariously liable for all negligence of its vice-principals and ITC's other employees, agents, servants and representatives.

42.    Pleading further, and in the alternative, and without waiving the foregoing, Plaintiffs would also show that, at all relevant times, ITC's vice-principals were engaged in the performance of non-delegable duties of the business of ITC.  Further, ITC authorized or ratified the conduct of its vice principals.

43.    In light of the above, ITC is liable to Plaintiffs for their damages under the doctrine of *respondeat superior*, traditional principles of agency law, "vice principal" liability, and any other applicable theory of law.

I.    ***RES IPSA LOQUITOR***

44.    Plaintiffs re-allege each and every allegation set forth above.

45.    Plaintiffs also specifically plead the doctrine of *res ipsa loquitor*. Plaintiffs would show that the character of the March 2019 release is such that it would not ordinarily happen in the absence of negligence and the acts or omissions of the equipment and personnel that led to the releases were under the control of the Defendant, its agents, servants, employees and vice-principals at all relevant times.

## VII.   DAMAGES

46.     Plaintiffs re-allege each and every allegation set forth above.

47.     As a direct and proximate result of Defendant's acts and omissions as set forth above, Plaintiffs have incurred one or more of the following categories of damages:

   a.  Conscious physical and mental pain and suffering and anguish, past and future;
   b.  Loss of enjoyment of life and peace of mind, past and future;
   c.  Loss of wages/earnings;
   d.  Loss of enjoyment of real property and homes, and loss/diminution of property value, past and future;
   e.  Reasonable and necessary medical, counseling, psychiatric, therapeutic and related expenses, past and future; and
   f.  Such other damages as will be shown at trial.

## VIII.   PUNITIVE DAMAGES

48.     Plaintiffs re-allege each and every allegation set forth above.

49.     The injuries sustained by Plaintiffs resulted directly from Defendant's gross negligence and malice. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a).

50.     Furthermore, ITC is liable for the damages attributed to its vice principals because they have authority over the nondelegable responsibility of ITC.

51.      Any caps on punitive damages, under state or federal law, should not be applied because Defendant's conduct disqualifies it from any caps on exemplary damages.

## IX.   PRAYER

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for economic, compensatory and special damages as set forth above; punitive damages; pre-judgment and post-judgment interest; costs of litigation; and for such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

11

Respectfully Submitted,

KOLODNY LAW FIRM, PLLC

*/s/ Alan Kolodny*
Alan Kolodny
State Bar No: 24056882
Email: akolodny@fko-law.com
Rashon Murrill
State Bar No: 24110622
Email: rmurrill@fko-law.com
1011 Augusta Dr., Suite 111
Houston, Texas 77057
Telephone: (713) 532-4474
Facsimile: (713) 785-0597

and

*/s/ Benjamin R. Roberts*
Benjamin R. Roberts
State Bar No. 24068038
Benjamin Roberts Law, PLLC
440 Louisiana St., Suite 900
Houston, Texas 77002
(713) 275-2183 (Telephone)
(713) 249-58190 (Direct)
(713) 456-2831 (Facsimile)
ben@benjaminrobertslaw.com

and

*/s/ R. Bradley O'Neill*
R. Bradley O'Neill
State Bar No. 24065837
The O'Neill Firm, PLLC
440 Louisiana St., Suite 900
Houston, Texas 77002
Telephone: (713) 416-7370
Fax: (713) 758-0397
boneill@oneillfirm.com

**ATTORNEYS FOR PLAINTIFFS**

3/22/2019 2:37:40 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 32167751
By: CUERO, NELSON
Filed: 3/22/2019 1:59:45 PM

# CIVIL PROCESS REQUEST

## 2019-20985 / Court: 011

**FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING**
**FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED**

**CASE NUMBER:** _____    **CURRENT COURT:** _____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): _Plaintiffs' Original Petition_

**FILE DATE OF MOTION:** _____ March 22, 2019 _____
                                    Month/        Day/         Year

**SERVICE TO BE ISSUED ON** (Please List Exactly As The Name Appears In The Pleading To Be Served):

1.  NAME:   Intercontinental Terminal Company, LLC

    ADDRESS:   1999 Bryan Street, Ste. 900 Dallas, Texas 75201

    AGENT, (*if applicable*):   CT Corporation  System

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): _____

**SERVICE BY** (*check one*):
- ☐ **ATTORNEY PICK-UP**                      ☐ **CONSTABLE**
- ☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____    Phone: _____
- ☐ **MAIL**                                   ☐ **CERTIFIED MAIL**
- ☐ **PUBLICATION:**
     Type of Publication:    ☐ **COURTHOUSE DOOR,  or**
                             ☐ **NEWSPAPER OF YOUR CHOICE:** _____
- ☒ **OTHER,** *explain*  Please mail to our office the citation and service copy

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*

2.  NAME: _____

    ADDRESS: _____

    AGENT, (*if applicable*): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): _____

**SERVICE BY** (*check one*):
- ☐ **ATTORNEY PICK-UP**                      ☐ **CONSTABLE**
- ☐ **CIVIL PROCESS SERVER** -  Authorized Person to Pick-up: _____    Phone: _____
- ☐ **MAIL**                                   ☐ **CERTIFIED MAIL**
- ☐ **PUBLICATION:**
     Type of Publication:    ☐ **COURTHOUSE DOOR,  or**
                             ☐ **NEWSPAPER OF YOUR CHOICE:** _____
- ☐ **OTHER,** *explain* _____

**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME:  Alan Kolodny _____    TEXAS BAR NO./ID NO.   24056882

MAILING ADDRESS:  1011 Augusta Dr. Ste. 111 Houston, Texas 77057

PHONE NUMBER: _713_____   ___532-4474_____    FAX NUMBER: _713____   __785-0597____
                area code        phone number                        area code      fax number

EMAIL ADDRESS:  Akolodny@fko-law.com

CIVPI08 Revised 9/3/09

# EXHIBIT A-2

4/3/2019 10:46 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 32463857
By: SHANNON NORTH-GONZALEZ
Filed: 4/3/2019 10:46 AM

### CAUSE NO. 2019-20985

| | | |
|---|---|---|
| ROGELIO LOPEZ MUNOZ, et al., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiffs,* | § | |
| | § | HARRIS COUNTY, TEXAS |
| VS. | § | |
| | § | 11TH JUDICIAL DISTRICT |
| INTERCONTINENTAL TERMINAL | § | |
| COMPANY, LLC, | § | |
| | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

### <u>PLAINTIFFS' FIRST AMENDED PETITION</u>

Plaintiffs ROGELIO LOPEZ MUNOZ, INDIVIDUALLY, DAISY VILLANUEVA, INDIVIDUALLY, ROGELIO LOPEZ MUNOZ AND DAISY VILLANUEVA, A/N/F E.M., A MINOR, JANET VILLANUEVA, JUSTIN BRALY, INDIVIDUALLY, and JUSTIN BRALY A/N/F G.M.B., A MINOR, LEO BUENO, FABIOLA BUENO and JULIO DELEON, EACH INDIVIDUALLY and A/N/F, A.D., A MINOR, and J.D., A MINOR, GARY CHIARLONE, DEBORAH CRON, INDIVIDUALLY, DEBORAH CRON, A/N/F J.S., A MINOR, SANDRA GONZALES, DEBORAH GAMEL, DEANNA HARPER-CONLEY, INDIVIDUALLY, DEANNA HARPER-CONLEY, A/N/F A.H., A MINOR, BENILDE HERNANDEZ, INDIVIDUALLY, ABELARDO SANCHEZ, INDIVIDUALLY, BENILDE HERNANDEZ AND ABELARDO SANCHEZ, A/N/F M.H. I, A MINOR, M.H. II, A MINOR, L.H., A MINOR, M.H. III, A MINOR, RENEE HERNANDEZ, GARY LANDERY, JULIE MUNIZ, JOHN NOVELLI, CHASTITY PARINO, VIOLET PERALES, INDIVIDUALLY, ISAAC GARZA, INDIVIDUALLY, VIOLET PERALES AND ISAAC GARZA, A/N/F I.G., A MINOR, A.G., A MINOR, S.G., A MINOR, MATIAS REINHARDT, SANDRA REYES, FELICIA WILLIAMS, D'ANDRE JACKSON II, JAMES BINGHAM and MARISSA BINGHAM EACH INDIVIDUALLY and A/N/F D.G., A MINOR, BRECCIA CARMONA

AND DANIEL HERNANDEZ EACH INDIVIDUALLY and A/N/F J.H., A MINOR, MARISSA SALINAS, ESTHER BRIONES A/N/F A.C., A MINOR, ASADULLAH KHAN, CONSUELO GARCIA SAENZ, ANGEL GUZMAN, FELIX HERERRA, LIZETT VELEZ, INDIVIDUALLY, LIZETTE VELEZ A/N/F E.D., A MINOR and J.D., A MINOR, CHARLES WAYNE COLLINS, INDIVIDUALLY, and CHARLES WAYNE COLLINS A/N/F T.C., A MINOR (collectively "Plaintiffs"), submit this First Amended Petition, complaining of Defendant INTERCONTINENTAL TERMINAL COMPANY, LLC. ("Defendant" and/or "ITC"), and for cause would show as follows:

## I.      SUMMARY OF THE CASE

1.      Intercontinental Terminal Company, LLC ("ITC") has a long history of violating the rights of the people in La Porte, Deer Park, Galena Park, and Harris County.  From its beginning, ITC ignored and violated air pollution laws and guidelines.  ITC contributed to Harris County having one of the worst air quality environments in America, and the people of the community have suffered.  During ITC's tenure, the company earned significant sums of money while polluting the breathable atmosphere and environment of this area by failing to implement reasonable safeguards to ensure plant safety and mitigate pollution.

2.      The case at hand focuses on a single pollution act perpetrated by ITC between March 17, 2019 to the date of this filing (the "Incident").  Specifically, at around 10:30 a.m. on Sunday, March 17, 2019 a fire started in the ITC tank yard that first spread to a tank containing naphtha. The blaze then continued to spread through the ITC terminal, engulfing as many as eight units and sending a massive plume of black smoke drifting throughout Deer Park, La Porte and across the Houston area.

2

3.      On Wednesday, March 20, 2019, the *Houston Chronicle* quoted an unidentified worker as saying the fire may have been started when a tank overheated and a safety valve did not shut that tank down. Apparently, the unidentified worker reported that it was common for the tanks to overheat, but this time the safety mechanism did not work properly and was unable to prevent the fire. While the fire was ultimately extinguished on March 20, 2019, residents of Deer Park and La Porte awoke to another warning to shelter-in-place on March 21, 2019 due to high elevations of Benzene emitting from the ITC plant. After multiple days of being exposed to chemicals, smoke, and other toxic pollutants, Plaintiffs were again alarmed to find that the ITC plant had once again reignited in the afternoon of March 22, 2019. Therefore, from March 17, 2019 through the date of this fling, ITC has released *Toluene, Xylene, Naphtha*, *Benzene* and other *toxic chemicals* into the atmosphere.  Residents of the surrounding communities have been negatively impacted with shelter in place conditions and prolonged school closures.

4.      Plaintiffs seek remedy for the repeated exposures that have occurred as a result of the release of chemicals from ITC's plant and also to send a message to ITC, its officers and its Board of Directors – that the wanton poisoning of an entire community is not an acceptable business practice.  In this effort, Plaintiffs seek punitive damages against ITC in excess of **$2 Million Dollars.**

## II.      PARTIES

5.      The Plaintiffs in this case are responsible, productive members of Harris County, Texas.  Each Plaintiff in this case was directly affected and harmed by the release in question. Each Plaintiff is bringing suit to recover not only damages from this release but also to force ITC to accept responsibility for the harm it did to this community.

6.     There are many Plaintiffs in this case that were severely harmed and made sick by ITC's conduct and have sought medical attention for the injuries they suffered from the Incident. It is anticipated that more Plaintiffs will intervene in this suit as this incident continues to impact the community.

7.     Plaintiff ROGELIO LOPEZ MUNOZ resides in La Porte, Harris County, Texas, and can be served through his attorneys of record.

8.     Plaintiff DAISY VILLANUEVA resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

9.     Plaintiff ROGELIO LOPEZ MUNOZ AND DAISY VILLANUEVA, A/N/F E.M., A MINOR resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

10.     Plaintiff JANET VILLANUEVA resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

11.     Plaintiff JUSTIN BRALY resides in La Porte, Harris County, Texas, and can be served through his attorneys of record.

12.     Plaintiff JUSTIN BRALY A/N/F G.M.B. resides in La Porte, Harris County, Texas, and can be served through his attorneys of record.

13.     Plaintiff LEO BUENO resides in Pasadena, Harris County, Texas, and can be served through his attorneys of record.

14.     Plaintiff FABIOLA BUENO resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

15.     Plaintiff JULIO DELEON resides in Deer Park, Harris County, Texas, and can be served through his attorneys of record.

16.    Plaintiffs FABIOL BUENO and JULIO DELEON A/N/F A.D., A MINOR, reside in Deer Park, Harris County, Texas, and can be served through their  attorneys of record.

17.    Plaintiffs FABIOL BUENO and JULIO DELEON A/N/F J.D., A MINOR reside in Deer Park, Harris County, Texas and can be served through their attorneys of record.

18.    Plaintiff GARY CHIARLONE resides in Houston, Harris County, Texas, and can be served through his attorneys of record.

19.    Plaintiff DEBORAH CRON resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

20.    Plaintiff DEBORAH CRON, A/N/F J.S., A MINOR resides in La Porte, Harris County, Texas, and can be served through his attorneys of record.

21.    Plaintiff SANDRA GONZALES resides in La Porte, Harris County, Texas, and can be served through her attorneys of record.

22.    Plaintiff DEBORAH GAMEL resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

23.    Plaintiff DEANNA HARPER-CONLEY resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

24.    Plaintiff DEANNA HARPER-CONLEY, A/N/F A.H., A MINOR resides in Deer Park, Harris County, Texas, and can be served through his attorneys of record.

25.    Plaintiff BENILDE HERNANDEZ resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

26.    Plaintiff ABELARDO SANCHEZ resides in Deer Park, Harris County, Texas, and can be served through his attorneys of record.

27.     Plaintiff BENILDE HERNANDEZ AND ABELARDO SANCHEZ, A/N/F M.H. I, A MINOR resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

28.     Plaintiff BENILDE HERNANDEZ AND ABELARDO SANCHEZ, A/N/F M.H. II, A MINOR resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

29.     Plaintiff BENILDE HERNANDEZ AND ABELARDO SANCHEZ, A/N/F L.H., A MINOR resides in Deer Park, Harris County, Texas, and can be served through his attorneys of record.

30.     Plaintiff BENILDE HERNANDEZ AND ABELARDO SANCHEZ, A/N/F M.H. III, A MINOR resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

31.     Plaintiff RENEE HERNANDEZ resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

32.     Plaintiff GARY LANDERY resides in Houston, Harris County, Texas, and can be served through his attorneys of record.

33.     Plaintiff JULIE MUNIZ resides in Deer Park, Harris County, Texas, and can be served through her attorneys of record.

34.     Plaintiff JOHN NOVELLI resides in Houston, Harris County, Texas, and can be served through his attorneys of record.

35.     Plaintiff CHASTITY PARINO resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

36.     Plaintiff VIOLET PERALES resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

37.     Plaintiff ISAAC GARZA resides in Pasadena, Harris County, Texas, and can be served through his attorneys of record.

38.     Plaintiff VIOLET PERALES AND ISAAC GARZA, A/N/F I.G., A MINOR resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

39.     Plaintiff VIOLET PERALES AND ISAAC GARZA, A/N/F A.G., A MINOR resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

40.     Plaintiff VIOLET PERALES AND ISAAC GARZA, A/N/F S.G., A MINOR resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

41.     Plaintiff MATIAS REINHARDT resides in Deer Park, Harris County, Texas, and can be served through his attorneys of record.

42.     Plaintiff SANDRA REYES resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

43.     Plaintiff FELICIA WILLIAMS resides in Houston, Harris County, Texas, and can be served through her attorneys of record.

44.     Plaintiff D'ANDRE JACKSON II resides in Houston, Harris County, Texas, and can be served through his attorneys of record.

45.     Plaintiff JAMES BINGHAM resides in Deer Park, Harris County, Texas and can be served through his attorneys of record.

46.     Plaintiff MARISSA BINGHAM resides in Deer Park, Harris County, Texas and can be served through her attorneys of record.

47.     Plaintiff JAMES BINGHAM and MARISSA BINGHAM A/N/F D.G., A MINOR reside in Deer Park, Harris County, Texas and can be served through their attorneys of record.

48.     Plaintiff DANIEL HERNANDEZ resides in Deer Park, Harris County, Texas and can be served through his attorneys of record.

49.     Plaintiff BRECCIA CARMONA resides in Deer Park, Harris County, Texas and can be served through their attorneys of record.

50.     Plaintiffs BRECCIA CARMONA AND DANIEL HERNANDEZ A/N/F J.H., A MINOR reside in Deer Park, Harris County, Texas and can be served through their attorneys of record.

51.     Plaintiff ESTHER BRIONES A/N/F A.C., A MINOR, resides in Pasadena, Harris County, Texas and can be served through her attorneys of record.

52.     Plaintiff ASADULLAH KHAN resides in Stafford, Fort Bend County, Texas, but was exposed at his place of work at the San Jacinto Community College in Pasadena, Harris County, Texas. Plaintiff can be served through his attorneys of record.

53.     Plaintiff CONSUELO GARCIA SAENZ resides in Pasadena, Harris County, Texas and can be served through her attorneys of record.

54.     Plaintiff ANGEL GUZMAN resides in The Woodlands, Montgomery County, Texas, but was exposed at his place of work in Deer Park, Harris County, Texas. Plaintiff can be served through his attorneys of record.

55.     Plaintiff FELIX HERERRA resides in Pasadena, Harris County, Texas and can be served through her attorneys of record.

56.     Plaintiff LIZETT VELEZ resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

57.     Plaintiff LIZETT VELEZ, A/N/F E.D., A MINOR resides in Pasadena, Harris County, Texas, and can be served through her attorneys of record.

58.     Plaintiff LIZETT VELEZ, A/N/F J.D., A MINOR resides in Pasadena, Harris County, Texas, and can be served through their attorneys of record.

59.     CHARLES WAYNE COLLINS resides in La Porte, Harris County, Texas and can be served through his attorneys of record.

60.     CHARLES WAYNE COLLINS, A/N/F T.C., A MINOR, resides in La Porte, Harris County, Texas and can be served through their attorneys of record.

61.     Defendant INTERCONTINENTAL TERMINALS COMPANY, LLC. is a corporation doing business in Texas at all times material herein. The defendant maintains a registered agent for service of process in the State of Texas and may be served with process by serving its statutory agent for service of process, CT Corporation System at 1999 Bryan Street, Ste. 900, Dallas, TX 75201.

### III.     REQUEST PURSUANT TO RULE 28

62.     To the extent that Defendant ITC is conducting business pursuant to a trade name or assumed name, then suit is brought against Defendant ITC pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiffs demand that, upon answer to this petition, that Defendant ITC answer in its correct legal and assumed name.

### IV.     JURISDICTION AND VENUE

63.     Venue is proper in this matter, in that a substantial number of the actions complained of occurred in Harris County; Plaintiffs reside in Harris County, and Defendant regularly conducts business in Harris County. Specifically, Defendant's principal place of business and "nerve center" is in Harris County. In addition, Defendant maintains continuous

9

and systematic contacts in the State of Texas, thus making it subject to the jurisdiction of this Court.

64.     The amount in controversy is within the jurisdictional limits of this Court.

## V.     FACTUAL ALLEGATIONS

65.     This case arises from a single event. On around 10:30 a.m. on Sunday, March 17, 2019 a fire started in the ITC tank yard and first spread to a tank containing naphtha. The blaze continued to spread through the ITC terminal, engulfing as many as eight units and sending a massive plume of black smoke drifting across the Houston area. The fire would not be extinguished until the early morning hours of March 20, 2019. As soon as residents of Deer Park, La Porte and other surrounding communities believed that they were finally in the clear, they were again ordered to shelter-in-place on March 21, 2019 due to elevated levels of Benzene emitting from the ITC Plant. After multiple days of being exposed to chemicals, smoke, and other toxic pollutants, Plaintiffs were again alarmed to find that the ITC plant had once again reignited in the afternoon of March 22, 2019.

66.     Upon information and belief, the fire may have been started when a tank overheated, and the safety mechanism did not work properly and was unable to prevent the fire. As a result, from March 17, 2019 through the date of this fling, ITC has released *Toluene, Xylene, Naphtha, Benzene* and other *toxic chemicals* into the atmosphere.  The above mentioned Plaintiffs are all individuals who were exposed to toxic chemicals from the release and had physical symptoms due to this release.

## VI.     CAUSES OF ACTION

### A.     NEGLIGENCE

67.     Plaintiffs re-allege each and every allegation set forth above.

10

68.     Upon information and belief, Plaintiffs aver that the ITC plant fire, and the resulting injuries suffered by Plaintiffs were caused by the negligence and fault of the Defendant in the following non-exclusive particulars:

a.      Failure to maintain a safe work place;

b.      Failure to have a reliable system or device at its plant to prevent the fire or adequately warn the community of the fire;

c.      Failure to perform work in a safe and prudent manner;

d.      Failure to exercise reasonable and prudent care in the operations which were occurring at the ITC plant on the dates at issue;

e.      Failure to implement, follow and enforce proper operations procedures;

f.      Failure to implement, follow and enforce proper safety procedures;

g.      Failure to implement, follow, and enforce proper hazard analysis;

h.      Operating the Plant with institutional ignorance of or defiance to a culture of safety and accountability;

i.      Failing to inspect and maintain the equipment associated with the refining storage process;

j.      Ignoring process safety hazard data related to past incidents at the Plant;

k.      Causing and permitting to be caused a release of numerous toxic chemicals which resulted in a continuous toxic cloud over Deer Park, La Porte and other parts of Harris County;

l.      Operating the Plant without appropriate and trained staffing and supervision of Plant units;

m.      Operating the Plant with equipment and processes that defy reasonable engineering, industry and regulatory practices;

n.      Managerial acceptance or encouragement of normalized deviation from appropriate refining storage procedures;

o.      Failing to implement, follow, enforce and/or train regarding proper hazard analysis;

p.     Failing to maintain a reliable system and/or device at the Plant to prevent the fire;

q.     Undertaking a conscious effort to reduce costs and staffing at the expense of safety;

r.     Continuing to operate damaged and dysfunctional equipment at the expense of safety and well being of the workers at the Plant and the Deer Park, La Porte, surrounding Harris County community;

s.     Failing to adopt and comply with proper operating procedures;

t.     Improperly supervising and failing to supervise operation of the unit;

u.     Ratifying and approving improper and dangerous operating procedures, routines and practices;

v.     Failing to make proper modifications and perform appropriate maintenance;

w.     Failing to budget proper maintenance and required modifications, improvements and updates to the equipment and facility;

x.     Failing to properly warn and notify the neighboring residents regarding the release and emissions from prior and subsequent releasing events;

y.     Failing to have a proper air monitoring network in place that could warn the surrounding communities of harmful emissions being released during the fire; and

z.     Failing to have proper fire suppression devices to contain fires at the plant

aa.    Such other acts and omissions which may be discovered through discovery and presented at trial.

69.    As a result of these negligent acts and omissions, Plaintiffs have been damaged.

**B.    NEGLIGENT TRAINING**

70.    Plaintiffs re-allege each and every allegation set forth above.

71.    ITC had a legal duty to use ordinary care in adequately training its employees. ITC failed to provide adequate training to its employees by among other things, failing to properly/adequately train its employees in supervising and assisting third parties at the worksite and/or failing to properly/adequately train its employees in operation and maintenance of the

Plant. A reasonably prudent employer would have provided adequate training to its employees beyond what was given; to the extent any training was given. As a result of its negligent training, ITC's employees were negligent in their operation of the Plant.  ITC's failure to adequately train its employees was a proximate cause of the injuries to the Plaintiffs.

### C.    NEGLIGENCE *PER SE*

72.    Plaintiffs re-allege each and every allegation set forth above.

73.    Defendant's actions leading up, during and after the Incident violate Texas and federal law (including without limitation, the Texas Clean Air Act, Chapter 382 of the Texas Health and Safety Code, Chapter 7 of the Texas Water Code, and TCEQ rules and orders promulgated under these statutes) which are intended to protect the public's health and safety by regulating Plant operations, emissions and the reporting of toxic chemical emissions, releases, leaks and spills. Plaintiffs are among those classes of persons intended to be protected by the environmental laws of this state and country.

74.    As a result of these unprecedented acts and omissions by Defendant, such violations of state law have resulted in a breach of duty to Plaintiffs. The aforementioned flagrant, historic and continuous violations by the Defendant of state and federal laws and regulations presents the proximate cause of Plaintiffs' damages.

### D.    GROSS NEGLIGENCE/MALICE

75.    Plaintiffs re-allege each and every allegation set forth above.

76.    As set forth above, Defendant's acts and omissions, when viewed from the standpoint of the actors at the time of the occurrence at issue, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

77.     Further, Defendant's conduct illustrates not only an attitude of conscious indifference to the rights, safety and welfare of Plaintiffs and others, but also shows Defendant's actual and subjective awareness of the dangers of such conduct.

78.     Nevertheless, Defendant proceeded with a conscious indifference to the rights, safety or welfare of others, including Plaintiffs.  Thus, Defendant's were grossly negligent and acted with malice and as a result, Plaintiffs suffered damages.

**E.     NUISANCE**

79.     Plaintiffs re-allege each and every allegation set forth above.

80.     Plaintiffs include those who own or occupy land near the Plant during the relevant time period. Defendant's acts and omissions resulting in the Incident caused the Plant to be a private and public nuisance and a nuisance *per se*.

81.     The ongoing release of chemicals and particulate matter from the Incident substantially trespassed upon, interfered with, and invaded the Plaintiffs' use and enjoyment of their land, as well as the interests of those owning or occupying land in or near the Plant by Defendant's intentional conduct, negligence, gross negligence, and negligence as a matter of law. Defendant's acts and omissions clearly impair the comfortable enjoyment of life and property for those who own or occupy property near the Plant and have caused such persons extreme annoyance, discomfort, fear and loss of peace of mind.

82.     Further, the acts and omissions complained herein caused contamination of one or more Plaintiffs' property, the soil on and adjacent to one or more of Plaintiffs' property, the air over one or more Plaintiffs' property, and further caused the inside of one or more Plaintiffs' homes to be contaminated with toxins.  This contamination was and is harmful to the health of one or more Plaintiff property owners, was and is offensive to their senses, and will obstruct the

free use and enjoyment of their property, including the right to sell their property at its fair market value.

83.     As a direct and proximate consequence of the nuisance created by Defendant, Plaintiffs have been damaged.

### F.     TRESPASS

84.     Plaintiffs re-allege each and every allegation set forth above.

85.     Plaintiffs would show that Defendant, in furtherance of its business interests, caused the aforementioned toxins to be produced and released during the conduct of their business at the Plant during the Incident.

86.     Defendant, at all relevant times, negligently, recklessly or intentionally, or as a result of the abnormally dangerous activity, caused the property of Plaintiffs to be invaded by the aforementioned toxins, causing great and substantial harm to the person, land and chattels of the property-owning Plaintiffs.

87.     As a direct and proximate result of Defendant's trespass, Plaintiffs have been damaged.

### G.     STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY

88.     Plaintiffs re-allege each and every allegation set forth above.

89.     Plaintiffs further allege that the operation of the Plant (leading up to, during and after the Incident) in its original and damaged/defective condition was extremely hazardous and fraught with danger and therefore, constituted an ultra-hazardous activity under Texas law. Accordingly, Defendant is strictly liable for Plaintiffs' injuries and damages proximately caused by the release of toxic chemicals into the atmosphere.

### H.     VICARIOUS/DERIVATIVE AND JOINT THEORIES OF LIABILITY

15

90.     Plaintiffs re-allege each and every allegation set forth above.

91.     ITC is legally responsible to Plaintiffs for the negligent conduct of its vice-principals and for the negligent conduct of ITC's other employees, agents, servants and representatives (collectively the "ITC employees") under the legal doctrines of *respondeat superior*, agency and/or ostensible agency because ITC's vice principals and the ITC employees were at all times material hereto agents, ostensible agents, servants and/or employees of ITCs, and were acting within the course and scope of such agency, servitude or employment.  As a result thereof, ITC is vicariously liable for all negligence of its vice-principals and ITC's other employees, agents, servants and representatives.

92.     Pleading further, and in the alternative, and without waiving the foregoing, Plaintiffs would also show that, at all relevant times, ITC's vice-principals were engaged in the performance of non-delegable duties of the business of ITC.  Further, ITC authorized or ratified the conduct of its vice principals.

93.     In light of the above, ITC is liable to Plaintiffs for their damages under the doctrine of *respondeat superior*, traditional principles of agency law, "vice principal" liability, and any other applicable theory of law.

**I.      *RES IPSA LOQUITOR***

94.     Plaintiffs re-allege each and every allegation set forth above.

95.     Plaintiffs also specifically plead the doctrine of *res ipsa loquitor*. Plaintiffs would show that the character of the March 2019 release is such that it would not ordinarily happen in the absence of negligence and the acts or omissions of the equipment and personnel that led to the releases were under the control of the Defendant, its agents, servants, employees and vice-principals at all relevant times.

## VII.   DAMAGES

96.     Plaintiffs re-allege each and every allegation set forth above.

97.     As a direct and proximate result of Defendant's acts and omissions as set forth above, Plaintiffs have incurred one or more of the following categories of damages:

   a.  Conscious physical and mental pain and suffering and anguish, past and future;
   b.  Loss of enjoyment of life and peace of mind, past and future;
   c.  Loss of wages/earnings;
   d.  Loss of enjoyment of real property and homes, and loss/diminution of property value, past and future;
   e.  Reasonable and necessary medical, counseling, psychiatric, therapeutic and related expenses, past and future; and
   f.  Such other damages as will be shown at trial.

## VIII.   PUNITIVE DAMAGES

98.     Plaintiffs re-allege each and every allegation set forth above.

99.     The injuries sustained by Plaintiffs resulted directly from Defendant's gross negligence and malice.  *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a).

100.    Furthermore, ITC is liable for the damages attributed to its vice principals because they have authority over the nondelegable responsibility of ITC.

101.    Any caps on punitive damages, under state or federal law, should not be applied because Defendant's conduct disqualifies it from any caps on exemplary damages.

## IX.   PRAYER

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants for economic, compensatory and special damages as set forth above; punitive damages; pre-judgment and post-judgment interest; costs of litigation; and for such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully Submitted,

KOLODNY LAW FIRM, PLLC

*/s/ Alan Kolodny*
Alan Kolodny
State Bar No: 24056882
Email: akolodny@fko-law.com
Rashon Murrill
State Bar No: 24110622
Email: rmurrill@fko-law.com
1011 Augusta Dr., Suite 111
Houston, Texas 77057
Telephone: (713) 532-4474
Facsimile: (713) 785-0597

and

*/s/ Benjamin R. Roberts*
Benjamin R. Roberts
State Bar No. 24068038
Benjamin Roberts Law, PLLC
440 Louisiana St., Suite 900
Houston, Texas 77002
(713) 275-2183 (Telephone)
(713) 249-58190 (Direct)
(713) 456-2831 (Facsimile)
ben@benjaminrobertslaw.com

and

*/s/ R. Bradley O'Neill*
R. Bradley O'Neill
State Bar No. 24065837
The O'Neill Firm, PLLC
440 Louisiana St., Suite 900
Houston, Texas 77002
Telephone: (713) 416-7370
Fax: (713) 758-0397
boneill@oneillfirm.com

**ATTORNEYS FOR PLAINTIFFS**

18

# EXHIBIT A-3

CAUSE NO. 2019-20985

| | | |
|---|---|---|
| ROGELIO LOPEZ MUNOZ, ET AL. | § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| INTERCONTINENTAL TERMINALS | § | |
| COMPANY LLC | § | |
| Defendant. | § | 11th JUDICIAL DISTRICT |

### DEFENDANT INTERCONTINENTAL TERMINALS COMPANY LLC'S MOTION TO TRANSFER VENUE AND, SUBJECT THERETO, <u>ORIGINAL ANSWER</u>

Defendant Intercontinental Terminals Company LLC ("ITC") files its Motion to Transfer Venue and, subject thereto, Original Answer to Plaintiffs' First Amended Petition (the "Petition").

### I.      MOTION TO TRANSFER VENUE

Pursuant to Rule 257 of the Texas Rules of Civil Procedure, ITC respectfully requests that venue for this action be transferred from Harris County to another county of proper venue under the Texas Civil Practice and Remedies Code.  ITC will supplement the record with a brief in support of its motion and necessary affidavits upon completion of sufficient discovery.

### II.      GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, ITC generally denies the allegations and claims set forth in Plaintiffs' Petition and demands strict proof thereof by a preponderance of the credible evidence, as required by the Constitution and laws of the State of Texas.

### III.      AFFIRMATIVE DEFENSES

1.      Plaintiffs fail to state a claim upon which relief can be granted.

2.    Plaintiffs' claims are barred because Plaintiffs lack standing to bring, in whole or in part, the claims alleged in the Petition.

3.    ITC asserts the defense of contributory or comparative negligence to the extent that the damages and injuries alleged in Plaintiffs' Petition were legally and proximately caused, in whole or in part, by the negligence, fault, negligence per se, and other culpable conduct of other persons or parties who failed to exercise the requisite degree of care and caution, entitling ITC to have the Court and jury apply the doctrine of comparative negligence established by Tex. Civ. Prac. & Rem. Code § 33.001 *et seq.* to reduce any judgment against it by the degree of negligence or fault attributable to any other person or party.

4.    ITC asserts the defense of superseding or intervening cause to the extent that the damages and injuries alleged in Plaintiffs' Petition were legally and proximately caused by separate and independent events or agencies that were not the result of ITC's actions or reasonably foreseeable to ITC or within its control.

5.    ITC denies that the alleged injuries of Plaintiffs were proximately caused by any alleged act or omission of ITC.

6.    As an affirmative defense, the evidence may show that one or more claims of Plaintiffs are barred in whole or in part by the failure to mitigate damages.

7.    As an affirmative defense, the evidence may show that one or more of Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

8.    Alternatively, should any amount be cast against ITC in judgment, ITC is entitled to a credit and off-set for any and all payments made to Plaintiffs for any purpose arising out of the incident and/or claims made the subject of this litigation, including, but not limited to, settlement credits.

9.      ITC denies any liability for punitive or exemplary damages.  In any event, Plaintiffs' claims for exemplary damages are limited by Tex. Civ. Prac. & Rem. Code § 41.008.

10.      ITC denies any liability for punitive or exemplary damages.  In any event, Plaintiffs' claim for punitive damages against ITC cannot be sustained because an award of punitive damages under Texas law without proof of every element beyond a reasonable doubt would violate ITC's rights under Amendments IV, V, VI, and XIV of the United States Constitution and under Sections 9, 10, 14, and 19 of Article I of the Texas Constitution.

11.      ITC denies any liability for punitive or exemplary damages.  In any event, Plaintiffs' claims for punitive damages against ITC cannot be sustained because an award of punitive damages under Texas law by a jury that (1) is not provided any standard of sufficient clarity for determining the appropriateness or the appropriate size of any punitive damages award; (2) is not instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; and (5) is not subject to judicial review on the basis of objective standards, would violate ITC's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

12.      ITC denies any liability for punitive or exemplary damages.  In any event, a punitive damages award would violate the prohibition against excessive fines contained in the

Eighth Amendment to the United States Constitution, as embodied in the due process clause of the Fourteenth Amendment to that Constitution, and Article I, § 19 of the Texas Constitution.

13.   ITC reserves the right to assert other affirmative defenses, cross-claims, and designations of responsible third parties as discovery proceeds.

## IV.   RIGHT TO AMEND

ITC reserves the right to amend this Answer.

## V.   REQUEST FOR JURY

ITC requests a trial by jury and will pay the required fee in accordance with the deadlines imposed by the Texas Rules of Civil Procedure.

## VI.   PRAYER

ITC requests that this Court, after trial or final hearing of this case, enter judgment in ITC's favor, that Plaintiffs take nothing by reason of this suit, and that the Court award ITC its costs of court and expenses and all other relief to which it is entitled.

Respectfully submitted,

BAKER BOTTS L.L.P.

By:  _/s/ Russell C. Lewis_
       Russell C. Lewis
       Texas Bar No. 24036968
       Michael S. Goldberg
       Texas Bar No. 08075800
       Benjamin Gonsoulin
       Texas Bar No. 24099682
       Kelly Hanen
       Texas Bar No. 24101862
       Elizabeth Furlow
       Texas Bar No. 24109899
       One Shell Plaza
       910 Louisiana Street
       Houston, Texas 77002-4995
       Telephone:  (713) 229-1767
       Facsimile:  (713) 229-2867
       russell.lewis@bakerbotts.com
       michael.goldberg@bakerbotts.com
       ben.gonsoulin@bakerbotts.com
       kelly.hanen@bakerbotts.com
       elizabeth.furlow@bakerbotts.com

PHELPS DUNBAR LLP

By: _/s/ Ivan M. Rodriguez_____
        Ivan M. Rodriguez
        Texas Bar No. 24058977
        Marc G. Matthews
        Texas Bar No. 24055921
        Michael E. Streich
        Texas Bar No. 24079408
        500 Dallas, Suite 1300
        Houston, Texas  77002
        Telephone:  (713) 626-1386
        Telecopier:  (713) 626-1388
        Ivan.rodriguez@phelps.com
        Marc.matthews@phelps.com
        Michael.streich@phelps.com

ATTORNEYS FOR DEFENDANT
INTERCONTINENTAL TERMINALS
COMPANY LLC

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2019, a copy of this document has been served on the following counsel of record by electronic service:

Alan Kolodny
Rashon Murrill
Kolodny Law Firm, PLLC
akolodny@fko-law.com
rmurrill@fko-law.com

Benjamin Roberts
Benjamin Roberts Law, PLLC
440 Louisiana St., Suite 900
Houston, TX 77002
ben@benjaminrobertslaw.com

R. Bradley O'Neill
The O'Neill Firm, PLLC
440 Louisiana St., Suite 900
Houston, TX 77002
boneill@oneillfirm.com

                _/s/ Russell Lewis_____
                Russell Lewis