United States District Court
Southern District of Texas

**ENTERED**

April 01, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: INTERCONTINENTAL TERMINALS COMPANY LLC DEER PARK FIRE LITIGATION | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Lead Case No. 4:19-cv-01460<br><br>Related Case Nos.<br><br>4:19-cv-01424; 4:19-cv-01428;<br>4:19-cv-01430; 4:19-cv-01431;<br>4:19-cv-01433; 4:19-cv-01434;<br>4:19-cv-01436; 4:19-cv-01440;<br>4:19-cv-01443; 4:19-cv-01444;<br>4:19-cv-01447; 4:19-cv-01450;<br>4:19-cv-01452; 4:19-cv-01453;<br>4:19-cv-01457; 4:19-cv-01459;<br>4:19-cv-01461; 4:19-cv-01708;<br>4:19-cv-01882; 4:19-cv-01886;<br>4:19-cv-01887; 4:19-cv-01890;<br>4:19-cv-02419; 4:19-cv-02425;<br>4:19-cv-02429; 4:19-cv-02674;<br>4:19-cv-02775; 4:19-cv-03457;<br>4:19-cv-03594; 4:19-cv-03609;<br>4:19-cv-04051; 4:19-cv-05029;<br>4:20-cv-00019; 4:20-cv-00036;<br>4:20-cv-00119; 4:20-cv-00212;<br>4:20-cv-00216 |

**AGREED JOINT STIPULATION AND [PROPOSED] CASE
MANAGEMENT ORDER NO. 1 REGARDING PRESERVATION AND PRODUCTION
OF ELECTRONICALLY STORED INFORMATION**

TO HONORABLE DENA HANOVICE PALERMO:

## 1. PURPOSE

This Order shall outline the procedures that govern discovery of electronically stored

information ("ESI") and hard copy documents in this case, as a supplement to the Federal Rules

of Civil Procedure ("FRCP") and any other applicable orders in this matter.  Unless specifically addressed herein, the FRCP shall apply.  The Parties agree to work cooperatively and in good faith to comply with the provisions set forth herein, to resolve discovery disputes to the extent practicable without court intervention, and to avoid unduly burdensome discovery practices and discovery that is not proportional to the needs of this case.

## 2.  DEFINITIONS

(a)  "Requesting Party" means and refers to the Party that serves a request for the production of documents.

(b)  "Producing Party" means and refers to the Party upon whom a request for the production of documents is served.

(c)  "Document" or "Documents" means a writing as defined by FRCP Rule 1001, and shall include handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, symbols, or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes any "electronically stored information."

(d)  "Electronically stored information" or "ESI" as used herein has the same meaning as in FRCP Rule 34 and related Notes of Advisory Committee on Rules.

(e)  "Hard-Copy Document" means Documents existing in paper form at the time of collection.

(f)  "Native Format" means and refers to the format of ESI in which it was generated

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

1

and/or as used by the producing party in the usual course of its business and in its regular conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

(g)     "Metadata" means:  (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified the native file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected.

(h)     "Media" means an object or device, real or virtual, including but not limited to disc, tape, computer, or other device on which data is or was stored.

(i)     "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

(j)     "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

(k)     "Confidentiality Designation" means the legend affixed to Documents identified as being Confidential as defined by, and subject to, the terms of any Protective Order entered in this Consolidated Action.

(l)     "Load files" means electronic files provided with a production set of documents

and images used to load that production set into a receiving party's document review platform and correlate its data within that platform.

(m)   "And" and "or" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, *e.g.*, "and" shall be construed to mean "and/or".

### 3. COOPERATION

The parties recognize the importance of working together in good faith and acknowledge their duty to work together cooperatively throughout the discovery process before bringing disputes to the Court.

### 4. LIAISON

The parties have identified e-discovery liaisons who are knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention. Any attorney representing a party in the case, including the e-discovery liaison, may participate in meet-and-confer conferences, but it is not required that the e-discovery liaison be present for the parties to meet and confer about matters involving ESI.

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF
ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF
TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

3

**Plaintiffs' Steering Committee Identifies:**
> Bill Ogden[1]
> Kaster Lynch Farrar & Ball LLP.
> 1117 Herkimer St
> Houston, TX 77008
> bill@fbtrial.com
> 713.221.8300

**Defendant Identifies:**
> Benjamin Gonsoulin
> Baker Botts L.L.P.
> 910 Louisiana
> Houston, Texas 77002
> ben.gonsoulin@bakerbotts.com
> 713.229.1510

## 5.   PRESERVATION

Within 7 days of this Order being executed, the parties will confer regarding their preservation obligations, including specific custodians and non-custodial sources, and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To ensure proper ESI is preserved, the parties agree that:

    (a)    Within 7 business days of the entry of this Order, the Parties will meet and confer regarding:

        1.    relevant ESI systems and most likely custodians to have relevant information;

        2.    the types of ESI (custodial and non-custodial) they believe should be

---

[1] The appointment as PSC ESI Liaison Counsel entails acting as the PSC's representative in communicating with Defendant's ESI Liaison, other Plaintiffs' Counsel with cases pending in this Consolidated Action, and the Court. This appointment does not impose any obligation to communicate directly with or be responsible for ESI obligations of any individual Plaintiff who has a case pending in this Consolidated Action and who is represented by a law firm other than the law firm of PSC ESI Liaison Counsel.

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

4

preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary as additional information becomes available;

3.     whether any data sources are not reasonably accessible because of an undue burden or expense and the necessity, if any, of preserving such data.

If, however, during the course of this litigation, a party identifies an additional data source or believes that the value of an inaccessible data source outweighs the burden or expense as referenced under FRCP Rule 34, then the parties shall meet and confer regarding the accessibility of such data source and related issues including cost-shifting.

(b)     In addition to the foregoing, the parties agree not to preserve the following:

1.     Deleted, shadowed, fragmented, residual, or cached data, temporary files, random access memory ("RAM"), or ESI that would only be accessible by taking a forensic (bit stream) image of a device.  Nevertheless, if during the course of this litigation, a party believes that a bit stream image is necessary for a specific custodian, then the parties will meet and confer regarding the necessity, if any, of taking and preserving a forensic copy of the targeted custodian's device.

2.     Data in Metadata fields that are frequently updated automatically, such as last-opened dates.

3.     Voicemails or instant messages. However, if a custodian stored a voicemail, voicemail transcript, or instant message transcript in a different format or location (*e.g.*, email or other storage media used in the ordinary course of business) then those voicemails

or transcripts need to be preserved, and the parties will meet and confer, if necessary.  Should it be discovered that Defendant utilizes third-party software such as SLACK for corporate communications (in addition to Defendant's email system), the parties shall meet-and-confer about how to handle such communications.

4.      Server, system, or network logs (not including structured data server transaction logs).

5.      Information stored on cellular telephones, including but not limited to text messages, voicemails, and telephone call history.  If a custodian stored copies of text messages, voicemail, voicemail transcripts, or instant message transcripts in a different format or location (*e.g.*, e-mail or other storage media used in the ordinary course of business), then those types of information need to be preserved, and the parties will meet and confer, if necessary.

6.      Corrupted data or data containing viruses.

7.      Back up tapes or other storage media used for disaster recovery purposes, after the parties have engaged in a meet-and-confer or confirmatory discovery.

8.      Social media content that by its nature is automatically deleted by the application, settings, operating system or other system related activity (*e.g.*, Snapchat).  This provision does not apply to social media that does not automatically delete such as Facebook, Instagram, Twitter, Linkedin, and TikTok, which the Parties need to preserve.

## 6.  SEARCH & CULLING

The parties agree that they will meet and confer regarding custodians to be searched and processes to be employed to identify and collect potentially relevant ESI for review and production.  The parties agree that this may include, but is not limited to: search term culling,

Case Management Order No. 1 Regarding the Preservation and Production of Electronically Stored Information (Consolidated Action Southern District of Texas *Munoz v. Intercontinental Terminals, LLC et al* Cause Number 4:19-cv-01460)

6

date-range culling, file-type culling, de-duplication, near de-duplication, cluster mapping, mass coding, automated coding and email thread suppression.  If the requesting party proposes any additional methodology(ies) to be used by the responding party, the responding party shall have seven business days after receipt of such proposal to perform any evaluation it deems necessary of such additional methodology(ies), and the parties shall then meet and confer regarding the proposed use of additional methodology(ies).  To the extent the parties cannot reach agreement on use of any such proposed additional methodology(ies)  after a good faith attempt to meet and confer, the parties may seek the assistance of the Court.

For the avoidance of doubt, the categories of documents and information identified as not subject to preservation pursuant to Paragraph 5.b. above will not be searched for purposes of production in this case.  If a specific need arises to conduct a search for documents or information in any of the categories identified in Paragraph 5.b., the parties will meet and confer in good faith regarding conducting such searches and related issues including cost-sharing.

## 7.  PRODUCTION FORMATS

The parties agree to produce documents in the formats described below.  The parties agree not to degrade the searchability of documents as part of the document production process.

(a)      **Images**.  With the exception of documents produced in native format as specified below, the parties will produce images in Group IV Single Page TIFF format, scanned at 300 DPI, with 1 bit depth, and with Bates numbers applied on the bottom right of each image.  Confidentiality designations will be applied on the bottom left of each image.  Both stamps will be situated so as to not block or obliterate underlying text.  Files shall be named by BegBates.  All hidden text (*e.g.*, track changes, hidden columns, mark-ups, notes) shall be expanded and

CASE MANAGEMENT ORDER No. 1 REGARDING THE PRESERVATION AND PRODUCTION OF
ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF
TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

7

rendered in the image file.

(b) **Native Files**. The parties will produce spreadsheets (*e.g.*, Excel, CSV, and other delimited text files), multimedia files, audio and video files and photographs in native format where reasonably available, with the exception of native files that correspond to produced documents that have been redacted. Where documents are produced in native format, the Parties shall name the produced native file to the BegBates Number and include any confidentiality designation therein as well. (Example: ABC_000001_CONFIDENTIAL.xlsx). The original name of the natively produced file shall be provided in the FileName metadata field associated with the natively produced document as specified in **Exhibit A**. The Parties shall provide placeholder images with corresponding Bates number and confidentiality branding for each natively produced document. The receiving party may request a native copy of any non-redacted document not initially produced in native format by providing the Bates number of each document for which native production is requested, and reasonable requests will not be denied. For any document not produced in native format that has any embedded multimedia, audio or video file(s) in the original native form of the produced document, the producing party will provide a metadata field in the DAT file indicating the existence of such embedded file(s).

(c) **Color Documents.** All documents will be produced in black and white TIFF other than those documents that contain color in the original, which shall be produced in color TIFF image or JPEG or some other format agreed to by the parties. Notwithstanding the above, the parties have agreed that emails will be produced in black and white, however, any email document requiring production in color to understand the content and who is making specific changes/comments in different color font will be produced in color upon request by the receiving

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

8

party.  The attachment to any email shall be produced in color (or native format) consistent with the terms of this protocol.

(d)     **Word Processing Documents.** Any word processing documents (*e.g.*, MS Word) that contain any form of redline, comments, or "track changes" shall be produced with the track changes visible in the TIFF image.

(e)     **Parent-Child Relationships**. Parent-child relationships (*e.g.*, the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range Metadata as specified in **Exhibit A**.

(f)     **Bates Numbering**. All documents produced in image format will include a legible, unique page identifier ("Bates Number") electronically embossed onto each page at a location that is reasonably intended to not obliterate, conceal, or interfere with any information in the document. No other legend or stamp will be placed on the images other than a confidentiality legend (where applicable), and redactions (consistent with any protective orders or applicable law). The Bates numbers assigned shall: (1) be unique across the entire production; (2) maintain a consistent length of numeric digits across all documents (including 0-padding); and (c) be sequential within a document.

(g)     **Production Media.** Unless otherwise agreed, Documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format.  Such media shall have an alphanumeric volume name; if a hard drive contains more than one production volume, each volume should be contained in an appropriately named folder at the root of the drive.  Volumes should be numbered consecutively.  Deliverable media should be

labeled with the name of this action, the identity of the producing party, and the following information:  Volume Name and date of production.  The producing party will identify the Bates number range of each production in a cover letter accompanying the production.  If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter accompanying the production.

(h)     **File Naming Conventions**.  Each TIFF Image shall be named with the unique Bates Number of the page of the document.  The Bates Naming convention shall contain the name (or an easily identifiable acronym or other abbreviation of the name) of the party producing the document.  Each corresponding document level text file shall also be named with the BegBates Number of the document.  In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

(i)     **Load Files.**  The parties shall produce a load file that conforms to the Concordance standard load files (.DAT) and Opticon Standard image load files with each production.  Each load file shall include the Metadata fields provided in **Exhibit A** to the extent that they are available as a part of standard processing, and shall be populated to the extent not subject to a claim of privilege, work product or other protection. The parties shall meet and confer to the extent necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

(j)     **Extracted Text/OCRed Text**.  The parties shall extract the text of each ESI item directly from the ESI native file, if available.  The parties shall produce document level extracted text in ASCII format where text can be extracted, or for documents without extractable text and

for redacted documents, document level OCR text files obtained from each produced document or image to the extent possible and subject to the inherent limitation of the quality of the image and OCR capabilities.  The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software.

(k)     **De-duplication.**  ESI collected for preservation may be de-duplicated on a per-custodian level using MD5 hash, SHA-1 hash, or any other hash value.  The Parties shall be permitted to globally de-duplicate exact duplicate documents based on MD5 or SHA-1 hash values, at a family level.  For emails, a party's de-duplication process may also utilize a combination of hashed Metadata fields.  De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, and emails with attachments all constitute family groups.  A party may not remove through deduplication any attachment to an email, regardless of whether the attachment is duplicative of any other document or attachment to another email. The producing party will provide a rolling "CustodiansAll" metadata field which identifies all custodians of a document as defined in Exhibit A, so that the receiving party can properly identify the existence of duplicate documents.

(l)     **Structured Data.**  Prior to the collection and production of information from any source of structured data, the parties shall meet and confer concerning the content and format of a data extraction from such structured data sources.  The parties agree that such data extraction and file production does not constitute the creation of a new document.  The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden and/or inaccessibility.

(m)     **Redactions.** Redactions are permitted within the confines of the Government Code, Federal Rules of Evidence and Federal Rules of Civil Procedure, or any agreement of the Parties.  Redacted files should be produced as TIFF images in redacted form, with applicable redacted document level text files, containing OCRed text acquired after redaction of the image. Where a document requires redaction but due to the size or format is not capable of TIFF imaging to a usable image format for application of redactions, the producing party may, at its option, employ native redaction techniques so long as the method of redaction employed does not significantly impair the usability or searchability of the non-redacted portions of the redacted item and the fact of alteration is disclosed.

(n)     **Production of Hard Copy Documents**

1.     All hard copy Documents will be scanned as described in Section 7(a) above and produced in electronic form. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in JPEG file format.

2.     Unitization of Paper Documents:  To the extent practicable, hard copy Documents shall be produced in the manner in which those Documents were kept in the ordinary course of business.

3.     Identification:  Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

12

4.    Custodian Identification:  The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

## 8.  PHASING

When a party propounds discovery requests pursuant to FRCP Rule 34, the parties agree that production of ESI will occur on a rolling basis.  If the requesting party desires priority production of documents responsive to any certain request category, the parties will meet and confer regarding reasonable accommodations therefor.

## 9.  USE OF NATIVE PRODUCTION DOCUMENTS

If a party desires to use at a deposition or hearing a native document produced by a party with any changes, additions, or modifications to the file or its format, contents or functionality ("altered native production document"), or any excerpt therefrom, the following procedure will be followed:

(a)    The party intending to use such an altered native production document shall notify the other party of the specific change(s), addition(s) or modification(s) made to the original native production document, or specify the excerpted portions of the original native production document intended to be used and shall provide a copy of that altered native production document or the excerpted portion to the producing party in advance of the deposition or hearing at which the altered native production document or excerpt will be used (the "event").

(b)    Notice.  The notice required herein shall include (1) the Bates number of the original native production file name, as specified under paragraph 7 (b), and (2) the MD5 Hash for each native production document intended to be used by the party.

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

13

(c)      Timing.  Any party intending to use such an altered native production document shall notify the other party of its intention no less than one (1) day before the event at which the altered native production document will be used.

If a party desires to use at a deposition or hearing a native document produced by a party without any changes, additions, or modifications to the file or its format, contents or functionality ("original native production document"), prior to the deposition or hearing the party shall notify the producing party of such intent and shall provide (1) a copy of the original native production document, (2) the Bates number of the original native production document, and (3) the MD5 Hash of the original native production document.

Nothing in this provision governs the use of native production documents at trial, which shall be addressed as appropriate at a later time.

## 10. GENERAL PROVISIONS

(a)      The Parties reserve the right to modify any practice or procedure set forth herein by mutual agreement without order of the Court.

(b)      Further, the Parties each reserve the right to seek exceptions, amendments or modifications to this Order from the Court, provided the Parties endeavor to reach agreement regarding such exceptions, amendments or modifications prior to seeking such relief.

(c)      This Order does not address, limit, or determine the relevance, discoverability or admissibility of ESI or other documents sought in discovery in this matter.

(d)      The Parties will meet and confer regarding discovery of data sources not listed herein.

(e)      The Parties will meet and confer to resolve any discovery dispute before seeking Court intervention.

SIGNED this ___1st___ day of ____April_____, 2020.

_Dena Palermo_____

Dena Hanovice Palermo
United States Magistrate Judge

Dated:  March 31, 2020

OF COUNSEL:

Shawn P. Fox
Texas Bar No. 24040926
Scott C. Greenlee
Texas Bar No. 24007270
Lance Nolan Walters
Texas Bar No. 24085639
Federal I.D. No. 2006934
Tracey & Fox
440 Louisiana, Suite 1901
Houston, Texas 77002
Telephone: (713) 495-2333
Facsimile: (713) 495-2331
sfox@traceylawfirm.com
sgreenlee@traceylawfirm.com
lwalters@traceylawfirm.com

Russell S. Post
Texas Bar No. 00797258
Owen J. McGovern
Texas Bar No. 24092804
Beck Redden LLP
1221 McKinney St., Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 952-3720
rpost@beckredden.com
omcgovern@beckredden.com

Respectfully submitted,

TRACEY & FOX LAW FIRM

By: */s/ Sean Patrick Tracey*
    Sean Patrick Tracey
    Attorney-in-Charge
    Texas Bar No. 20176500
    440 Louisiana, Suite 1901
    Houston, Texas 77002
    Telephone: (713) 495-2333
    Facsimile: (713) 495-2331
    stracey@traceylawfirm.com

PLAINTIFFS' CO-LEAD COUNSEL AND
ATTORNEYS FOR PLAINTIFFS ABEL
ARGUELLES AND RHENA HERNANDEZ

Dated:  March 31, 2020

OF COUNSEL:

David W. Hodges
Texas Bar No. 00796765
Federal I.D. No. 20460
Kennedy Hodges, LLP
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: (713) 523.0001
Facsimile: (713) 523-1116
dhodges@kennedyhodges.com

Respectfully submitted,

KENNEDY HODGES, LLP

By: */s/ David W. Hodges (by permission)*
     Don J. Foty
     Attorney-in-Charge
     Texas Bar No. 24050022
     Federal I.D. No. 711522
     4409 Montrose Blvd., Suite 200
     Houston, Texas 77006
     Telephone: (713) 523.0001
     Facsimile: (713) 523-1116
     dfoty@kennedyhodges.com

PLAINTIFFS' CO-LEAD COUNSEL
AND ATTORNEYS FOR PLAINTIFF
DESTREA ARMSTRONG, ON BEHALF
OF HERSELF AND ALL OTHERS
SIMILARLY SITUATED

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF
ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF
TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

17

Dated:  March 31, 2020

Respectfully submitted,

ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO & AZIZ

By: */s/ Benny Agosto, Jr. (by permission)*
    Benny Agosto, Jr.
    Texas Bar No. 00794981
    Federal I.D. No. 20821
    800 Commerce Street
    Houston, TX 77002
    Telephone: (713) 222-7211
    Facsimile: (713) 225-0827
    bagosto@awtxlaw.com

PLAINTIFFS' CO-LEAD COUNSEL
AND ATTORNEYS FOR PLAINTIFFS
LORENA DIBELLO; NORMA MOTTU,
INDIVIDUALLY AND AS NEXT
FRIEND OF NMG AND VMG,
MINORS;  JOHN M. GARZA, JR.; JOHN
M. GARZA, III; ROSE MARY MOTTU;
AMANDA MORALES

CASE MANAGEMENT ORDER NO. 1 REGARDING THE PRESERVATION AND PRODUCTION OF
ELECTRONICALLY STORED INFORMATION (CONSOLIDATED ACTION SOUTHERN DISTRICT OF
TEXAS *MUNOZ V. INTERCONTINENTAL TERMINALS, LLC ET AL* CAUSE NUMBER 4:19-CV-01460)

18

Dated:  March 31, 2020

OF COUNSEL:

Christopher L. Dodson
Texas Bar No. 24050519
Federal I.D. No. 613937
Carlton D. Wilde III
Texas Bar No. 24093364
Federal I.D. No. 2522942
Shannon E. Glen
Texas Bar No. 24109927
Federal I.D. No. 3393447
Bracewell LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:  (713) 223-2300
Facsimile: (800) 404-3970
chris.dodson@bracewell.com
cd.wilde@bracewell.com
shannon.glen@bracewell.com

Respectfully submitted,

BRACEWELL LLP

By: */s/ Phillip L. Sampson, Jr. (by permission)*
     Phillip L. Sampson, Jr.
     Attorney-in-Charge
     Texas Bar No. 00788344
     Federal I.D. No. 16837
     711 Louisiana, Suite 2300
     Houston, Texas 77002
     Telephone:  (713) 223-2300
     Facsimile: (800) 404-3970
     phillip.sampson@bracewell.com

PLAINTIFFS' CO-LEAD COUNSEL AND
ATTORNEYS FOR PLAINTIFF VOPAK
TERMINAL DEER PARK INC.

***ATTORNEYS FOR PLAINTIFFS***

Dated:  March 31, 2020

OF COUNSEL:
Michael S. Goldberg
Texas Bar No. 08075800
Federal I.D. No. 01279
Benjamin Gonsoulin
Texas Bar No. 24099682
Federal I.D. No. 2969896
Kelly Hanen
Texas Bar No. 24101862
Federal I.D. No. 3038458
Elizabeth Furlow
Texas Bar No. 24109899
Federal I.D. No. 3402815
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone:  (713) 229-1234
Facsimile:  (713) 229-1522
michael.goldberg@bakerbotts.com
ben.gonsoulin@bakerbotts.com
kelly.hanen@bakerbotts.com
elizabeth.furlow@bakerbotts.com

Ivan M. Rodriguez
Texas Bar No. 24058977
Federal I.D. No. 4566982
Marc G. Matthews
Texas Bar No. 24055921
Federal I.D. No. 705809
Michael E. Streich
Texas Bar No. 24079408
Federal I.D. No. 1339959
PHELPS DUNBAR LLP
500 Dallas, Suite 1300
Houston, Texas  77002
Telephone:  (713) 626-1386
Telecopier:  (713) 626-1388
ivan.rodriguez@phelps.com
marc.matthews@phelps.com
michael.streich@phelps.com

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Russell C. Lewis (by permission)*
    Russell C. Lewis
    Attorney-in-Charge
    Texas Bar No. 24036968
    Federal I.D. No. 569523
    One Shell Plaza
    910 Louisiana Street
    Houston, Texas 77002-4995
    Telephone:  (713) 229-1767
    Facsimile:  (713) 229-2867
    russell.lewis@bakerbotts.com

ATTORNEYS FOR DEFENDANT
INTERCONTINENTAL TERMINALS
COMPANY LLC, BERNT NETLAND, AND
ALICE RICHARDSON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document and exhibits has been served on all counsel of record on this the 31st day of March, 2020, through the Court's automatic distribution system, in conformity with the Federal Rules of Civil Procedure.

/s/ *Sean Patrick Tracey*
Sean Patrick Tracey