United States District Court
Southern District of Texas
**ENTERED**
August 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| *IN RE* INTERCONTINENTAL TERMINALS COMPANY, LLC DEER PARK FIRE LITIGATION | § § § § § | Lead Case No. 4:19-cv-1460 |

## REPORT AND RECOMMENDATION

Pending before the Court[1] are the following motions: (1) Plaintiffs Total Petrochemicals & Refining USA, Inc.'s and Total Specialties USA, Inc.'s (collectively, the "Total Plaintiffs") motion to remand, ECF No. 196; (2) Plaintiff Micah Lee Bell's and others[2] (collectively, the "Bell Plaintiffs") motion to remand, ECF No. 204; (3) Plaintiff Abel Arguelles' motion to remand, ECF No. 17 in Case No. 4:19-cv-2674; and (4) Defendant Intercontinental Terminals Management Company's ("ITMC") "Renewed and Consolidated Rule 12 Motion to Dismiss," ECF No. 212. [3]

---

[1] The district judge referred this matter for all pretrial purposes pursuant to 28 U.S.C. § 636. ECF No. 112. The motions under consideration are appropriate for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

[2] The other Bell Plaintiffs are Plaintiffs Ray Celaya, Vickie Lock, Nigul Bruce Longtime, Kristopher Longtime, Juan Mendez, individually and as next friend of Juan Mended II, Teresa Mendez, Alyssa Mendez, James Molina, Jr., Joyce Grimmett, Jeremie Neal, Ray Packard, Priscilla Gieler, Mohammad Panjwani, Rose Marie Phillips, and John Tullar.

[3] Defendant ITC filed a response to the Total Plaintiffs' motion to remand, ECF No. 213, the Bell Plaintiffs' motion to remand, ECF No. 220, and Plaintiff Arguelles' motion to remand, ECF No. 64. Total Plaintiffs filed a reply. ECF No. 227. ITMC filed a response to Plaintiff Arguelles' motion to remand incorporated in its first motion to dismiss. ECF No. 69 fn. 1. Responses to Defendant ITMC's motion were filed by Plaintiff Arguelles, ECF No. 238, Total Plaintiffs, ECF

Having reviewed the record, the applicable law, and the arguments of counsel, the Court RECOMMENDS that: (1) the Total Plaintiffs' motion to remand be DENIED; (2) the Bell Plaintiffs' motion to remand be DENIED; (3) Plaintiff Arguelles' motion to remand be DENIED; and (4) Defendant ITMC's "Renewed and Consolidated Rule 12 Motion to Dismiss" be DENIED AS MOOT.

## I.   BACKGROUND

The Total Plaintiffs, the Bell Plaintiffs, and Plaintiff Arguelles brought claims in state court against Defendants Intercontinental Terminals Company, LLC ("ITC") and ITMC arising from the March 2019 fire at ITC's Deer Park facility. In particular, the Total Plaintiffs, the Bell Plaintiffs, and Plaintiff Arguelles seek to hold ITC and ITMC responsible for negligence in connection with the Deer Park facility fire and resulting damages. *See* ECF No. 1-1, Case No. 4:20-cv-00019 (the Total Plaintiffs' original petition);[4] ECF No. 1-1, Case No. 4:20-cv-00119 (Bell Plaintiffs' original

---

No. 242, and Bell Plaintiffs, ECF No. 245. Defendant ITMC filed a reply. ECF No. 259. Plaintiff Total filed a surreply. ECF No. 297. The Court held oral argument on Total's motion. ECF No. 366.

[4] Total asserts claims based on negligence, negligence per se, as well as public and private nuisance. All the claims derive from ITMC's negligent conduct, so the Court references them as negligence claims for brevity. *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 529 (5th Cir. 2018) (When public nuisance is alleged "only by reason of the negligent manner in which [the defendant's conduct] is performed or permitted, no right of recovery is shown independently of the existence of negligence.") (alteration in original); *Bonin v. Sabine River Auth. of Tex.*, No. 1:17-CV-00134-TH, 2019 WL 1246259, at *10 (E.D. Tex. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1244705 (E.D. Tex. Mar. 18, 2019) (A plaintiff, making "a private nuisance claim on underlying negligent conduct . . . must prove the elements of negligence to prove the private nuisance.").

petition); ECF No.1-1, Case No. 4:19-cv-2674 (Plaintiff Arguelles' original petition). ITC removed these—and other similar cases—to federal court based on diversity jurisdiction, contending that ITMC was improperly joined. ECF No. 1, Case No. 4:20-cv-00019 (ITC's Notice of Removal in the *Total* case); ECF No. 1, Case No. 4:20-cv-00119 (ITC's Notice of Removal in Bell case); ECF No.1, Case No. 4:19-cv-2674 (ITC's Notice of Removal in Arguelles' case). Plaintiffs seek remand, contending that the Parties are not completely diverse. *E.g.,* ECF No. 196 at 1. ITMC seeks dismissal, contending that it was improperly joined. ECF No. 212 at 5.

As relevant to the present motions, it is undisputed that Defendant ITMC is a Texas corporation whose presence in this suit defeats federal diversity jurisdiction.[5] The motions' central issue involves the improper joinder doctrine.

## II.   LEGAL STANDARD FOR IMPROPER JOINDER

The federal removal statute authorizes the removal of a civil action from state to federal court if the action could have been brought originally in federal district court. 28 U.S.C. § 1441(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). "The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between ...

---

[5] No party disputes that this matter meets the amount-in-controversy requirement for diversity jurisdiction.

citizens of different States' where the amount in controversy exceeds $75,000."
*Lincoln Prop. Co.*, 546 U.S. at 89 (quoting 28 U.S.C. § 1332(a)(1)). The statutory
phrase "between ... citizens of different States" "require[s] complete diversity
between all plaintiffs and all defendants." *Id.*

"[T]he improper joinder doctrine constitutes a narrow exception to the rule of
complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249
(5th Cir. 2011). A non-diverse defendant may be found to be improperly joined if
either (1) there is "actual fraud in the [plaintiff's] pleading of jurisdictional facts" or
(2) the removing defendant demonstrates that the plaintiff cannot establish a cause
of action against the non-diverse defendant. *Mumfrey v. CVS Pharm. Inc.,* 719 F.3d
392, 401 (5th Cir. 2013); *Kling Realty Co., Inc. v. Chevron USA, Inc.,* 575 F.3d 510,
513 (5th Cir. 2009) (citing *Campbell v. Stone Ins., Inc.,* 509 F.3d 665, 669 (5th Cir.
2007)); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)
(one way a defendant can establish improper joinder is by demonstrating the
"inability of the plaintiff to establish a cause of action against the non-diverse party
in state court" (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003))).

To prevail under the second means of establishing improper joinder, the
defendant must "demonstrate[ ] that there is no possibility of recovery by the plaintiff
against [the] in-state defendant, which stated differently means that there is no
reasonable basis for the district court to predict that the plaintiff might be able to

recover against [the] in-state defendant." *Smallwood*, 385 F.3d at 573. The court "do[es] not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 309 (5th Cir. 2005). If there is "a reasonable basis of recovery on one cause of action, the court must remand the entire suit to state court." *Edwea, Inc. v. Allstate Ins. Co.,* No. H–102970, 2010 WL 5099607, at *2 (S.D. Tex. Dec. 8, 2010).

The Fifth Circuit has set out two avenues for determining whether there is a reasonable basis to predict that a plaintiff might recover against a defendant under state law. *See Mumfrey,* 719 F.3d at 401 (summarizing the procedure set out in *Smallwood* ). "[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193, 207 (5th Cir. 2016) (emphasis in original).

Under the first avenue, the court may conduct "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood,* 385 F.3d at 573. Federal pleading standards govern the Rule 12(b)(6)-type improper joinder analysis. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 204 (5th Cir. 2016). The complaint must contain "enough facts to state

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "[D]etailed factual allegations" are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the factual allegations need only "be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995), and *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

Under the second avenue, "the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* This "inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.* at 573–74. In conducting this summary inquiry, a court "may consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003) ("Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor."). Thus, "although th[is] type of inquiry into the evidence is similar to the summary judgment

6

inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *McKee v. Kansas City S. Ry. Co.,* 358 F.3d 329, 334 (5th Cir. 2004). Courts "must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." *McKee,* 358 F.3d at 334; *Travis,* 326 F.3d at 649 (court must consider evidence "in the context of the entire record [and] the status of discovery").

"The burden of persuasion on those who claim [improper] joinder is a heavy one." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (alteration in original) (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)). "Any 'doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.'" *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (quoting *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)). A defendant asserting improper joinder must "put forward evidence that would negate a possibility of liability on the part" of the non-diverse defendant. *McKee,* 358 F.3d at 333–34 (internal quotation marks omitted). "[S]imply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient" to meet that burden. *Travis,* 326 F.3d at 650–51 & n.3 (distinguishing motions for summary judgment, where "a plaintiff's lack of evidence in support of her claims, after a sufficient period of discovery, could have a different effect"). However,

where a defendant puts forward sufficient evidence, and nothing in the record contradicts it, the court may find improper joinder. *See Guillory,* 434 F.3d at 313 (self-serving testimony of non-diverse defendant supported finding of improper joinder because plaintiffs failed to provide contradictory evidence).

### III.    PLAINTIFFS' MOTIONS TO REMAND SHOULD BE DENIED

In this case, the Parties argued improper joinder under both the 12(b)(6)-type and summary inquiry standards. Based on the briefing and argument of counsel, the Court has exercised its discretion to pierce the pleadings and conduct a summary inquiry to determine whether discrete and undisputed facts would preclude Plaintiffs' recovery against ITMC. Because the Court conducts a summary inquiry, Fifth Circuit law prevents this Court from also conducting a 12(b)(6)-type inquiry. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193 (5th Cir. 2016). Therefore, the Court will address the summary inquiry arguments only.

### A.    The Uncontroverted Evidence Supports A Finding Of Improper Joinder.

Construing Plaintiffs' allegations of ITMC's role in the March 2019 fire in the light most favorable to them and considering all the evidence both sides presented, as discussed more fully below, the Plaintiffs fail to tie ITMC to any acts relevant to this dispute. At best, Plaintiffs' evidence shows ITMC's ownership interest or operational involvement in ITC occurred prior to 2007, more than a decade before the events in question.

In contrast, the Court finds that evidence in the affidavit of ITC's Chief Financial Officer, Mark Jeansonne, is undisputed. After reviewing the ownership structure of the ITC Deer Park facility, Mr. Jeansonne states that ITMC never owned the Deer Park facility. Jeansonne Decl., ECF No. 213-1 at ¶ 8. He further states that Stephen Miles, the owner of ITMC, served as ITC's president from 1972 until he retired in 2006. *Id.* ¶ 9.

> Since that time, neither Mr. Miles nor ITMC has been involved in any way in the operation or management of the Deer Park Terminal, including but not limited to the development or implementation of ITC's operating, maintenance, or emergency response plans and procedures or the training of ITC's employees.

*Id.* Based on this uncontradicted evidence that ITMC was neither the owner, operator, nor manager of the Deer Park facility in 2019, Plaintiffs have no possibility of recovery against ITMC, which stated differently means that there is no reasonable basis for this district court to predict that Plaintiffs might be able to recover against ITMC. *Smallwood*, 385 F.3d at 573. This evidence is sufficient to support a finding of improper joinder because Plaintiffs have failed to provide evidence to contradict it. *Guillory,* 434 F.3d at 313.

### 1.  Plaintiffs had time to engage in discovery against ITMC.

As part of the summary inquiry, courts must consider the status of discovery and whether the plaintiffs had an opportunity to develop their claims against the non-diverse defendant. *McKee,* 358 F.3d at 334. The record in this case shows that the

Plaintiffs had the opportunity to develop their claims against ITMC.

Early on in this consolidated case, the Parties proposed, and the Court adopted a schedule to conduct discovery regarding potential third-party defendants. Order, ECF No. 46 (entered on August 9, 2019). ITC was required to produce documents by August 19, 2019. *Id.* The Court set a deadline of December 20, 2019 to amend pleadings and add parties. *Id.* The Court denied without prejudice motions to remand that had already been filed, delaying until December 20 the filing of such motions after the initial phase of discovery was completed. *Id.*[6]

During that initial phase of discovery, a group of Plaintiffs sent ITMC written discovery. ECF No. 212 at 22. ITMC responded to the discovery on November 25, 2019, which was provided to all counsel. *Id.* (citing to Exhibit A, its discovery responses). ITMC contends its discovery responses show that it had no documents relevant to the liability issues or areas of the ITC facility within the last 10 years. *Id.*

Plaintiff Arguelles was consolidated into this case at that time.[7] Upon receipt of those discovery responses, he had at least three weeks under the Court's scheduling order to conduct further discovery from ITMC. According to ITMC, "no party asked to depose Mr. Miles or a corporate representative of ITMC." *Id.* The

---

[6] Plaintiff Arguelles' motion to remand was inadvertently not included in that order.

[7] ITC removed the *Arguelles* case to federal court on July 22, 2019. ECF No. 1, Case No. 2019-cv-2674. On August 13, 2019, Plaintiff Arguelles filed his motion to remand, ECF No. 17, Case No. 2019-cv-2674, within a month of removal and shortly before consolidation, Order, ECF No. 53.

Total Plaintiffs and the Bell Plaintiffs were not consolidated into this case until after that initial phase of discovery was completed.

On January 17, 2020, this Court held a joint status conference with the Parties to discuss the next phase of the litigation. Minute Order, ECF No. 179; Hrg. Tr., ECF No. 205; Sch. Order, ECF No. 214 at 2. During a hearing held on January 24, 2020, the Court provided the Parties with direction on how discovery in this case will proceed, instructing them to submit an agreed scheduling order. Order, ECF No. 214 at 2; Hrg. Tr., ECF No. 192 at 69-70, 77. Even though the *Total* case was not yet consolidated into this case, counsel for Total attended the January 24 hearing. Hrg. Tr. at 68, ECF No. 192. On February 24, 2020, this Court entered a case management and scheduling order based on submissions from the Parties for the next phase of discovery, which included the exchange of written discovery and depositions. Sch. Order, ECF No. 214. The general liability discovery deadline is January 29, 2021. *Id.* At the time the scheduling order was entered, the Bell Plaintiffs and the Total Plaintiffs were consolidated into this case.[8] Between the entry of the scheduling order on February 24, 2020, and the hearing on the Total Plaintiffs' motion on July 24, 2020, five months passed in which Plaintiffs could have obtained

---

[8] ITC removed the *Total* case on January 3, 2020. ECF No. 1, Case No. 2020-cv-0019. The Total Plaintiffs filed their motion to remand just days before they were added to these consolidated cases on February 3, 2020. Order, 198. The Bell Plaintiffs were consolidated into this case on January 31, 2020, Order, ECF No. 183, and filed their motion to remand two weeks after the Total Plaintiffs filed their motion.

additional evidence from ITMC. In fact, the Total Plaintiffs represented that since filing their motion to remand, they had uncovered additional evidence in support of their claim against ITMC. ECF No. 227 at 17. Therefore, the Court finds that the Plaintiffs had the opportunity to obtain discovery regarding ITMC's ownership, control, and management of the Deer Park facility before the March 2019 fire. *McKee,* 358 F.3d at 334.

**2. Plaintiffs' motions to remand should be denied because a summary inquiry reveals that the Plaintiffs improperly joined Defendant ITMC.**

The Total Plaintiffs, the Bell Plaintiffs, and Plaintiff Arguelles argue that Defendant ITC has failed to meet the heavy burden of proving Plaintiffs' inability to establish a cause of action against ITMC in state court. Because the Plaintiffs rely on the same evidence and make similar, if not identical arguments, the Court will discuss the arguments in the Total Plaintiffs' motions.

The Total Plaintiffs argue that ITC has failed to show the absence of any fact dispute concerning whether ITMC provided management or consulting services to ITC relevant to this suit. ECF No. 196 at 11–14. In its notice of removal, ITC alleges that "ITMC has provided no management or consulting services to ITC that could conceivably be relevant to this dispute," purportedly because "ITMC is used by Mr. [Stephen] and Mrs. [Marilyn] Miles [ITMC's purported owners] for personal financial and retirement purposes, including the creation of a personal pension fund

for the Miles family." ECF No. 1 ¶ 19, Case No. 4:20-cv-00019. ITC also alleges that ITMC's predecessor sold its interest in the Deer Park tank farm in 1996 and "has not held an interest in the terminal facility since that time." *Id.* ITC further alleges that ITMC's owner "served as ITC's president from 1996 until 2006, when he retired and ceased providing services of any kind to ITC." *Id.* The Total Plaintiffs argue that these allegations are contradicted by record evidence, including statements to state regulators and to claimants in other civil cases. ECF No. 196 at 7.

### a. ITMC told TEQC it owns another facility in 2017

First, the Total Plaintiffs argue that, despite ITMC's sworn declaration that "ITMC has been used since its inception for personal financial and retirement purposes, including the creation of a personal pension fund" for ITMC's owner Stephen Miles and his family, ECF No. 196 at 12 (citing ECF No. 1-1 at 48, Case No. 4:20-cv-00019), ITMC "told the Texas Commission on Environmental Quality in 2017" that it was the "owner operator" of another "bulk liquid storage terminal" owned by ITC near the Deer Park facility, *id.* (citing ECF No. 1-1 at 51, Case No. 4:20-cv-00019).[9]

The document on which Plaintiffs rely is a one-page print out of "Customer Information" from the Texas Commission on Environmental Quality ("TCEQ"). ECF No. 204-6. It identifies ITMC as the customer, with the role of owner operator

---

[9] Bell Plaintiffs' cite the same evidence. ECF No. 204 at 5 (citing Exhibit A-5); ECF No. 204-6.

of ITC's *Pasadena* facility on December 12, 2017. Contrary to Total's argument, it does not prove that ITMC "told" the TCEQ it was the owner of the facility. This document does not provide the source of the contents. Total argues that this establishes that ITMC's relationship with ITC continued well beyond 2006, which is when they claim the relationship ended. ECF No. 196 at 14. Even assuming the information is correct, as the Court must to resolve all doubts in Plaintiffs' favor, this evidence is irrelevant to the present case because the 2017 customer information did not concern the Deer Park facility. Whether ITMC was an owner operator of the Pasadena facility in 2017 in no way supports the claim that it was an owner operator of the Deer Park facility in 2019. Even construing all ambiguities in Plaintiffs' favor, this does not create any fact issue as to ITMC's role at the Deer Park facility at the time of the fire.

To the extent Plaintiffs imply that this conflict impugns the veracity of Mr. Miles' affidavit so he should not be trusted on any facts asserted, ECF No. 227 at 9-10, it has no bearing on the affidavit of Mr. Jeansonne, on which the Court relies to find that ITMC was not an owner of the ITC Deer Park facility in 2019, and has not been involved in its operations in any way since the end of 2006. Jeansonne Decl., ECF No. 213-1 at ¶¶ 8 & 9. Significantly, Mr. Jeansonne's affidavit is supported with documents that show the history of the ownership of the Deer Park facility between Mitsui & Co. (U.S.A.) and its wholly owned subsidiary ITC, so it

14

is not merely a conclusory, self-serving affidavit. ECF No. 213-1. This direct evidence of the Deer Park facility's ownership in 2019 has not in been contradicted by the Plaintiffs' evidence from the TCEQ that, at best, shows ITMC's ownership of a different facility in 2017.

### b. November 2006 attorney's letter

Next, the Total Plaintiffs argue that ITMC's sworn declaration that "ITMC has never had any employees or been involved in the management or operation of the Deer Park Facility," ECF No. 196 at 12 (citing ECF No. 1-1 at 48, Case No. 4:20-cv-00019), contradicts ITMC's attorneys, who in November 2006 represented that ITMC was "a management company that contracts management and consultant services to Intercontinental Terminals Company ('ITC'), a Texas General Partnership, that operates a bulk chemical liquid storage facility at Deer Park, Texas." *Id.* at 12-13 (citing ECF No. 1-1 at 44-45, Case No. 4:20-cv-00019).[10]

There is no contradiction here, however. The November 2006 letter states only that ITMC provided management and related services to ITC, and that ITC operates the Deer Park facility. Assuming this representation means that the management and related services ITMC provided related to the Deer Park facility, the letter is dated November 2006, thirteen years before the incident at issue. This letter does not

---

[10] Plaintiff Arguelles cites the same evidence. ECF No. 17 at 7 (citing Exhibit B); ECF No. 17-2 at 10. Bell Plaintiffs cite to the same evidence. ECF No. 204 at 6 (citing Exhibit A-3); ECF No. 204-4.

provide support for the proposition that ITMC provided such management services for ITC's Deer Park facility's in 2019, without which it has no duty or liability to Plaintiffs. *Lefmark Management Co. v. Old*, 946 S.W.2d 52, 53-54 (Tex. 1997) (on the date of the incident, the former property manager did not own, occupy, manage, possess or otherwise have any control of the property for two months and therefore owed no duty to keep it safe). This evidence also does not contradict Mr. Jeansonne's declaration that ITMC was not involved in the Deer Park facility's operations after 2006. Jeansonne Decl., ECF No. 213-1 at ¶ 9.

### c. *TCEQ's Agreed Order and compliance history listing ITMC as Deer Park facility owner*

The Total Plaintiffs next argue that there is a contradiction between ITMC's sworn declaration that "ITMC has never held an ownership interest in or been involved with the management or operation of the Deer Park Facility," ECF No. 196 at 13 (citing ECF No. 1-1 at 47, Case No. 4:20-cv-00019), and an "Agreed Order" between ITC and the TCEQ, and the TCEQ compliance history that lists ITMC as a "current owner" of the Deer Park facility (along with Mitsui and ITC) as of January 29, 2007, *id.* (citing ECF No. 1-1 at 25, Case No. 4:20-cv-00019).[11]

Plaintiffs are correct that the TCEQ compliance history identifies ITMC as a

---

[11] The Bell Plaintiffs also attached the Agreed Order as an exhibit. ECF No. 204-2 at 15. Likewise, the Bell Plaintiffs attached the TCEQ Executive Summary-Enforcement Matter, ECF No. 204-2 at 2, and the TCEQ compliance history of ITC, ECF No. 204-2 at 8, to their motion to remand but did not reference them with respect to the summary inquiry arguments.

current owner of the Deer Park facility. ECF No. 204-2 at 8. It does not provide the source of this information. Nonetheless, assuming the information is correct, the TCEQ compliance history refers to the compliance period of July 2001 through July 2006. *Id.* Likewise, the TCEQ representative signed the Agreed Order on February 9, 2007, which relates to environment occurrences in April 2006. ECF No. 204-2 at 16, 19. Even assuming as Plaintiffs contend that ITMC was an owner and/or operator, this evidence is limited to the year 2006 and is not evidence that ITMC owned or was in control of operations at the Deer Park facility in 2019. At most, the evidence proves that ITMC was a *former* owner of the facility, and that is of no help to Plaintiffs because former owners are not held liable under the law of the state of Texas in these circumstances. *E.g.*, *Petri v. Kestrel Oil & Gas Props., L.P.*, 878 F. Supp. 2d 744, 754 (S.D. Tex. 2012) (prior owner who no longer occupies, manages, or possesses the property owes no duty to third-parties who are injured on the formerly owned premises six months after sale); *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 648 (Tex. 2016) (a former owner was not liable for injury to a third party when it had no ownership, possession, or control of the plant for eight years, even when it designed the system that caused the injury). Further, even if this evidence shows that ITMC was an owner of the facility in 2006, which seems to conflict with the evidence that ITMC was never an owner, it does not address Mr. Jeansonne' s declaration to the extent it establishes that ITMC was not an owner

17

in 2019. Jeansonne Decl., ECF No. 213-1 at ‖ 8. None of Plaintiffs' evidence establishes ITMC's ownership of the Deer Park facility in 2019 so there is no fact dispute on this issue based on this evidence.

### d. Sworn affidavits from ITMC's litigation opponents in 2008 and 2009

The Total Plaintiffs also argue that three sworn affidavits from 2008 and 2009 state that ITMC "operates the facility and land owned by Mitsui as described above for hire bulk liquid storage facility that stores a variety of chemicals and petro chemicals" and provided "a systematic, proactive approach to prevention of accidental releases of hazardous chemicals." ECF No. 196 at 13 (citing ECF 1-1 at 60, 66, 71, Case No. 4:20-cv-00019).[12] The Total Plaintiffs also argue that those affidavits further state that ITMC's "system includes but is not limited to the following: (a) A process hazard analysis; (b) Operating procedure; (c) Training; (d) Management of Claim; (e) Prestart review; (f) Compliance audit; and (g) Accident investigation." *Id.* These affidavits are from opponents in litigation filed in 2006 against ITMC.[13] Even assuming the statements are true, evidence that ITMC operated the Deer Park facility in 2006 is not evidence that ITMC was involved with

---

[12] Plaintiff Arguelles makes similar arguments and cites the same evidence. ECF No. 17 at 8 (citing Exhibit E). Likewise, the Bell Plaintiffs make identical arguments and cite the same evidence. ECF No. 204 at 5 (citing Exhibit A-7 ¶ 3, Exhibit A-8 ¶ 2, and attaching A-9); ECF Nos. 204-8, 204-9, and 204-10.

[13] The affidavits were from *Alamo Environmental, Inc. v. Vaquero Pipeline Co.*, No. 2006-75336 in the 157th District Court of Harris County, Texas.

the facility at the time of the 2019 fire. It is also consistent with Mr. Jeansonne's declaration that ITMC did not have any operational control of the facility after 2006. Jeansonne Decl., ECF No. 213-1 at ¶ 9. Without control of the plant's operations on the date at issue, ITMC owed no duty to keep the plant safe. *Lefmark Management Co.*, 946 S.W.2d at 53-54.

e. *ITMC's articles of incorporation*

The Bell Plaintiffs argue that ITMC's articles of incorporation from 1972 provide that it was formed "[t]o engage in the business of leasing as Lessee, and operating, a storage terminal in Harris County, Texas and any facilities used or useful in connection therewith or related thereto, and in the business of loading, unloading, packaging, and storing liquids and gases at such terminal or facilities." ECF No. 204 at 6 (citing Exhibit A-6, Section 1(a)); ECF No. 204-7. A statement of the purpose for which a business entity is formed does not prove that the business performed that function. Moreover, even if ITMC performed these functions, the article of incorporation do not prove that ITMC performed them at the Deer Park facility, or that even if it did perform them at the Deer Park facility, that its performance of those functions was in any way linked to the March 2019 fire.

f. *ITMC's subsidiary*

In its reply, the Total Plaintiffs argue that newly discovered evidence shows that, from 2007 through present, ITMC has a wholly owned subsidiary engaged in

tank terminal infrastructure development and property management. ECF No. 227 at 17-18. They assert that this contradicts Mr. Miles' declaration that ITMC was a shell company used for personal financial and retirement purposes. *Id.* This evidence does nothing to prove that ITMC had any role in the March 2019 fire at the Deer Park plant. The Total Plaintiffs argue, however, that it provides further evidence to doubt Mr. Miles' veracity. *Id.* Since the Court relies on Mr. Jeansonne's declaration and not Mr. Miles' declaration, it is of no consequence to the analysis of the improper joinder issue.

In sum, utilizing a summary inquiry, the Plaintiffs' allegations and evidence of ITMC's ownership or management of the Deer Park facility prior to 2007 fails to contradict ITC's affidavit of Mr. Jeansonne establishing that ITMC had no such ownership in 2019 or management at any time after 2006. Jeansonne Decl., ECF No. 213-1 at ¶¶ 8 & 9. Therefore, the uncontradicted evidence demonstrates that ITMC was improperly joined as a defendant in this suit.

For these reasons, the Plaintiffs' motions to remand should be denied.

## 2. Defendant ITMC should be dismissed and its motion should be denied as moot.

Because Plaintiffs improperly joined ITMC, and its presence in this case destroys diversity, this Court must dismiss ITMC from these proceedings, without prejudice. *See Tate v. Great West Casualty Co.*, 2016 WL 6107138, at *2 (W.D. La. Oct. 18, 2016) (explaining that an improperly joined non-diverse defendant must be

dismissed from suit); *Chieh v. Colony Ins. Co.*, 2006 WL 3437502, at *3 (E.D. La. 2006) (denying motion to remand, finding non-diverse defendant was improperly joined, and dismissing that defendant from suit). Accordingly, Defendant ITMC's "Renewed and Consolidated Rule 12 Motion to Dismiss" under Rule 12(b)(1) for lack of subject matter jurisdiction should be denied as moot.

## CONCLUSION

Therefore, the Court RECOMMENDS that:

i.    The Total Plaintiffs' motion to remand, ECF No. 196, be DENIED;

ii.   The Bell Plaintiffs' motion to remand, ECF No. 204, be DENIED;

iii.  Plaintiff Arguelles' motion to remand, ECF No. 17 filed in Case No. 4:19-cv-2674, be DENIED;

iv.   Defendant ITMC be DISMISSED WITHOUT PREJUDICE from these proceedings; and

v.    Defendant ITMC's "Renewed and Consolidated Rule 12 Motion to Dismiss," ECF No. 212, be DENIED AS MOOT.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 27, 2020, at Houston, Texas.


**Dena Hanovice Palermo**
**United States Magistrate Judge**