IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **WATERWAYS TANKERS INC.** | § § § | |
| *Plaintiff* | § § | |
| v. | § § | Case No. 4:19-cv-01460 |
| **INTERCONTNINENTIAL TERMINALS COMPANY LLC** | § § § § | |
| *Defendants* | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, Waterways Tankers Inc. ("Waterways"), by its attorneys Royston, Rayzor, Vickery & Williams, L.L.P., and files this its Original Complaint against Intercontinental Terminals Company LLC ("ITC" or "Defendant") respectfully showing as follows:

## I.
## JURISDICTION

1. This is a cause of action within the admiralty and maritime jurisdiction of the United States and this Honorable Court under 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. This claim involves damages arising out of the March 2019 fire at ITC's facility and subsequent oil spill into the Houston Ship Channel.

2. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1331 and 33 U.S.C. § 2717(b) because Waterways seeks recovery of damages under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701 *et seq.*

3. This Court has personal jurisdiction over ITC because ITC owns and operates an onshore terminaling service facility located at 1943 Independence Parkway South, La Porte, Texas

77571 ("Deer Park Facility") and maintains a corporate office at 1021 Main Street, Suite 1150, Houston, Texas 77002.

## II.
## VENUE

4. Venue is proper under 28 U.S.C. § 1391 and 33 U.S.C. § 2717(b), as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, the discharge, or injury or damages occurred in this district, and the Defendant resides, may be found, or has their principal office in this district.

## III.
## THE PARTIES[1]

5. Plaintiff in the action is Waterways Tankers Inc. Waterways is a foreign corporation registered in Liberia, with a business address of 80 Broad Street Monrovia, Liberia, West Africa.

6. Defendant ITC is a Delaware limited liability company with its principal place of business located at 1943 Independence Parkway, La Porte, Harris County, Texas 77571. ITC may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## IV.
## FACTS

### Background

7. ITC's Deer Park Facility is located on 265 acres situated along the Houston Ship Channel ("HSC").

8. The Deer Park Facility has 13.1 million barrels of capacity in 242 tanks. It stores petrochemical gases and liquids, as well as fuel oil, bunker oil, and distillates. The Deer Park

---

[1] Waterways wishes to participate in the Tolling Agreements with respect to NSK and Applied Technologies, Inc. dated March 17, 2021. Waterways reserves the right to amend this complaint to implead the defendants listed in the Tolling Agreement.

Facility advertises capacity for up to five (5) ocean-going tankers and fifteen (15) barges to be accommodated simultaneously.

9. Plaintiff Waterway was the owner of the NS CORONA (IMO 9341079) at the time of the ITC fire, described in more detail below. As a result of the fire and subsequent oil spill, Waterways suffered damages including the staining of the hull of the NS CORONA and other expenses related to hull cleaning and shifting.

### March 17, 2019 – The ITC Fire

10. On the morning of March 17, 2019, an above-ground storage tank (No. 80-08) containing naphtha caught fire at the Deer Park Facility in the 2nd 80's Tank Farm. This portion of the facility consisted of fifteen (15) 80,000-barrel capacity above-ground storage tanks.

11. At the time of the fire, ITC had not equipped the Deer Park Facility with a fixed gas detection system, which would have activated alarms to warn ITC personnel of a product release. As a result, ITC did not know about the naphtha release before the fire. Additionally, ITC did not equip Tank 80-08's piping manifold with emergency or remotely operated isolation valves. As a result, ITC was unable to control the release of naphtha.[2]

12. Before the fire, ITC hired IES and CIMA to revise the butane injection system and piping manifold of Tank 80-08 for the specific purpose of reducing the time required to offload trucks. IES performed the instrumentation and electrical work. CIMA provided the labor and equipment. Rather than replace the 2-inch piping with new 4-inch piping, CIMA installed used piping that was inadequate to serve as a butane injection line. CIMA was also responsible for obtaining all required work permits and for conducting inspections and tests on the newly installed

---

[2] *See* U.S. CHEMICAL SAFETY AND HAZARD INVESTIGATION BOARD – Factual Update – Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal (Published October 30, 2019) § 2.2, available at https://www.csb.gov/assets/1/20/itc_factual_update_2019-10-30.pdf?16522 (last accessed August 17, 2020).

butane injection line. CIMA failed to adequately conduct these inspections and tests. As a result, the butane injection system failed and caused the release of naphtha.[3]

13. The affected tanks contained Oil, as defined by the Oil Pollution Act, 33 U.S.C. § 2701(23), including: naphtha (No. 80-08), pyrolysis gasoline (Nos. 80-07; 80-14; 80-15), gasoline blendstock (Nos. 80-02; 80-03; 80-06), and base oil (No. 80-11).[4]

14. As a result of the initial inferno, eleven (11) of the fifteen tanks (15) collapsed or partially collapsed, causing the discharge of Oil products and presenting a substantial threat of discharge of Oil into the HSC and the navigable waters of the United States.

15. By the early morning hours of March 20, the initial fire was fully extinguished. Firefighting crews continued to spray foam and water on the tanks to prevent reignition.

**March 22, 2019 – Containment Wall Failure and Closure of the Houston Ship Channel**

16. On March 22, the fire reignited, causing a "catastrophic breach" of the Deer Park Facility's containment wall, releasing "an estimated 470,000-523,000 barrels of a mixture of fire water, firefighting aqueous film forming foams (AFFF), and remaining benzene, ethylbenzene, naphtha, xylene, toluene, pyrolysis gas (pygas) and other refined base oils from the storage tanks … into Tucker Bayou and adjacent waters, sediments, and habitats." The Oil and other chemicals "were carried out by stream flow and tides into the San Jacinto River, Houston Ship Channel, Carpenters Bayou, Old River, Santa Ana Bayou, and surrounding water bodies."[5]

17. ITC's Incident Commander Brent Weber described the Oil discharged into the navigable waters of the United States as "a mixture of the products that were in the tanks before

---

[3] *Id.*

[4] *See* ITC Tank Map, available at https://www.deerparktx.gov/DocumentCenter/View/7267/ITC-Tank-Map?bidId (last accessed August 10, 2020).

[5] *See* Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at: https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5609 (last accessed August 10, 2020).

the event occurred, which is primarily in that tank farm: gas blendstocks, naphtha, xylene, and pygas."[6]

18. In response to the containment wall failure, the U.S. Coast Guard closed a portion of the HSC to all vessel movements between Tuckers Bayou and Light 116.

19. Later in the evening, the USCG Sector office ordered the stoppage of all cargo operations in the Houston Ship Channel from Cargill Facility East Terminal to the Cemex USA Terminal, which is between Lights 139 and 129 of the HSC.

20. Cleanup operations continued for several weeks. The HSC and related waterways remained closed or subject to major restrictions (such as daylight restrictions and one-way traffic) until April 13, 2019 at the earliest.

**March 23, 2019 – January 7, 2020 – Agency Responses to Oil Spill and Pollution Prevention**



Figure 7: Aerial Image of the Ship Channel Boom Area, 23 March 2019, Flight 10

---

[6] *See* Press Conference, ITC Deer Park Fire and Cleanup (March 23, 2019), available at: https://youtube.com/watch?v=Xnzm2OEthJk&feature=youtu.be&t=1467 (last accessed August 10, 2020).

5

21. On March 23, 2019, the EPA issued a report entitled "Field Report for Airborne Data Collected in Support of USA EPA Region 6 Intercontinental Terminals Company LLC Fire 23 March 2019." The report included the above image with an explanation stating, "[c]aptured oil behind the boom is evident as is light sheen leakage moving into the channel."[7]

22. The EPA continued its ASPECT (Airborne Spectral Photometric Environmental Collection Technology) overflights to monitor the air quality and observe the oil sheen in the HSC.[8]

23. On March 25, 2019, "IR images collected over the confluence into the ship channel continued to show boomed oil products with some leakage occurring with sheen being driven to the southwest due to winds. No significant chemical detections were observed on this flight."[9] Two days later, "the confluence into the ship channel continued to show sheen in the waterway."[10] By then, more than half a million gallons of oily water had been skimmed and removed from the HSC and related waterways.[11]

24. Weeks later, "sheen remain[ed] in the boomed areas" and "[a] small amount of sheen leakage was observed migrating into the main channel."[12]

---

[7] *See* Field Report For Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire (March 23, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2023%20March%202019%20final.pdf (last accessed August 11, 2020).

[8] *See generally* EPA, ASPECT – EPA's Airborne Spectral Photometric Environmental Collection Technology (ASPECT), available at: https://www.epa.gov/emergency-response/aspect (last accessed August 11, 2020).

[9] *See* Field Report For Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire (April 15, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2015%20April%202019%20final.pdf (last accessed August 11, 2020).

[10] *Id.*

[11] *See* "Oil, sludge not contained near Deer Park chemical fire, Coast guard says," (March 26, 2019), available at: https://www.click2houston.com/news/2019/03/26/oil-sludge-not-contained-near-deer-park-chemical-fire-coast-guard-says/ (last accessed August 11, 2020).

[12] *See* Field Report For Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire (April 15, 2019), available at:

25.     The Texas Commission on Environmental Quality ("TCEQ"), the Texas Parks and Wildlife Department, the Texas General Land Office, the National Oceanic, and Atmospheric Administration, and the U.S. Department of the Interior (collectively, the "Trustees") have authority to perform a natural resource damage assessment related to the incident. On August 5, 2019, the Trustees issued their intent to perform a damage assessment "resulting from the release of hazardous substances, oil, and other chemicals at and from the ITC Facility into Tucker Bayou and the surrounding area."[13]

26.     The same day, the Trustees also issued their Preassessment Screen and Determination concluding: "In all, approximately 50 different chemicals regulated under CERCLA, the Clean Water Act (CWA), and OPA were released from the Facility. Thirty-six of the chemicals released are on the EPA's substance Registry Service, 17 are on the Consolidated List of Lists under CERCLA, and 5 are listed on OPA [*sic*] list Of [*sic*] Petroleum and Non-petroleum Oils."[14]

27.     The Trustees determined the following OPA products were released into the HSC and navigable waters of the United States: naphtha, pyrolosis gas (pygas), and other refined oil and petrochemical products including petroleum, distillates (petroleum) hydrotreated heavy paraffinic, and distillates (petroleum) solvent-dewaxed heavy paraffinic.[15]

---

https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2015%20April%202019%20final.pdf (last accessed August 11, 2020).

[13] *See* Trustees' Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at: https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5609 (last accessed August 11, 2020).

[14] *See* Trustees' Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at: https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5610 (last accessed August 11, 2020).

[15] *Id*.

28.     The Trustees also commented they were "unaware of any other exclusion or defense to liability under CERCLA, the Oil Pollution Act (OPA), or other applicable laws."[16]

29.     On January 7, 2020, TCEQ published an After Action Review ("AAR") addressing the incident[17] and confirming that the Deer Park Facility fire and resulting oil spill involved the discharge of at least the following OPA products into the HSC: naphtha, pyrolysis gas (pygas), gasoline blendstock, and base oil.[18]

30.     After the discharge, the AAR reported that "[b]ooms were deployed, and the U.S. Coast Guard closed a portion of the SHC between Tucker Bayou and the San Jacinto Monument to Crystal Bay."[19]

31.     The AAR also describes how U.S. Coast Guard personnel were "directly involved in the oversight and management of on-water recovery and remediation efforts of contracted Oil Spill Response Organizations" ("OSROs").[20]

32.     OSROs is a classification established by the U.S. Coast Guard in response to regulatory requirements of OPA. "OSRO is a voluntary program and was developed to assist oil handling facilities and vessels in preparing spill response plans."[21]

33.     According to the AAR, "the UC [Unified Command] and its contracted OSROs recovered 223,882 bbls [barrels] of oily-water petro-chemicals from waterways surrounding the

---

[16] *Id.*

[17] *See* TCEQ After Action Review Report (January 7, 2020), available at: https://www.tceq.texas.gov/assets/public/response/smoke/air/final-ITCFire-AAR-01.07.2020.pdf (last accessed August 11, 2020)

[18] *Id.* § 2.0

[19] *Id.* § 2.0

[20] *Id.* § 3.3.2

[21] *Id.*

ITC tank farm and HSC."[22] Efforts by the U.S. Coast Guard "led to the successful recovery of over 9.4 million gallons of oily-water petro-chemicals from the HSC and adjacent commercial waterways, as well as the decontamination of 224 vessels."[23]

34. To that end, according to the AAR, "214 response vessels, 142 skimmers, 50 vacuum trucks, and the placement of nearly 168,000 feet of boom were utilized to mitigate the substantial threat to the environment and nationally significant economic waterway."[24]

## V.
## FIRST CAUSE OF ACTION
### NEGLIGENCE AGAINST THE DEFENDANT

35. The plaintiff re-alleges and incorporates herein each and every allegation and averment in paragraphs 1 through 34 of Plaintiff's Original Complaint with the same force and effect as if it were more fully set forth herein.

36. The Defendant owed a legal duty to the Plaintiff to safely operate the Deer Park Facility.

37. Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any chemical storage terminal of ordinary prudence under the same or similar circumstances, and Defendant breached that duty, including but not limited to, one or more of these ways:

   a. Failure to develop, implement, and maintain proper operational procedures and protocol concerning safe chemical storage;

   b. Failure to develop, implement, and maintain proper safety procedures and protocol concerning safe chemical storage;

---

[22] *Id.*

[23] *Id.* § 3.4.2

[24] *Id.*

9

    c. Failure to properly maintain chemical storage tanks and related equipment;

    d. Failure to install proper equipment to prevent and contain a chemical release;

    e. Failure to adequately prepare for and implement effective procedures to prevent and contain a chemical release and fire;

    f. Failure to take reasonable action to prevent the chemical release and fire or minimize the effects thereof;

    g. Failure to properly train or manage its agents, servants, and employees to handle a chemical release and fire;

    h. Failure to exercise reasonable care under the circumstances; and

    i. Other acts of negligence that may be determined as discovery progresses.

38. The Defendant breached their duty to the Plaintiff by failing to maintain safe operations, causing a fire and subsequent oil spill.

39. The careless and negligent conduct of Defendant and the defective equipment of the Deer Park Facility caused the staining on the hull of the NS CORONA and subsequent damages to Plaintiff.

40. As a direct and proximate result of Defendant's negligence, the Plaintiff has suffered an injury and sustained damages for which the Defendant is liable.

## VI.
## SECOND CAUSE OF ACTION
### THE OIL POLLUTION ACT (33 U.S.C. § 2701)

41. The plaintiff re-alleges and incorporates herein each and every allegation and averment contained in paragraphs 1 through 40 of Plaintiff's Original Complaint with the same force and effect as if it were more fully set forth herein.

42. The Oil Pollution Act ("OPA") imposes liability upon a "responsible party for a …vessel or a facility from which oil is discharged, or which poses a substantial threat of a discharge of oil into or upon navigable waters or adjoining shorelines" for the damages that result from the incident, as well as removal costs. 33 U.S.C. § 2702(a).

43. ITC is the "Responsible Party," as defined under 33 U.S.C. § 2701(32), for the Deer Park Facility fire and resulting oil spill into the HSC.

44. The Deer Park Facility fire and resulting oil spill into the HSC involved a discharge of Oil within the meaning of OPA.

45. OPA imposes liability upon a Responsible Party for an incident, meaning "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil." 33 U.S.C. § 2701(14).

46. ITC is strictly liable as the Responsible Party for all the damages resulting from the Deer Park Facility fire and resulting oil spill under OPA.

47. The fire, collapse of storage tanks containing Oil, and subsequent breach of the containment area constitute a series of occurrences that caused a discharge and the substantial threat of a discharge of Oil into the HSC.

48. ITC has no right to limit its liability under any provision of OPA because the incident was proximately caused by its gross negligence or willful misconduct, or the violation of an applicable safety, construction or operating regulation by ITC, an agent, or employee of ITC, or a person acting pursuant to a contractual relationship with ITC.

49. As a result of the Deer Park Facility fire and resulting oil spill, Waterways has a right to recover damages under OPA, which provides for the recovery of the loss of profits or impairment of earning capacity due to the incident.

50. Waterways has satisfied all conditions precedent to commencement of this action under OPA, including, without limitation, by timely presenting its claim through the NPFC.

## VII.
## THIRD CAUSE OF ACTION
### DECLARATORY RELIEF

51. The plaintiff re-alleges and incorporates herein each and every allegation and averment contained in paragraphs 1 through 50 of Plaintiff's Original Complaint with the same force and effect as if it were more fully set forth herein.

52. Waterways made a presentment of its claim under 33 U.S.C. § 2713 by timely submitting a description of its claim and supporting documentation to the National Pollution Funds Center ("NPFC").

53. NPFC denied Waterways claim.

54. Based on NPFC's rejection of the claim, Waterways was harmed.

55. Given this actual controversy, Waterways requests entry of the following declaratory relief:

    a. A declaration that ITC is a Responsible Party under OPA.

    b. A declaration that the Deer Park Facility fire and resulting oil spill involved a discharge of Oil, as defined by OPA, and that OPA and its liability regime applies.

    c. A declaration that the economic loss rule does not bar Waterways' damages.

    d. A declaration that the staining of the hull the NS CORONA qualifies as physical damage and is recoverable.

## VIII.
## DAMAGES

56. As a direct result of the Deer Park Facility fire and subsequent oil spill, Waterways experienced at least **$92,909.53** in damages, including economic losses, additional fees, demurrage, costs, and expenses, lost revenue, lost profits, and other damages it would not have experienced but for the incident, including but not limited to charges related to hull cleaning, shifting, and increased agency costs:

    a. **Agency Costs – $45,347.42**
        i. $36,797.42 – Pilotage Expenses
        ii. $7,500 – Hull Cleaning
        iii. $1,050 – Additional Agency Costs
    b. **Houston Mooring Company Inc. – $10,254.82**
    c. **Suderman & Young Towing Company -- $37,307.29**

The invoices and supporting documentation for the damages detailed above have been attached hereto as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, respectively.

## IX.
## CONDITIONS PRECEDENT

57. All conditions precedent have been performed, satisfied or discharged by the Plaintiff.

58. All and singular, the premises of this Original Complaint are true and correct and within the jurisdiction of the United States and this Honorable Court.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Waterways Tankers Inc. prays that this cause be set for trial before a jury, that they recover judgment of and from the Defendants for the actual damages in such amount as the evidence may show and the jury may determine to be

proper, together with prejudgment interest, post-judgment interest, reasonable attorney's fees, costs of court, and such other and further relief to which they may show themselves to be justly entitled.

        Respectfully submitted,

        By: _/s/ Dimitri P. Georgantas_
        Dimitri P. Georgantas
        Federal I.D. No. 2805
        Texas State Bar No. 07805100
        1600 Smith Street, Suite 5000
        Houston, Texas 77002-7380
        Telephone: (713) 224-8380
        Facsimile: (713) 225-9545
        dimitri.georgantas@roystonlaw.com

        -and-

        Eugene W. Barr
        Federal I.D. No. 1144784
        Texas State Bar No. 24059425
        Blake E. Bachtel
        Federal I.D. No. 3479533
        Texas State Bar No. 24116055
        The Hunter Building
        306 22nd Street, Suite 301
        Galveston, Texas 77550
        Telephone: (409) 763-1623
        Facsimile: (409) 763-3853
        eugene.barr@roystonlaw.com
        blake.bachtel@roystonlaw.com

**ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP**