United States District Court
Southern District of Texas

**ENTERED**

July 02, 2021

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| *IN RE*: INTERCONTINENTAL | § | |
| TERMINALS COMPANY, LLC | § | Lead Case No. 4:19-cv-1460 |
| DEER PARK FIRE LITIGATION | § | |
| | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court[1] is Defendant Intercontinental Terminals Company, LLC's ("ITC") motion for summary judgment regarding claims under the Oil Pollution Act ("OPA"), ECF No. 395.[2] Based on a review of the record and the argument of counsel, the Court recommends that the motion be granted.

## I.   BACKGROUND

The essential facts are undisputed. These consolidated cases arise from a March 17, 2019 fire at Defendant ITC's Deer Park storage tank facility. As emergency crews worked to control the fire, various tank products, fire water, and firefighting foam accumulated in ITC's secondary containment area. ECF No. 395

---

[1] The district judge before whom this case is pending referred it for all pretrial purposes pursuant to 28 U.S.C. § 636. Order, ECF No. 112. Defendant's motion for summary judgment is appropriate for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

[2] Plaintiffs Castleton Commodities Merchant Trading L.P. and Castleton Commodities Merchant Asia Co. Pte. Ltd. ("Castleton"), Gunvor USA LLC ("Gunvor"), Rio Energy International, Inc. ("Rio Energy"), and Texas Aromatics LP ("Texas Aromatics") filed a response in opposition. ECF No. 410. Defendant filed a reply. ECF No. 421. The Court entered an order adopting and incorporating prior motion for summary judgment briefing on OPA claims to additional cases. ECF No. 855. The Court entered an order joining Plaintiffs United Seafood et al. to ITC's motion for summary judgment. ECF No. 868. Exhibit A contains a list of the Plaintiff's cases to which this R&R applies.

at 3-4; ECF No. 410 at 4. On March 22, 2019, damage to the secondary containment wall caused it to partially collapse and discharge an estimated 470,000 to 523,000 barrels of a mixture of fire water, firefighting aqueous film forming foams, and the remaining petrochemical products from the storage tanks into the Tucker Bayou and onto the Buffalo Bayou, San Jacinto River, and Houston Ship Channel. ECF No. 395 at 4; ECF No. 410 at 4-5. In a Preassessment Screen of the spill, several federal and state agencies involved with the spill clean-up determined that of the 50 chemicals released, 17 were hazardous substances on the Consolidated List of Lists under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and 5 were on the OPA's List of Petroleum and Non-Petroleum Oils. ECF No. 395 at 4; ECF No. 410 at 5.

Given the presence of both hazardous substances and oil in the spill, the United States Environmental Protection Agency ("EPA") initially opened a "CERCLA fund" account and the United States Coast Guard ("USCG") opened an account with the Oil Spill Liability Trust Fund ("OSLTF") administered under the OPA. Memorandum from William Grawe, Director, NPFC, to Maarten Overbeek, NPFC, Fin. Mgmt. (Dec. 3, 2020). However, after subsequent sampling of the discharge by the Texas Commission on Environmental Quality ("TCEQ") confirmed that the spill was oil mixed with hazardous substances, the EPA and USCG determined that the spill was a CERCLA incident. *Id.* The USCG closed the OSLTF

account and transferred response costs to form a unilateral CERCLA account. *Id.*
*Compare* ECF No. 395 at 4-5 (describing timeline of remediation effort), *with* ECF
No. 410 at 18 (noting that EPA elected to pursue cleanup under CERCLA rather
than OPA).

Plaintiffs are commodities merchants, traders and marketing companies who
allege economic losses suffered due to interruptions in their business activities
caused by closures of the Houston Ship Channel. ECF No. 1, Case No. 4:20-cv-1387
(Plaintiff Texas Aromatics' original petition); ECF No. 1, Case No. 4:20-cv-1843
(Plaintiff Rio Energy's original petition); ECF No. 1, Case No. 4:20-cv-1867
(Plaintiff Gunvor's original petition); ECF No. 1, Case No. 4:20-cv-1930 (Plaintiff
Castleton's original petition). Between June and August of 2019, Plaintiffs sent
demand letters to ITC claiming OPA damages, which ITC denied in October 2019.
ECF No. 395 at 6-7. Plaintiffs filed suits against ITC, asserting claims for: (1)
monetary damages under the OPA and (2) declaratory relief that (a) the OPA applies;
(b) ITC is a "Responsible Party" thereunder; (c) and the economic loss rule does not
apply. *Id.* at 7.

Defendant filed the instant motion, which seeks to dismiss all of Plaintiffs'
OPA claims. ECF. 395 at 25. Defendant argues that the OPA does not apply as a
matter of law to the spill because it contains a mixture of both oil and CERCLA-
regulated hazardous substances and is thus covered exclusively under CERCLA, and

not the OPA. Defendant further argues that the USCG's decision not to designate ITC as a "responsible party" under the OPA bars Plaintiffs' private right of action because the designation of a "responsible party" is a condition precedent to allowing private damage claims. ECF No. 395 at 2.

Plaintiffs oppose the motion, arguing that ITC's interpretation of the OPA is without merit. Plaintiffs argue that ITC is strictly liable under the OPA for economic damages claims resulting from closure of the Houston Ship Channel. Plaintiffs assert that violation of CERCLA is not a defense to OPA liability and both CERCLA and the OPA can apply to a mixed spill of oil and CERCLA-regulated hazardous substances. ECF No. 410 at 2-3. Plaintiffs further argue that designation in the OPA is optional, and that the language only applies to designation of a "source," not of a "responsible party," where there is no dispute that ITC was the "source" of the discharge. ECF No. 410 at 3. Lastly, Plaintiffs argue that deference to agency interpretations and guidance are inappropriate or inapplicable in this case. ECF No. 410 at 4.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entities it to judgment. Fed. R. Civ. P. 56(a). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Parrish v. Premier Directional Drilling, L.P.*, 917

F.3d 369, 378 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes about material facts are "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Brackeen v. Haaland*, 994 F.3d 249, 290 (5th Cir. 2021) (quoting *Anderson*, 477 U.S. at 248)).

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Design, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (alteration in original) (quoting *Equal Emp't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). If the movant meets its burden, the non-movant must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *LHC Grp., Inc.*, 773 F.3d at 694).

In reviewing the evidence, the Court may "not make credibility determinations or weigh the evidence." *Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "The evidence of the non-movant is to be believed, with all justifiable inferences drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Liberty Lobby*, 477 U.S. at 255). However, the non-movant's burden is not satisfied with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by

only a 'scintilla' of evidence." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). The Court may also not, "'in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts' to survive summary judgment." *Id.* (quoting *Little*, 37 F.3d at 1075).

## III.   DISCUSSION

### A. The Oil Pollution Act of 1990

In the wake of the Exxon Valdez oil spill, Congress passed the Oil Pollution Act of 1990 (codified at 33 U.S.C. §§ 2701-2762) "to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *Rice v. Harken Expl. Co.*, 250 F.3d 264, 266 (5th Cir. 2001) (citing S. REP. NO. 101-94). Pursuant to an Executive Order, the USCG administers the OPA. Exec. Order No. 12,777, 56 Fed. Reg. 54,757 (Oct. 18, 1991). The OPA provides that:

Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.

33 U.S.C. § 2702(a).

The OPA defines an "incident" as "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities or any combination thereof, resulting in the discharge or substantial threat of discharge of oil[.]" 33 U.S.C. §2701(14). A "responsible party" in the case of an onshore facility is "any person owning or operating the facility, except a Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body, that as the owner transfers possession and right to use the property to another person by lease, assignment, or permit." 33 U.S.C. § 2701(32)(B).

A "responsible party" is "strictly liable for cleanup costs and damages and first in line to pay any claims for removal costs or damages that may arise under the OPA." *United States v. Am. Commercial Lines, L.L.C.*, 759 F.3d 420, 422 n.2 (5th Cir. 2014); *see also* 33 U.S.C. § 2702(a). However, a "responsible party" has three absolute defenses, which must be established by a preponderance of the evidence: (1) an act of God; (2) an act of war; or (3) an act or omission of a third party, with certain exceptions. *See* 33 U.S.C. § 2703(a).

Relevant to this matter, under the OPA, a "responsible party" may be liable for, among other things, economic losses suffered by individual claimants. The OPA provides that claimants may recover against a "responsible party" "damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction,

7

or loss of real property, personal property, or natural resources[.]" 33 U.S.C. § 2702(b)(2)(E). However, to receive recovery, claimants must follow the OPA's presentment requirement. Under the present requirement, claimants must present a claim to a "responsible party" and wait the shorter of 90 days or until the "responsible party" denies all liability before filing suit in court for damages. *See* 33 U.S.C. § 2713. The purpose of the presentment requirement is to "promote settlement and thereby reduce litigation and streamline claims processes." *Nguyen v. Am. Commercial Lines, L.L.C.*, Nos. 11-1799, 11-2705, 2014 WL 3587490, at *3 (E.D. La. July 17, 2014).

The OPA also created the OSLTF, which the Director of USCG's National Pollution Center manages. In addition, the OPA established a claims process under which claimants may in some instances submit OPA claims to the OSLTF in lieu of filing suit in court. *See* 33 U.S.C. §§ 2701(11); 2713(b). If a claimant accepts payment from the OSLTF, the government is then "subrogated" to the claimant's rights under the OPA and may later assert those rights in litigation against a "responsible party" and thereby recoup any payments on those claims. *See* 33 U.S.C. § 2715.

**B. The Oil Pollution Act does not apply in this matter because CERCLA more appropriately covered the spill in the Houston Ship Channel containing both oil and CERCLA-regulated hazardous substances.**

To prevail on summary judgment, Defendant must establish that "there is no genuine issue as to any material fact and [it] is entitled to judgment as a matter of law." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). In pertinent part, the OPA imposes liability on "each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil[.]" 33 U.S.C. § 2702(a). To prevail on their claims against Defendant, Plaintiffs must prove that "(1) Defendant is a 'responsible party,'[3] (2) for the 'facility,' (3) from which oil was discharged, or from which there was a substantial threat of discharge, (4) 'into or upon the navigable waters or adjoining shorelines,' and (5) that the discharge resulted in 'removal costs and damages.'" *United States v. Viking Resources, Inc.*, 607 F. Supp. 2d 808, 815 (S.D. Tex. 2009) (quoting 33 U.S.C. § 2702(a)). The central dispute is whether "oil" within the statutory definition of the OPA was discharged from the facility.

The OPA defines "oil" as:

oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, but does not

---

[3] The OPA defines a responsible party as the owner or operator of a facility. 33 U.S.C. § 2701(32)(B). Plaintiffs assert that Defendant meets the statutory definition of a responsible party. ECF No. 410 at 9, 24. Defendant does not dispute that it is the owner of the facility that caused the spill. Instead, it contends that since the USCG did not designate a source of the spill, it is not a responsible party under the OPA and, therefore, Plaintiffs have no private right of action under the OPA. ECF No. 395 at 19-25. The private right of action is addressed in the next section.

> include any substance which is specifically listed or designated as a
> hazardous substance under subparagraphs (A) through (F) of section
> 101(14) of the Comprehensive Environmental Response,
> Compensation, and Liability Act [(CERCLA)] (42 U.S.C. 9601) and
> which is subject to the provisions of that Act[.]

33 U.S.C. § 2701(23). Known as the "hazardous substance" exception, the definition of "oil" in the OPA excludes substances covered by CERCLA.

As a threshold issue, the parties disagree over whether mixed spills, containing both oil and CERCLA-regulated hazardous substances, fit within the meaning of "oil" and thus fall within the coverage of the OPA. Defendant ITC argues that mixed spills are the exclusive domain of CERCLA, based on the text of both statutes, legislative history, and agency guidance. ECF No. 395 at 8-17. Plaintiffs, on the other hand, argue that both CERCLA and the OPA can equally apply to mixed spills, and that violation of CERCLA does not remove OPA liability. ECF No. 410 at 11-19.

Whether CERCLA and the OPA both apply to a mixed spill is a question of first impression for the Court.

1. The Oil Pollution Act does not apply to spills containing a mixture of oil and CERCLA-regulated hazardous substances.

In a statutory construction case, the inquiry "begins with the language of the statute, and, in the absence of ambiguity, often ends there." *In re Deepwater Horizon*, 745 F.3d 157, 173 (5th Cir. 2014) (internal citation omitted). However, neither party contends that a spill containing both oil and CERCLA-regulated

hazardous substances fits within a plain language reading of the statutory definition of "oil."

Yet, the language of the statute is not the only tool at the Court's disposal. "To determine the meaning of a statute, 'we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.'" *Buffalo Marine Servs., Inc. v. United States*, 663 F.3d 750, 757 (5th Cir. 2011) (quoting *Crandon v. United States*, 494 U.S. 152, 158 (1990)). Due to their "common purposes and shared history," courts have often looked to CERCLA to understand the scope of the OPA. *Id.*; *see also United States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 420-21 (5th Cir. 2018); *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 349-50 (5th Cir. 2017).

Congress intended the OPA "to provide a comprehensive regulatory and liability scheme governing all forms of petroleum pollution affecting the navigable waters of the United States, to the extent they are not covered by [CERCLA]." *Avitts v. Amoco Prod. Co.*, 840 F. Supp. 1116, 1121 (S.D. Tex. 1994), *vacated on other grounds by* 53 F.3d 690 (5th Cir. 1995). As Representative Stangeland explained, "The conferees have defined the term 'oil' to clarify that the term is ***mutually exclusive*** from hazardous substances subject to regulation under [CERCLA]. In fact, the conferees have focused on oil spills rather than hazardous substances or hazardous materials spills throughout development of the legislation." 136 CONG.

Rᴇᴄ. H6933-02 (daily ed. Aug. 3, 1990) (statement of Rep. Stangeland) (emphasis added). This is because there was to be "no overlap in the liability provisions of CERCLA and the Oil Pollution Act." 136 Cᴏɴɢ. Rᴇᴄ. H6210-03 (daily ed. Aug. 1, 1990) (Joint Explanatory Statement of the Committee of Conference).

In 1980, Congress enacted CERCLA "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination." *Atlantic Richfield Co. v. Christian*, 140 S. Ct. 1335, 1345 (2020) (alteration in original) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014)). The EPA was charged with managing CERCLA. CERCLA imposes liability on parties for damages stemming from a release or threatened release of a "hazardous substance." 42 U.S.C. § 9607(a). Notably, several courts have held that "when a mixture or waste solution contains hazardous substances, that mixture is itself hazardous for purposes of determining CERCLA liability" and that "[l]iability under CERCLA depends only on the presence in any form of listed hazardous substances." *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1201 (2d Cir. 1992); *see also Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 669 (5th Cir. 1989) ("The plain statutory language fails to impose any quantitative requirement on the term hazardous substance and we decline to imply that any is necessary."); *Eagle-Picher Indus., Inc. v. U.S. Envtl. Prot. Agency*, 759 F.2d 922, 930-31 (D.C. Cir. 1985) (EPA acted fully within its power when it construed as "hazardous

12

substances" petitioner's mining wastes and fly ash). The CERCLA definition of "hazardous substance," however, includes a specific "petroleum exception," excluding: "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance . . . natural gas, natural gas liquids, liquified natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas)." 42 U.S.C. § 9601(14).

From its inception the "petroleum exception" was read narrowly to only exclude spills consisting of strictly oil. "Under section 2(b)(13), petroleum, including crude oil and including fractions of crude oil which are not otherwise specifically listed or designated as hazardous substances . . . is excluded from the definition of a hazardous substance. The reported bill does not cover spills or other releases strictly of oil." S. REP. No. 96-848, at 28 (1980).

The EPA's subsequent interpretation confirms that the "petroleum exception" continued to be understood in this way. If a CERCLA-regulated hazardous substance present in a spill of oil is "not normally found in refined petroleum fractions or present at levels which exceed those normally found in such fractions," the substance is not within the "petroleum exception" and still subject to CERCLA.[4] U.S. ENVTL.

---

[4] Plaintiffs argue that reliance on the 1987 EPA Office of General Counsel's interpretation of CERCLA's "petroleum exception" is misplaced because the memorandum pre-dates the enactment of the OPA by three years. ECF No. 410 at 14-16. Plaintiffs contend that after the enactment of the OPA, the same oil spill already covered by CERCLA would be subject to OPA liability as well. *Id.* at 15. However, Plaintiffs' argument is flawed. As explained further below, the legislative history of the OPA establishes that Congress was aware of the EPA's narrow

PROT. AGENCY, OFFICE OF GEN. COUNSEL, SCOPE OF THE CERCLA PETROLEUM EXCLUSION UNDER SECTIONS 101(14) AND 104(A)(2) (1987); *see also In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, Nos. 10-2454,10-1768, 2015 WL 5363039, at *5 (E.D. La. Sept. 14, 2015) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-45 (1984) (deferring to 1987 EPA Office of General Counsel's "reasonable interpretation" of petroleum exclusion)). Thus, at the enactment of the OPA, it was understood that mixed spills containing both oil and CERCLA-regulated hazardous substances did not fall under the "petroleum exception" but were instead covered under the definition of "hazardous substances" in CERCLA.

The OPA's "hazardous substance" exception is a reference back to the scope of coverage of CERCLA. "[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Collins v. Mnuchin*, 938 F.3d 553, 570 (5th Cir. 2019) (quoting *Lorillard v. Pons*, 434 U.S. 575, 581 (1978)). Since Congress enacted the OPA to fill in the gap left by CERCLA's "petroleum exception," the Court can infer that the OPA's "hazardous substances" exception should be read so that the

---

interpretation of the "petroleum exception" when enacting the OPA and crafted the OPA to fill in the gap left by the "petroleum exception." Moreover, Congress and several courts provide that the OPA was designed to dovetail and not overlap with CERCLA.

definition of "oil" does not include any substance understood to be within the scope of CERCLA's definition of "hazardous substances." *See, e.g., Avitts v. Amoco Prod. Co.*, 840 F. Supp. 1116, 1121 (S.D. Tex. 1994) ("The OPA provides a comprehensive regulatory and liability scheme governing all forms of petroleum pollution affecting the navigable waters of the United States, to the extent they are not covered by [CERCLA]."); *accord Sun Pipe Line Co. v. Conewago Contractors, Inc.*, No. 4:CV-93-1995, 1994 WL 539326, at *11 (M.D. Pa. Aug. 22, 1994) ("The OPA was written to dovetail with preexisting federal legislation, specially, with [CERCLA] and the Clean Water Act."). Thus, since at the enactment of the OPA the scope of CERCLA's definition of "hazardous substances" already included mixed spills, the Court can infer that when Congress drafted the OPA, it did not intend to include mixed spills in the definition of "oil" under the OPA.

In contrast, Plaintiffs argue that since the structure of the OPA's "hazardous substance exception" is similar to CERCLA's "petroleum exception," the rules of statutory interpretation dictate that the "hazardous substance" exception should be read narrowly as well, to leave space for both statutes to apply to mixed spills. ECF No. 410 at 13. However, while Plaintiffs are correct that similar statutes should be read consistently, *see, e.g., Morales v. TWA, Inc.*, 504 U.S. 374, 384-85 (1992), that general rule "only makes sense when the word or phrase being interpreted has acquired special, non-literal significance as a legal term of art." *Boca Ciega Hotel,*

*Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (5th Cir. 1995) (citing *Molzof v. United States*, 502 U.S. 301, 307-309 (1992)). Plaintiffs have not identified to the Court any word or phrase in the "hazardous substance exception" which has become a legal term of art.

Moreover, Plaintiffs cite *POM Wonderful L.L.C. v. Coca-Cola Co.* in support of their argument that holding that Plaintiffs cannot bring suit under the OPA would mean that CERCLA precludes an OPA private right of action. 573 U.S. 102 (2014). In *POM*, the Supreme Court held that the Federal Food, Drug, and Cosmetic Act ("FDCA") does not preclude a private Lanham Act claim because, among other things, "when two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *Id.* at 115. However, *POM* is inapplicable in this matter. Unlike the FDCA and the Lanham Act, which both touch the same issue – food and beverage labelling – CERCLA and the OPA address two distinct sets of facts: spills of "hazardous substances" and spills of "oil," respectively. Plaintiffs are unable to bring their OPA claim in this matter not because CERCLA precludes it, but rather because the spill at issue is not within the scope of the OPA's definition of "oil."

Plaintiffs also cite *United States v. English* as an example of a case in which both CERCLA and the OPA applied to the same spill. No. CV00-00016ACKBMK,

2001 WL 940946, at *5-*7 (D. Haw. Mar. 28, 2011). The key difference, however, between *English* and this matter is that *English* involved spills that were segregated. One of the spills involved leakage of oil into the navigable waters as well as free floating petroleum in the vessel. The other spill involved hazardous substances contained in 55-gallon drums in a separate part of the vessel from the oil spill. CERCLA applied to the hazardous substance clean up and the OPA applied to the oil clean up.

The parties do not dispute that the discharge in the Houston Ship Channel was a mixture of oil and other hazardous substances that either had leaked from the tanks or were used to put out the fire. *See* Memorandum from William Grawe, Director, NPFC, to Maarten Overbeek, NPFC, Fin. Mgmt. (Dec. 3, 2020). *Compare* ECF No. 395 at 17 ("ITC's tank farm discharged a mixture of oil and multiple CERCLA-regulated substances into waterways[.]"), *with* ECF No. 410 at 11 ("The fact that ITC *also* discharged CERCLA-listed hazardous substances that allegedly mixed with the oil . . . ."). No evidence established that the mixed spill was separable into its distinct hazardous substance and oil parts. In fact, the only evidence, the pictures of the spill, suggests the contrary is true. ECF No. 1 at 8, Case No. 4:20-cv-1387 (citing *Field Report For Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire* (Mar. 23, 2019), https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%2023%20

March%202019%20fina.pdf); ECF No. 1 at 8, Case No. 4:20-cv-1843 (same); ECF No. 1 at 8, Case No. 4:20-cv-1867 (same); ECF No. 1 at 8, Case No. 4:20-cv-1930 (same).

2. <u>The spill in the Houston Ship Channel contained a "so commingled" mixture of oil and CERCLA-regulated hazardous substances.</u>

In support of its motion, Defendant points to the determination by EPA and USCG that the spill in the Houston Ship Channel was a CERCLA hazardous product. ECF No. 395 at 17-18. Defendant argues that this determination excludes the spill from the definition of "oil" under the OPA, and without a discharge of "oil," there can be no OPA liability. *Id.* at 18.

Plaintiffs argue that the Court's inquiry should instead end with the text of the OPA. ECF No. 410 at 8-10. Plaintiffs contend that the OPA is unambiguous in its coverage of the discharge in question. They argue that the OPA imposes strict liability on "responsible parties" for removal costs and damages associated with oil spills in navigable waters; ITC is the responsible party as the owner and operator of the Deer Park facility, which discharged hundreds of thousands of barrels of oil into the Houston Ship Channel; and the discharge resulted in the closure of the Houston Ship Channel and damages to the Plaintiffs. ECF No. 410 at 7-11.[5]

---

[5] Plaintiffs have the burden of pleading sufficient facts in their complaints to establish ITC's liability under the OPA. Plaintiffs must allege facts that indicate that the spill in the Houston Ship Channel was "oil" within the statutory definition. *See United States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 420 (5th Cir. 2018) ("33 U.S.C. § 2702(a) establishes that each 'responsible party' shall be liable for the removal costs and damages when oil is discharged into navigable

The parties do not dispute that on March 22, 2019, 470,000 to 523,000 barrels of a mixture of fire water, firefighting aqueous film forming foams, and various petrochemical products were released into the waterways adjacent to ITC's Deer Park facility. ECF No. 395 at 4; ECF No. 410 at 4-5. Plaintiffs call into question the make-up of the spill in the Houston Ship Channel, alleging that OPA products composed 88% of all chemicals discharged by volume and that the remaining hazardous substances might be indigenous to oil and thus covered under the OPA or simply not present in the Houston Ship Channel. ECF No. 410 at 6-7. Specifically, Plaintiffs suppose that ITC's toluene tank remained intact and did not leak into the spill, the firefighting foam did not actually contain a CERCLA-regulated hazardous substance, and other petrochemicals were indigenous to the oil and thus do not count as "hazardous substances" based on CERCLA's "petroleum exception." ECF No. 410 at 6. In support of their argument Plaintiffs point to the Harris County Fire Marshal's Office Final report, which stated and provided aerial photos that the toluene tank was upright and undistorted. JIM HARGRAVES, HARRIS CTY. FIRE MARSHAL'S OFFICE, FINAL REPORT 150-51 (2019). Plaintiffs also allege that Defendant failed to carry its initial burden in its motion for summary judgment to demonstrate that there is an absence of a genuine issue of material fact on the

---

waters or onto adjoining shorelines."). This includes showing that the substance is not a "hazardous substance" under CERCLA. *See* 33 U.S.C. § 2701(23).

CERCLA status of firefighting foam and other chemicals named in its motion. ECF No. 410 at 6. Plaintiffs further consider in a footnote that the spilled xylene could have burned and/or migrated to the Houston Ship Channel and thus was not commingled with the other substances. ECF No. 410 at 7 n.13.

However, as the non-movant, Plaintiffs must do more than show that there is "some metaphysical doubt as to the material facts," and their burden is not met by "unsubstantiated assertions." *Salazar-Limon*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Plaintiffs must "adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Terry v. Chicago Bridge & Iron Co.*, 283 F. Supp. 3d 601, 605 (S.D. Tex. 2017) (quoting *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)). Therefore, even when "view[ing] the evidence in the light most favorable to the non-movant and draw[ing] all reasonable inferences in the non-movant's favor," *Brewer v. Hayne*, 860 F.3d 819, 822 (5th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)), and accepting that there may be a genuine issue of material fact as to several of the spill composition-related issues Plaintiffs raised, the Court cannot accept Plaintiffs' argument that xylene was not present in the Houston Ship Channel. Defendant satisfied its initial burden by citing to conclusions the EPA and USCG reached based on sampling the TCEQ conducted that found the existence of CERCLA-regulated hazardous substances,

including xylene, in the adjacent ditch to the containment wall that ultimately led into the Houston Ship Channel. ECF No. 395 at 5. Plaintiffs, on the other hand, cite to nothing in support of their speculation that the xylene may not have reached the Houston Ship Channel. What the Court is left with then is a discharge in the Houston Ship Channel that consisted of a mixture of oil and at least one undisputed CERCLA-regulated hazardous substance – xylene. This alone is sufficient for Defendant's burden on summary judgment showing that the spill did not come within the OPA's definition of oil because of the presence of CERCLA hazardous substances.

Plaintiffs attempt to create an issue of material fact sufficient to overcome a motion for summary judgment by contending in a single sentence that Defendant failed to establish that the spill in the Houston Ship Channel was "so commingled" such that its oil and CERCLA-regulated hazardous substance parts could not be separated. ECF No. 410 at 20. Plaintiffs' briefing is insufficient to address this issue or meet its burden of creating a fact issue. *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court.").

Moreover, according to the two agencies that administer CERCLA and the OPA, the EPA and the USCG, mixed spills that are "so commingled" should be addressed under CERCLA, and not the OPA. *See* U.S. COAST GUARD, NAT'L POLLUTION FUNDS CTR., OIL SPILL LIABILITY TRUST FUND (OSTLF) FUNDING FOR

OIL SPILLS (2006) ("If the substances become so-comingled that they cannot be separated, [CERCLA] Superfund is used to clean the spill."); U.S. ENVTL. PROT. AGENCY, OFFICE OF GEN. COUNSEL, SCOPE OF THE CERCLA PETROLEUM EXCLUSION UNDER SECTIONS 101(14) AND 104(A)(2) (1987) ("If the hazardous substance and the petroleum product are so commingled that, as a practical matter, they cannot be separated, then the entire oil spill would come under CERCLA's jurisdiction.").

Contrary to Plaintiffs' single sentence argument, Defendant carried its burden of showing the absence of a genuine dispute of material fact on the "so commingled" nature of the discharge because there is no dispute that the EPA and USCG addressed the spill in the Houston Ship Channel under CERCLA, rather than the OPA. *Compare* ECF No. 395 at 4-6 (describing joint determination to proceed with cleanup under CERCLA instead of OPA), *with* ECF No. 410 at 18 (noting EPA's invocation of CERCLA). Since the EPA and USCG are aware of and charged with abiding by their own rules and regulations, *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) ("[A]n agency must abide by its own regulations."), the Court can infer that the spill was "so commingled" that it could not be separated into its oil and CERCLA-regulated hazardous substance parts. Based on internal USCG guidance for the management of oil spills, the USCG would not have determined that the spill fell under CERCLA, had the spill not been "so commingled." *See* U.S. COAST

GUARD, NAT'L POLLUTION FUNDS CTR., OIL SPILL LIABILITY TRUST FUND (OSTLF) FUNDING FOR OIL SPILLS (2006) ("If the substances become so co-mingled that they cannot be separated, Superfund [under CERCLA] is used to clean the spill.").

The determination by the EPA and USCG that the spill in the Houston Ship Channel was a CERCLA incident is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *see also Lopez Ventura v. Sessions*, 907 F.3d 306 (5th Cir. 2018) (agency interpretations that lack the force of law are entitled to *Skidmore* deference). *Skidmore* deference accords "weight" to an agency's judgment depending on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Envtl. Integrity Project v. U.S. Envtl. Prot. Agency*, 969 F.3d 529, 540 (5th Cir. 2020) (quoting *Dhuka v. Holder*, 716 F.3d 149, 156 (5th Cir. 2013)). In applying *Skidmore*, the Court ultimately asks whether the interpretation of the OPA in this determination is "persuasive." *Id.* at 541. As explained above, an interpretation of the OPA that places mixed spills outside of the definition of "oil" accords well with the design, purpose, and legislative history of the OPA. Moreover, the EPA and USCG have consistently held that "so commingled" spills of oil and CERCLA-regulated hazardous substances fall under CERCLA rather than the OPA. *See* U.S. COAST GUARD, NAT'L POLLUTION FUNDS CTR., OIL SPILL LIABILITY TRUST FUND (OSTLF) FUNDING FOR

OIL SPILLS (2006); U.S. ENVTL. PROT. AGENCY, OFFICE OF GEN. COUNSEL, SCOPE OF THE CERCLA PETROLEUM EXCLUSION UNDER SECTIONS 101(14) AND 104(A)(2) (1987).

In short, the motion for summary judgment should be granted because Defendant carried its burden by establishing that the spill in the Houston Ship Channel is not "oil" as defined in the OPA. Mixtures of both oil and CERCLA-regulated hazardous substances do not fit within the definition of "oil" either as the statute is written or as the term was conceived by Congress. Since "oil" under the OPA serves to fill in the gap left by the definition of "hazardous substances" under CERCLA and its corresponding "petroleum exception," and the OPA and CERCLA are mutually exclusive of each other, a substance that falls under CERCLA cannot also invoke liability under the OPA. At the time of the enactment of the OPA, it was understood that mixed spills fell within the scope of CERCLA's definition of "hazardous substances." Moreover, there is no genuine dispute of material fact that the spill in the Houston Ship Channel contained oil and at least one CERCLA-regulated hazardous substance. Plaintiffs must do more than speculate as to the composition of the spill. Instead, the Court defers to the determination by the EPA and USCG that the mixture in the Houston Ship Channel was "so commingled" as to prevent separation of its oil and CERCLA-regulated hazardous substance parts.

**C. Court declines to address whether Plaintiffs have a private right of action against ITC.**

Even assuming the Oil Pollution Act applied to the discharge in the Houston Ship Channel, Defendant argues that Plaintiffs lack a private right of action under the OPA because the USCG did not designate ITC as the "responsible party." ECF No. 395 at 19-25. Defendant contends that USCG's decision not to designate ITC as a "responsible party" makes proper compliance with the presentment requirement impossible because, based on the text and structure of the OPA, designation of a "responsible party" is a condition precedent to claim presentment.[6]

Plaintiffs counter that for a party to be strictly liable under the OPA, it must only fit the statutory definition of "responsible party," and that the USCG is not required to make any designation to establish liability under the OPA. ECF No. 410 at 24-25.

Because the Court finds that the OPA does not cover the spill in the Houston Ship Channel, the Court declines to address whether Defendant ITC is a "responsible party" as defined by the OPA and whether Plaintiffs have a private right of action

---

[6] The OPA outlines specific procedures that claimants must follow before filing suit in court to recover damages. Section 2713(a) provides: "Except as provided in subsection (b), all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title." 33 U.S.C. § 2713(a); *see also* 33 U.S.C. § 2714(a). Presentment of claims to the "responsible party" is a "mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a)." *Nguyen v. Am. Commercial Lines, L.L.C.*, 805 F.3d 134, 139 (5th Cir. 2015).

against ITC as an alternative grounds for summary judgment. *See, e.g.*, *McNickles v. Thaler*, No. H-10-3493, 2012 WL 568069, 2012 WL 568069, at *5 (S.D. Tex. Feb. 21, 2012) (declining to address alternative summary judgment ground because respondent was already entitled to summary judgment).

## CONCLUSION

Therefore, the Court **RECOMMENDS** that:

1.  Defendant's Motion for Partial Summary Judgment Regarding Claims Under the OPA, ECF No. 395, should be **GRANTED**.

2.  The following Plaintiffs' cases that assert only OPA claims against ITC should be **DISMISSED WITH PREJUDICE**:

    a.  *Texas Aromatics LP v. Intercontinental Terminals Company LLC*, Case No. 4:20-cv-1387;

    b.  *Rio Energy International, Inc. v. Intercontinental Terminals Company LLC*, Case No. 4:20-cv-1843;

    c.  *Gunvor USA LLC v. Intercontinental Terminals Company LLC*, Case No. 4:20-cv-1867;

    d.  *Castleton Commodities Merchant Trading L.P. and Castleton Commodities Merchant Asia Co. PTE. Ltd. v. Intercontinental Terminals Company LLC*, Case No. 4:20-cv-1930; and

    e.  *Petredec Trading (U.S.), Inc. v. Intercontinental Terminals Company LLC*, Case No. 4:21-cv-846.

3.  The following Plaintiffs' cases that assert other claims as well as OPA claims, the OPA claims should be **DISMISSED:**

a.  *GTM International LLC v. Intercontinental Terminals Company LLC, et al.*, 4:19-cv-1460;

b.  *Charlotte Owners Inc. v. Intercontinental Terminals Company LLC, et al.*, 4:19-cv-1460;

c.  *Waterways Tankers Inc. v. Intercontinental Terminals Company LLC, et al.*, 4:19-cv-1460;

d.  *Petrochem Transport, Inc. v. Intercontinental Terminals Company LLC, et al.*, Case Number 4:20-cv-36;

e.  *United Seafood, et al. v. Intercontinental Terminals Company LLC, et al.*, Case Number 4:20-cv-1714;

f.  *Hyundai Marine Fire Insurance v. Intercontinental Terminals Company LLC*, Case Number 4:21-cv-497;

g.  *AET Inc. Ltd. v. Intercontinental Terminals Company, LLC*, Case Number 4:21-cv-825;

h.  *Clean Harbors Deer Park, LLC v. Intercontinental Terminals Company, LLC*, Case Number 4:21-cv-1105;

i.  *O'Rourke Marine Services, LLC v. Intercontinental Terminals Company LLC*, Case Number 4:21-cv-1200;

j.  *SASOL Chemicals North America LLC, et al. v. Intercontinental Terminals Company LLC, et al.*, 4:21-cv-1251; and

k.  *INEOS USA LLC v. Intercontinental Terminals Company LLC, et al.*, 4:21-cv-1254.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

27

Signed on July 2, 2021, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**