United States Courts
Southern District of Texas
FILED
December 06, 2023
Nathan Ochsner, Clerk of Court

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 27, 2023
Lyle W. Cayce
Clerk

No. 22-20456

---

Rogelio Lopez Munoz

*Plaintiff,*

*versus*

Intercontinental Terminals Company, L.L.C.,

*Defendant,*

---

Texas Aromatics, L.P.,

*Plaintiff—Appellant,*

*versus*

Intercontinental Terminals Company, L.L.C.,

*Defendant—Appellee,*

---

Rio Energy International, Incorporated,

*Plaintiff—Appellant,*

*versus*

Intercontinental Terminals Company, L.L.C.,

*Defendant—Appellee,*

---

GUNVOR USA, L.L.C.,

*Plaintiff-Appellant*,

*versus*

INTERCONTINENTAL TERMINALS COMPANY, L.L.C.,

*Defendant—Appellee*,

---

CASTLETON COMMODITIES MERCHANT TRADING L.P.;
CASTLETON COMMODITIES MERCHANT ASIA COMPANY PTE, LIMITED,

*Plaintiffs—Appellants*,

*versus*

INTERCONTINENTAL TERMINALS COMPANY, L.L.C.,

*Defendant—Appellee*,

---

STOLT TANKERS, B.V.,

*Plaintiff—Appellant*,

*versus*

INTERCONTINENTAL TERMINALS COMPANY, L.L.C.,

*Defendant—Appellee*,

---

PETREDEC TRADING (U.S.), INCORPORATED,

*Plaintiff—Appellant*,

*versus*

INTERCONTINENTAL TERMINALS COMPANY, L.L.C.,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:19-CV-1460, 4:20-CV-1387,
4:20-CV-1863, 4:20-CV-1867,
4:20-CV-1930, 4:21-CV-846,
4:22-CV-201

Before JOLLY, SOUTHWICK, and OLDHAM, *Circuit Judges*.
E. GRADY JOLLY, *Circuit Judge*:

The Oil Pollution Act of 1990 ("OPA")[1] and Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA")[2] both create comprehensive remedial schemes that apportion liability for the costs of removing environmental pollutants. But OPA, unlike CERCLA, expressly allows for recovery of purely economic losses. Liability under both statutes depends on the type of pollutant released into the environment. As its title suggests, OPA deals only with oil, while CERCLA deals with "hazardous substances."

But which statute governs when oil is mixed with hazardous substances? That is the question in this case.

In March of 2019, Intercontinental Terminals Company, LLC ("ITC") spilled a mixture of oil and hazardous substances into the Houston

---

[1] Pub. L. No. 101-380, 104 Stat. 484 (codified as amended in scattered sections of 33 U.S.C.).

[2] Pub. L. No. 96-510, 94 Stat. 2767 (codified as amended in scattered sections of 26, 33, and 42 U.S.C.).

No. 22-20456

Ship Channel. In response to the spill, Plaintiffs filed this suit against ITC, which seeks economic loss damages under OPA.[3] Their OPA claims rest on one argument: that OPA's definition of "oil" includes mixtures of oil and CERCLA-regulated hazardous substances.

The district court granted summary judgment in favor of the defendant, holding that the mixed spill containing oil and hazardous substances is not "oil" as defined by OPA. Consequently, it dismissed each of the Plaintiffs' complaints. For the reasons set out below, we AFFIRM the judgment of the district court.

I.

A.

Because this case involves the interplay of OPA and CERCLA, we provide a brief overview of the two statutes before turning to the facts and procedural history.

In 1980, Congress enacted CERCLA. *See OHM Remediation Servs. v. Evans Cooperage Co.*, 116 F.3d 1574, 1578 (5th Cir. 1997). Its purpose is to facilitate the cleanup of hazardous substances that have been released into the environment and to shift the costs of the environmental response to those responsible for such a release. *Id.* To effectuate that purpose, CERCLA allows private parties to bring cost-recovery claims against responsible

---

[3] The parties to this appeal asserted exclusively OPA claims in their complaints. They are Texas Aromatics, L.P., Rio Energy International, Inc., Gunvor USA, L.L.C., Castleton Commodities Merchant Trading, L.P., Castleton Commodities Merchant Asia Co. Pte., Petredec Trading (U.S.) Inc., and Stolt Tankers, B.V. We will call them "Plaintiffs."

parties for the costs associated with responding to the release of "hazardous substance[s]." *See Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238, 242 (5th Cir. 1998) (citing 42 U.S.C. § 9607(a)), *modified on reh'g*, 160 F.3d 238 (5th Cir. 1999). Thus, liability under CERCLA depends on what constitutes a "hazardous substance."

CERCLA defines "hazardous substance" by reference to substances listed under various other federal statutes. *See* 42 U.S.C. § 9601(14). But CERCLA expressly excludes from its "hazardous substance" definition "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance." *Id.* This exclusion is known as the "petroleum exclusion." *E.g.*, *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 428 n.4 (5th Cir. 2013).

Ten years after CERCLA was enacted, and in the wake of the Exxon Valdez oil spill, Congress passed OPA in an effort "to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *Rice v. Harken Expl. Co.*, 250 F.3d 264, 266 (5th Cir. 2001) (citing S. REP. NO. 101-94, at 1–2 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 722, 723). To that end, OPA, like CERCLA, creates a comprehensive scheme that governs and apportions liability for the costs of responding to oil spills. *See Savage Servs. Corp. v. United States*, 25 F.4th 925, 931 (11th Cir. 2022). OPA imposes strict liability on parties responsible for the discharge of oil in Section 1002(a) of the statute, codified at 33 U.S.C. § 2702(a). That section provides the following:

> [E]ach responsible party for . . . a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining

No. 22-20456

> shorelines ... is liable for the removal *costs and damages* specified in [Section 2702(b)] that result from such incident.

33 U.S.C. § 2702(a) (emphasis added). Thus, liability under OPA is limited to the discharge or "substantial threat of a discharge" of "oil." OPA defines "oil" as:

> oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, *but does not include* any substance which is specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act [(CERCLA)] (42 U.S.C. [§] 9601) and which is subject to the provisions of that Act[.]

33 U.S.C. § 2701(23) (emphasis added). As one can see, OPA's definition of "oil" explicitly excludes substances covered by CERCLA in its "hazardous substance" exclusion.

Critically here, as we have noted, OPA, unlike CERCLA, allows injured parties to recover economic losses resulting from oil spills. *Id.* § 2702(b)(2)(E).

B.

Against this statutory backdrop, we return to the case at hand. Intercontinental Terminals Company ("ITC") operates a chemical-storage facility at Deer Park, Texas. On March 17, 2019, a fire broke out at that facility. As emergency crews worked to control the fire, various tank products, fire water, and firefighting foam accumulated in ITC's secondary

containment area. The secondary containment area was enclosed by ITC's "secondary containment wall surrounding the tank farm." But on March 22, 2019, damage to the secondary containment wall caused it to collapse partially, resulting in the discharge of an estimated 470,000 to 523,000 barrels of the following products: fire water, firefighting aqueous film forming foams, benzene, ethylbenzene, naphtha, xylene, toluene, pyrolysis gas, and refined oils. Those unwelcomed products ultimately entered the Houston Ship Channel ("HSC"). Jumping into action, the Coast Guard temporarily restricted traffic on a portion of the HSC.

The EPA coordinated response efforts with federal and state agencies, including the Coast Guard and Texas Commission on Environmental Quality ("TCEQ"). The agencies involved with the spill clean-up determined that, of the 50 chemicals released, 17 were "hazardous substances" under CERCLA, and five were "oils" under OPA. Because the spill contained both hazardous substances and oil, the EPA initially opened a "CERCLA fund" and the Coast Guard opened an account with the Oil Spill Liability Trust Fund ("OSLTF") administered under OPA. Later, sampling by the TCEQ confirmed that the spill was *oil mixed with hazardous substances*. And as a result, the EPA and Coast Guard determined that the spill was a CERCLA incident. Thus, the Coast Guard closed the OSTLF account and transferred response costs to the CERCLA fund.

Once the response costs were transferred to the CERCLA fund, some claimants unsuccessfully applied for compensation from the Coast Guard's National Pollution Fund Center ("NPFC"), which administers the OSLTF. In denying those claims, the NPFC concluded that the mixed spill of both CERCLA-regulated hazardous substances and OPA oil fell within CERCLA's definition of hazardous substances and therefore was excluded from OPA's definition of oil. Other claimants sued ITC under OPA, alleging

economic losses due to interruptions of their business activities caused by closures of the HSC.

On April 17, 2020, Texas Aromatics filed its complaint against ITC and asserted two claims exclusively under OPA: (1) monetary damages for violations of OPA and (2) declaratory relief that OPA applies. Several other parties filed substantially identical complaints, which the district court consolidated herein.

ITC and Plaintiffs agreed that resolving the threshold issue of OPA's applicability would save time and expense. And so, in the early stages of the proceeding, the parties jointly filed a motion for leave to allow ITC to file a motion for summary judgment seeking dismissal of all OPA claims. The court granted the motion for leave. On September 4, 2020, ITC filed its motion for summary judgment limited to the issue of OPA's applicability. ITC argued that OPA did not apply as a matter of law because the spill contained a mixture of both oil and CERCLA-regulated hazardous substances. The asserted claims against ITC were, therefore, covered exclusively under CERCLA. The Plaintiffs opposed that motion, arguing that both CERCLA and OPA can apply to a mixed spill of oil and CERCLA-regulated hazardous substances.

On July 2, 2021, the Magistrate Judge issued a report and recommendation ("R&R") recommending that the district court grant ITC's motion for summary judgment. The R&R surveyed the text and structure of the statutes, their legislative histories, administrative guidance. It concluded that "OPA and CERCLA are mutually exclusive of each other" and that OPA "does not apply to spills containing a mixture of oil and CERCLA-regulated hazardous substances." The R&R rejected Plaintiffs' argument that CERCLA and OPA could both apply to mixed spills. It

reasoned that the Plaintiffs could not bring their OPA claim because the spill at issue—a spill containing both oil and hazardous substances—is not within the scope of the OPA's definition of "oil." That is, the "hazardous substance" exception in OPA's definition of "oil" excludes substances covered by CERCLA, including mixtures of oil and hazardous substances that cannot be segregated.

In a three-page order, the district court concluded that the R&R was "well founded and that it should be adopted," granted ITC's motion for summary judgment, and entered final judgment in Plaintiffs' consolidated case.[4] This appeal followed.

## II.

The district court premised its summary judgment decision on the proposition that the commingled spill of oil and CERCLA-regulated hazardous substances is not "oil" within the meaning of OPA. Accordingly, we will review de novo the district court's ruling on that question of law. *See Grant v. Dir., Off. of Worker's Comp. Programs*, 502 F.3d 361, 363 (5th Cir. 2007) (citation omitted).

## III.

### A.

---

[4] The district court's consolidated summary judgment order dismissed all OPA claims against ITC. The Plaintiffs in this appeal exclusively asserted OPA claims. Thus, the order was final as to each of their complaints.

No. 22-20456

As is always true in cases of statutory interpretation, we begin with the text of the statute. *See In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019) ("In matters of statutory interpretation, text is always the alpha."). "Statutory definitions control the meaning of statutory words . . . in the usual case." *Burgess v. United States*, 553 U.S. 124, 129 (2008) (cleaned up); *see also Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition . . . .").[5]

Thus, OPA's definition of "oil" warrants repetition:

> oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, but does not include any substance which is specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of section 101(14) of [CERCLA] and which is subject to the provisions of that Act.

33 U.S.C. § 2701(23). It would certainly seem that OPA's definition of "oil" explicitly carves out any CERCLA-regulated substances in its "hazardous substance" exclusion.

Plaintiffs contend, however, that the "hazardous substance" exclusion's plain and unambiguous terms compel the conclusion that it does not apply to oil that has been commingled with hazardous substances; that is, since oil commingled with a hazardous substance is not "specifically listed" as a hazardous substance under CERCLA, OPA's "hazardous substance"

---

[5] We are aware of no federal court, aside from the district court in this case, that has been required to interpret the definition of "oil" under OPA as it relates to oil commingled with CERCLA hazardous substances.

exclusion should be narrowly construed so that only unadulterated hazardous substance spills are precluded from OPA coverage. We cannot agree.

B.

As earlier noted, OPA was enacted against the backdrop of existing federal environmental laws, including CERCLA. *See United States v. Am. Com. Lines, L.L.C.*, 759 F.3d 420, 424 (5th Cir. 2014). Thus, although the scope of OPA's "oil" definition presents a question of first impression in this court, we are not "painting on a blank canvas." *See Savage Servs. Corp. v. United States*, 25 F.4th 925, 943 (11th Cir. 2022). "[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 581 (1978). Applied to this case, we can assume that when Congress enacted OPA in 1990, it was aware that courts had interpreted CERCLA's "hazardous substance" definition to include mixtures of oil and hazardous substances.

To reiterate, CERCLA defines "hazardous substance" to mean "any element, compound, mixture, solution, or substance" designated as such under CERCLA or other environmental statutes. *See* 42 U.S.C. § 9601(14). But CERCLA's "hazardous substance" definition explicitly excludes "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance...." *Id.*

In 1989, the Ninth Circuit became the first circuit to address the scope of CERCLA's petroleum exclusion. In *Wilshire Westwood Associates v. Atlantic Richfield Corp.*, 881 F.2d 801, 810 (9th Cir. 1989), the court interpreted the petroleum exclusion also to exclude oil products even when

No. 22-20456

such products contain limited amounts of certain CERCLA-regulated hazardous substances, including components indigenous to petroleum or additives acquired during the normal refining process.

That same year, this court addressed the meaning of the term "hazardous substance" under CERCLA, *see Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir. 1989), when we held that CERCLA "fails to impose any quantitative requirement on the term hazardous substance." *Id.* at 669. Stated differently, the particular concentration of hazardous substances "regardless of how low a percentage" is not relevant to liability determinations under CERCLA. *See B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1200 (2d Cir. 1992). Thus, "[w]hen a mixture or waste solution contains hazardous substances, that mixture is itself hazardous." *Id.* at 1201.

Finally, although it is subordinate to the language of the statute, we should at least take note of the EPA's early interpretation of the scope of CERCLA's coverage. In a 1987 memorandum, the EPA considered whether oil that has been contaminated by hazardous substances is excluded from CERCLA. It explained:

> The legislative history [of CERCLA] clearly contemplates that the petroleum exclusion will not apply to mixtures of petroleum and other toxic materials since there would not be releases 'strictly of oil.' ... [I]t was clear that the omission of oil coverage [from CERCLA] was intended to cover spills of oil only, and there was no intent to exclude from the bill mixtures of oil and hazardous substances.

Memorandum from Francis S. Blake, Gen. Couns., U.S. Env't Prot. Agency, to J. Winston Porter, Assistant Adm'r for Solid Waste and Emergency

No. 22-20456

Response, U.S. Env't Prot. Agency, Scope of the CERCLA Petroleum Exclusion Under Sections 101(14) and 104(a)(2) (July 31, 1987).

Taken together, these interpretations of CERCLA reflect a recognition that when oil contains a hazardous substance that is not indigenous to the refining process, the commingled mixture *is itself a hazardous substance* covered by CERCLA.[6] And when Congress exempted CERCLA-regulated hazardous substances from OPA's coverage, it did so in the light of those interpretations. To the point: Congress intended to exclude "hazardous substances"—including oil that has been commingled with hazardous substances—from the OPA's coverage.

OPA's legislative history, again subordinate to text, confirms this understanding. The House Conference Report notes:

> The definition [of "oil"] . . . does not include any constituent or component of oil which may fall within the definition of "hazardous substances", as that term is defined for the purposes of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). This ensures that there will be no overlap in the liability provisions of CERCLA and the Oil Pollution Act.

---

[6] When interpreting the scope of CERCLA's petroleum exclusion, at least one court has determined that "Congress intended that the petroleum exclusion address oil spills, not releases of oil which has become infused with hazardous substances." *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 893 (10th Cir. 2000) (applying CERCLA to spill of "hazardous wastes [that] have commingled with the petroleum products in the soil and [were] floating on the groundwater beneath the refinery...").

H.R. REP. NO. 101-653, at 2 (1990) (Conf. Rep.), *as reprinted in* 1990 U.S.C.C.A.N. 779, 780. Congress's intent is lucid: OPA and CERCLA create mutually exclusive liability regimes. *See Am. Com. Lines*, 759 F.3d at 424 ("[W]hen Congress enacts a carefully calibrated liability scheme with respect to specific remedies, the structure of the remedies suggests that Congress intended for the statutory remedies to be exclusive." (cleaned up)).

Plaintiffs argue, however, that interpreting CERCLA and OPA as mutually exclusive liability regimes will lead to an absurd result; that is, such an interpretation incentivizes the intentional or reckless commingling of oil with hazardous substances so that those responsible may not be sued for economic losses under OPA. We cannot agree with such a sinister characterization.

As outlined above, parties who are found responsible for the discharge of oil mixed with hazardous substances, do not escape liability. For example, under CERCLA, those parties responsible for such a discharge are still liable for their equitable share of the cleanup costs incurred by both the government and private parties. *See Amoco*, 889 F.2d at 667–68 (citing 42 U.S.C. §§ 9607(a)(4)(B), 9613(f)). Furthermore, CERCLA does not close the door for liability under state or other federal laws, including common law.

To be sure, we hold that the Plaintiffs may not bring economic loss claims under OPA because the mixed spill is covered under the terms of CERCLA. And undoubtedly, our holding will affect the Plaintiffs' respective means to recovering economic losses. But even if we believed that Congress had failed properly "to appreciate the effect" of its chosen words, the governing absurdity standard, controlling our review, is too high to accommodate such an opinion. *See Tex. Brine Co. v. Am. Arb. Ass'n.*, 955 F.3d 482, 486 (5th Cir. 2020) (citing ANTONIN SCALIA & BRYAN A. GARNER,

Reading Law: The Interpretation of Legal Texts 238 (2012)). "Absurdity requires more than questionable policy." *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 291 (5th Cir. 2012) (citation omitted). It requires a result that "no reasonable person could intend." *See Tex. Brine*, 955 F.3d at 486. Thus, "vague notions" about OPA's overall purpose cannot "overcome the words of [OPA's] text" that, as earlier discussed, exclude the mixed spill at issue here from its coverage. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)(quotation omitted).[7]

## IV.

To sum up: We hold that the district court correctly interpreted OPA's definition of "oil" to exclude a commingled mixture of oil and CERCLA-regulated "hazardous substances." Consequently, the district court correctly granted ITC's motion for summary judgment and dismissed Plaintiffs' OPA claims. The judgment of the district court dismissing Plaintiffs' OPA claims is, therefore,

---

[7] Plaintiffs make several additional arguments on appeal that are either conclusory, unpreserved, or asserted positions that this opinion rejected—that is, that OPA governs spills of substances governed by CERCLA and that their respective jurisdictions are not mutually exclusive. *See OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 456 n.10 (5th Cir. 2020) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003)) ("[A]rguments raised in a perfunctory manner, such as in a footnote, are waived."). The district court did not err in granting ITC's summary judgment motion. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (citations omitted).

No. 22-20456

AFFIRMED.