IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| *IN RE:* INTERCONTINENTAL TERMINALS COMPANY LLC DEER PARK FIRE LITIGATION | § § § | Lead Case No. 4:19-cv-01460 |
| FIRST COAST LOGISTICS, INC. v. INTERCONTINENTAL TERMINALS COMPANY LLC | § § § § § § | Case No. 4:19-cv-01886 |

**INTERCONTINENTAL TERMINALS COMPANY LLC'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
IN THE *HILLMAN* MATTER**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 2

    I.    Plaintiffs' claims are governed by Texas law because the activities alleged to have proximately caused their losses have no connection to traditional maritime activity. ............................................ 2

    II.   Even if maritime law governs, Plaintiffs' claims are barred by laches. ................................................................................................... 8

          A.    ITC's laches defense is suitable for summary disposition. ..................................................................................... 8

          B.    Plaintiffs bear the burden of proof because they did not file suit within the analogous two-year limitations period. ............................................................................................ 8

          C.    Plaintiffs have no evidence of excusable delay or lack of prejudice. ................................................................................ 10

CONCLUSION .................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agribusiness United DMCC v. Blue Water Shipping Co.*,
 Civil Action Case No. CV 16-15926, 2018 WL 1468160 (E.D. La. Mar. 26, 2018) .... 9

*Barrois v. Nelda Faye, Inc.*,
 597 F.2d 881 (5th Cir. 1979) ................................................................................... 8

*Bisso Marine Co., Inc. v. Conmaco, Inc.*,
 No. CIV. A. 99-0227, 2001 WL 434493 (E.D. La. Apr. 27, 2001) ............................ 13

*Blessinger v. Aecom*,
 526 F. Supp. 3d 1319 (S.D. Fla. 2021) ..................................................................... 9

*Cabasug v. Crane Co.*,
 956 F. Supp. 2d 1178 (D. Haw. 2013) ..................................................................... 7

*Chesher v. 3M Co.*,
 No. 3:15-CV-02123-DCN, 2018 WL 1536573 (D.S.C. Mar. 29, 2018) ..................... 7

*Cornetta v. United States*,
 851 F.2d 1372 (Fed. Cir. 1988) .............................................................................. 12

*Cruz-Aponte v. Caribbean Petroleum Corp.*,
 869 F. Supp. 2d 247 (D.P.R. 2012) .......................................................................... 6

*Cunningham v. Interlake Steamship Co.*,
 567 F. 3d 758 (6th Cir. 2009) ................................................................................. 10

*Exxon Co., U.S.A. v. Sofec, Inc.*,
 517 U.S. 830 (1996) ................................................................................................ 5

*Fierro v. Cockrell*,
 294 F.3d 674 (5th Cir. 2002) .................................................................................. 11

*Green v. Quarterman*,
 No. 3:07-CV-0765-N, 2007 WL 2729909 (N.D. Tex. Sept. 19, 2007) ..................... 11

*In re Anderson*,
 897 F. Supp. 1311 (D. Or. 1995) .............................................................................. 7

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
  513 U.S. 527 (1995) .................................................................................... 1, 2, 5, 7

*Kenney v. Trinidad Corp.*,
  349 F.2d 832 (5th Cir. 1965) ................................................................................. 9

*Khoja v. Just Energy (U.S.) Corp.*,
  No. 4:16-CV-03468, 2018 WL 11473329 (S.D. Tex. Dec. 7, 2018) ........................... 10

*Mahony v. Lowcountry Boatworks, LLC*,
  465 F. Supp. 2d 547 (D. S.C. 2006) ....................................................................... 7

*Maxwell v. Foster*,
  Civ. A. 98-1378, 1999 WL 33507675 (W.D. La. Nov. 24, 1999) ............................... 8

*McChristian v. Lykes Bros. S. S. Co.*,
  94 F. Supp. 149 (S.D. Tex. 1950) ......................................................................... 11

*Mecom v. Levingston Shipbuilding Co.*,
  622 F.2d 1209 (5th Cir. 1980) ........................................................................ 10, 12

*Morales v. Moore-McCormack Lines, Inc.*,
  208 F.2d 218 (5th Cir. 1953) ..................................................................... 9, 11, 13

*Munoz v. Intercontinental Terminals Company LLC*,
  85 F.4th 343 (5th Cir. 2023) .................................................................................. 9

*Pac. Dawn, LLC v. New Orleans Marine Service, Inc.*,
  Civil Action No. 10-2852, 2012 WL 686034 (E.D. La. Mar. 2, 2012) ................. 11, 12

*Poret ex rel. Alyson, Seth Poret v. Louisiana Lift & Equip., Inc.*,
  No. Civ. A. 02-3642, 2003 WL 1338726 (E.D. La. Mar. 13, 2003) ........................... 7

*Sisson v. Ruby*,
  497 U.S. 358 (1990) ............................................................................................... 7

*Turner v. Baylor Richardson Med. Ctr.*,
  476 F.3d 337 (5th Cir. 2007) ............................................................................... 10

*Union Pac. R.R. Co. v. Dunham Price Marine, LLC*,
  No. 06-291, 2008 WL 3539726 (W.D. La. Aug. 13, 2008) .................................. 8, 9

*W. Wind Afr. Line, Ltd. v. Corpus Christi Marine Servs., Co.*,
  834 F.2d 1232 (5th Cir. 1988) ............................................................................. 13

*Wilson v. Edwards Transp. Co.*,
  120 F. Supp. 742 (S.D. Tex. 1953) ................................................................. 11, 12

**STATUTES**

46 U.S.C.A. § 30106 ............................................................................................................. 9

**OTHER AUTHORITIES**

Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:36 (6th ed. 2023) ................. 10

Defendant Intercontinental Terminals Company LLC ("ITC") files this reply in support of its motion for summary judgment seeking dismissal with prejudice of all claims asserted in *Hillman, et al v. Intercontinental Terminals Company, LLC*, Case No. 3:22-cv-00087.

## INTRODUCTION

Plaintiffs' claims are premised on a fire that started because of a leak at a pump for a land-based storage tank. This is undisputed. The evidence establishes unequivocally that ITC was storing and circulating naphtha product in Tank 80-8 at its Deer Park facility in the time leading up to the March 17, 2019 incident, and Plaintiffs contend that ITC's operation and maintenance of these land-based instrumentalities proximately caused the fire. These activities bear no relation to traditional maritime activities. As a matter of law, Plaintiffs' claims are governed by Texas law.

Because this necessarily means their claims are time barred, Plaintiffs have attempted to cast their claims as maritime in nature. They base this characterization on two things: (1) ITC's provision of vessel loading and unloading services generally at its Deer Park facility (despite the fact that ITC also provides many land-based services at this facility, including storage, truck, rail, and pipeline services), and (2) the happenstance that a vessel was scheduled to arrive at the Deer Park terminal later in the day on March 17, 2019 to load the product being stored in Tank 80-8. Neither supports Plaintiffs' position. Supreme Court precedent requires that the Court look to the activity alleged to have proximately caused the incident in determining whether there is a substantial relationship to maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 541 (1995). The fact that ITC happens to offer vessel

loading and unloading services at its Deer Park facility (among many other services) is not a proximate cause of the incident, and nothing in Plaintiffs' allegations or the undisputed evidence suggests that a vessel's anticipated (but as yet unfulfilled) arrival was a proximate cause of the incident at Tank 80-8. Rather, the activities alleged to have proximately caused the incident – the operation and maintenance of ITC's land-based storage tank during product storage and circulation – have no relationship to traditional maritime activity.

Texas law applies to Plaintiffs' claims and necessitates their dismissal on statute of limitations grounds. Alternatively, even under maritime law, Plaintiffs claims are barred by laches because they have presented no competent summary judgment evidence of excusable delay or lack of prejudice to ITC. Plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

**I.  Plaintiffs' claims are governed by Texas law because the activities alleged to have proximately caused their losses have no connection to traditional maritime activity.**

For maritime law to apply in this case, Plaintiffs must show that "at least one alleged tortfeasor was *engaging in* activity substantially related to traditional maritime activity and such activity is claimed to have been *a proximate cause* of the incident." *Grubart*, 513 U.S. at 541 (emphases added). Put another way, "the general character of the activity *giving rise* to the incident [must show] a substantial relationship to traditional maritime activity." *Id.* at 539 (emphasis added). Plaintiffs cannot make this showing.

In arguing that maritime law applies in this case, Plaintiffs attempt to characterize ITC's conduct leading up to this incident as "the preparation and loading of chemical

2

cargo onto ITC's customer's vessels for marine transportation." *Munoz* Dkt. 1604, Resp. at 15. This characterization is not supported by Plaintiffs' allegations or the undisputed evidence.

With respect to Plaintiffs' allegations, they describe the events leading up to the incident as follows:

> 19. The specific area of ITC facility where the fire occurred is known throughout the company as the "Second 80's." This is because the tanks located within this section of the tank farm are 80,000 barrel tanks. They are approximately 120` tall and 40` in diameter. The tanks are of welded construction and have a wall thickness of approximately 1-1/2". The tank farm itself is approximately 328,000 square feet with piping and equipment throughout. The Second 80's contained 15 tanks in a 3 x 5 construction.
>
> 20. The levels for the tanks are monitored in a control room and recorded using Supervisory Control and Data Acquisition ("SCADA") data. Harris County Fire Marshal's Office ("HCFMO") data gathered by a subpoena served to ITC in connection with HCFMO's investigation into the incident shows that petrochemical product was being released from Tank number 80-8 for approximately 30 minutes. Approximately 9,000 gallons or 220 Barrels of Butane-enriched Naphtha would have been released during this time period. For reference, according to the American Petroleum Institute, a barrel is approximately 42 U.S. gallons. Due to the facilities' close proximity to the Houston Ship Channel, the majority of these petrochemicals, combined with run off from the continuous firefighting efforts, entered the Galveston Bay Complex.
>
> 21. The HCFMO determined that the fire that occurred at the ITC facility on March 17, 2019 was the result of a failure within the manifold power frame of Tank 80-8. The failure within the power frame resulted in an uncontained release of Naphtha enriched with Butane.

*Hillman* Dkt. 1 ¶¶ 19-21.

Nothing in these allegations suggests anything having to do with vessel loading, much less shows how activities associated with vessel loading were a proximate cause of Plaintiffs' alleged losses. Indeed, the words "vessel" and "vessels" appear nowhere in

Plaintiffs' complaint, save for paragraph 27 where Plaintiffs describe alleged impacts to Plaintiff Baytown Seafood, LLC. *Id.* ¶ 27.

The undisputed facts similarly reveal no connection to vessel loading or other maritime activities. As explained in ITC's motion, butane deliveries were made to Tank 80-8 via truck on March 16, 2019. *Munoz* Dkt. 1467-48, Anticipated Movement Sheet; *Munoz* Dkt. 1467-49, First Butane Truck Delivery; *Munoz* Dkt. 1467-50, Second Butane Truck Delivery. No vessels were involved in this process. *Id.* Following these two deliveries, the pump for Tank 80-8 remained on to circulate the product. *Munoz* Dkt. 1466-61, 4/29/22 Holley Tr. at 138:11-21; *Munoz* Dkt. 1466-51, Capetillo Tr. at 80:03-15; *Munoz* Dkt. 1467-8, DP-04-AL-1.01.04 at 3. This was done in accordance with ITC's procedures for unloading butane trucks, a procedure that has nothing to do with loading vessels or preparation for loading vessels. *Munoz* Dkt. 1467-8, DP-04-AL-1.01.04 at 3. Around 9:30 a.m. on March 17, 2019, the volume of product in Tank 80-8 began to decrease as recorded on ITC's SCADA data. *Munoz* Dkt. 1467-52, Excerpt of SCADA Data. By 10:00 a.m., the control system showed that the tank volume decreased by approximately 220 barrels, *Munoz* Dkt. 1574-3, HCFMO Report at 9, a loss of 0.275% of the tank's capacity. At approximately 10:00 a.m., a fire began near the Tank 80-8 piping manifold. *Id.* at 6, 11. No vessel loading or preparation for same was occurring when the leak occurred or the fire began.

Seeking to avoid these undisputed facts, Plaintiffs hinge their entire argument for maritime jurisdiction on (i) the fact that vessel loading and unloading is ***one*** of ITC's service offerings, *Munoz* Dkt. 1604, Resp. at 12-13 (though it provides land-based storage, truck, railcar, and pipeline services, too, *Munoz* Dkt. 1604-1), and (ii) the

4

happenstance that a vessel, while not yet at ITC's facility, was supposed to pick up the product in Tank 80-8 later in the day on March 17, 2019. Plaintiffs' contention that these circumstances are sufficient to invoke maritime jurisdiction is directly counter to the Supreme Court's clear directive that the relevant activities are the ones the "alleged tortfeasor was *engaging in*" that are alleged to be "*a proximate cause* of the incident." *Grubart*, 513 U.S. at 541 (emphases added).

The fact that ITC happens to offer vessel loading and unloading services at its Deer Park facility (among many other services) cannot be construed as a proximate cause of the March 17, 2019 incident and is far too general to support maritime jurisdiction. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 831 (1996) (defining proximate cause in admiralty as "a defendant's blameworthy act [that is] sufficiently related to the resulting harm to warrant imposing liability for that harm"). Under Plaintiffs' theory, virtually *any* activity conducted by or at a terminal facility with docks could support maritime jurisdiction. That simply cannot be the case. Likewise, nothing in Plaintiffs' allegations or the undisputed facts suggests that a vessel's anticipated arrival at the Deer Park terminal later in the day on March 17, 2019 was a proximate cause of the incident at Tank 80-8. Instead, the undisputed facts establish that the incident resulted from a leak from a pump for a land-based storage tank that occurred while ITC was circulating the product in that tank per its procedures for unloading butane trucks. There are simply no allegations, much less evidence, that ITC was engaged in loading a vessel or associated maritime activities at the time leading up to the incident or that such activities proximately caused the incident.

Placed in proper context, Plaintiffs' caselaw provides no support for their contention that maritime law governs their claims. Unlike ITC, the defendants in the cases Plaintiffs cite were actively engaged in loading, unloading, or servicing of vessels *and* those activities proximately caused the relevant incidents. Plaintiffs first point to the District of Puerto Rico's decision in *Cruz-Aponte v. Caribbean Petroleum Corp.*, asserting that "[s]imilar to the instant matter, '[t]he explosion occurred during the cargo unloading process of 278,000 gallons of highly flammable fuel at the marine dock by the vessel M/T Cape Bruny.'" *Munoz* Dkt. 1604, Resp. at 13-14 (quoting *Cruz-Aponte v. Caribbean Petroleum Corp.*, 869 F. Supp. 2d 247, 252 (D.P.R. 2012). Contrary to Plaintiffs' contention, as explained above, the circumstances at issue in *Cruz-Aponte* bear no resemblance to those at issue here – no vessel loading or unloading was occurring at the time of the March 17, 2019 incident at ITC's Deer Park facility. And, indeed, that distinction shows why *Cruz-Aponte* is inapposite. The court's decision hinged on the fact that a vessel was directly involved in the activity that gave rise to the fire. *See Cruz Aponte*, 869 F. Supp. at 252 (holding that the second prong of the maritime connection test was met because "tanker vessels like the M/T Cape Bruny are regularly used to transport cargo like chemical/oil products in international commerce, and the safe and efficient off-loading of the cargo is a primary objective of the vessel's undertaking"). There is no such connection to traditional maritime activities in this case.

Plaintiffs attempt to bolster their *Cruz-Aponte* analysis by citing to other cases where maritime jurisdiction was found to exist, *Munoz* Dkt. 1604, Resp. at 14 & n.80, but in each case, the substantial relationship to traditional maritime activity is provided by the

6

direct involvement of activities on or by a vessel.[1]  There are no similar activities here. The events leading up to the March 17, 2019 incident involved the operation and maintenance of a land-based storage tank.  As a matter of law, and consistent with the authorities cited in ITC's motion, those activities do not give rise to maritime jurisdiction. *Munoz* Dkt. 1574 at 6-10 and authorities cited therein.[2]

Because Plaintiffs fail to identify any facts to support the notion that ITC's activities alleged to have proximately caused the incident are substantially related to

---

[1] *Poret ex rel. Alyson, Seth Poret v. Louisiana Lift & Equip., Inc.*, No. Civ. A. 02-3642, 2003 WL 1338726, at *1-2 (E.D. La. Mar. 13, 2003) ("Plaintiff was *aboard* the M/V AGIA THALASSINI, which was docked midstream in the Mississippi River, unloading steel piping onto an adjacent barge using a mechanical forklift truck. . . . The unloading of a *ship's cargo* is a traditional maritime activity.") (emphases added); *In re Anderson*, 897 F. Supp. 1311, 1312, 1314 (D. Or. 1995) (Propane tanks *aboard a vessel* docked at a marina were overfilled, causing a fire that destroyed sixteen other moored vessels. "The second prong of the test, to show a substantial relationship between the general activity and maritime activity, is satisfied because . . . propane gasoline [was sold] to a vessel owner for use on a navigable waterway; the vessel was substantially related to maritime activity; and *the vessel is alleged to be a proximate cause of the incident*.") (emphasis added); *Mahony v. Lowcountry Boatworks, LLC*, 465 F. Supp. 2d 547, 553-54 (D. S.C. 2006) ("*The involvement of the Vessel is more than tangential to the nature of [the] tort claim* [] because Plaintiffs allege the Defendant was negligent in *launching the Vessel*. . . . [L]aunching a vessel* into navigable waters likewise bears a substantial relationship to traditional maritime activity.") (internal quotations omitted) (emphases added)*; Sisson v. Ruby*, 497 U.S. 358, 360, 367 (1990) ("[W]hile the *Ultorian* was docked at a marina on Lake Michigan, a navigable waterway, a fire erupted in the area of the *vessel's* washer/dryer unit. The fire destroyed the *Ultorian* and damaged several neighboring vessels and the marina. . . . Clearly, *the storage and maintenance of a vessel* at a marina on navigable waters is substantially related to 'traditional maritime activity.'") (emphases added); *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1190 (D. Haw. 2013) ("[T]he products at issue were certainly necessary *for the proper functioning of the vessels*, this court agrees . . . that this allegedly defective production bears a substantial relationship to traditional maritime activity.") (emphasis added); *Chesher v. 3M Co.*, No. 3:15-CV-02123-DCN, 2018 WL 1536573, at *3 (D.S.C. Mar. 29, 2018) (finding "a substantial relationship to maritime activity where the allegedly defective product was produced *for use on a vessel*") (internal quotations omitted) (emphasis added).

[2] Plaintiffs' efforts to distinguish ITC's authorities miss the mark.  Plaintiffs maintain the authorities are irrelevant because the plaintiffs in those cases were unable to identify "*any* activity" of the defendant related to traditional maritime activity, whereas "ITC's activities—independent and inclusive of this incident—are maritime in nature." *Munoz* Dkt. 1604, Resp. at 17 (emphasis added).  As explained above, this is incorrect both factually and legally.  ITC's activities related to the incident are not maritime in nature.  Moreover, the general activities ITC engages in at the Deer Park facility unrelated to this incident are irrelevant.  The Court must analyze the activity *giving rise* to the incident or said to be the *proximate cause* of the incident and determine whether that activity bears a substantial relationship to traditional maritime activity.  *See Grubart*, 513 U.S. at 539, 541.  ITC's authorities show unequivocally that land-based activities like those at issue here do not bear a substantial relationship to traditional maritime activity and thus cannot supply a basis for maritime jurisdiction.

traditional maritime activities, the maritime connection test is not satisfied. Plaintiffs' claims are therefore governed by Texas law and its two-year statute of limitations. Plaintiffs do not dispute that their claims are time-barred under Texas law. Their claims should be dismissed with prejudice.

## II. Even if maritime law governs, Plaintiffs' claims are barred by laches.

### A. ITC's laches defense is suitable for summary disposition.

Plaintiffs begin their laches argument by suggesting the Court should kick the can on this portion of ITC's motion because laches is "a question of fact." *Munoz* Dkt. 1604, Resp. at 18 (quoting *Union Pac. R.R. Co. v. Dunham Price Marine, LLC*, No. 06-291, 2008 WL 3539726, at *2 (W.D. La. Aug. 13, 2008)). But laches can (and should) be decided as a matter of law where there is no genuine dispute as to material fact, as is the case here. *See Barrois v. Nelda Faye, Inc.*, 597 F.2d 881, 885 (5th Cir. 1979) (affirming summary judgment in defendant's favor on laches where no genuine dispute existed as to the facts regarding excusable delay and prejudice); *Maxwell v. Foster*, Civ. A. 98-1378, 1999 WL 33507675, at *3 (W.D. La. Nov. 24, 1999) (granting summary judgment in favor of defendant on laches defense where the facts underlying the suit were known or knowable and there was no articulated excuse for delay in filing suit).

### B. Plaintiffs bear the burden of proof because they did not file suit within the analogous two-year limitations period.

Plaintiffs passingly suggest that their claims are timely by pointing to the three-year limitations periods imposed for maritime personal injury, OPA, and CERCLA claims, but they fail to cite a single case supporting this proposition. *Munoz* Dkt. 1604, Resp. at 19. As a matter of law, these limitations periods are not analogous.

The general maritime limitations period provision applies to "a civil action for

8

damages for personal injury or death arising out of a maritime tort." 46 U.S.C.A. § 30106. Plaintiffs' claims do not involve personal injury or death but only economic damages allegedly caused by the incident. *See Union Pac. R.R. Co. v. Dunham Price Marine, LLC*, No. 06-291, 2008 WL 3539726, at *3 (W.D. La. Aug. 13, 2008) ("because this case is solely a property damage claim, 46 U.S.C.A. § 30106 does not apply to the laches analysis"); *Blessinger v. Aecom*, 526 F. Supp. 3d 1319, 1324 (S.D. Fla. 2021) (declining to apply section 30106 because the suit involved "a negligence claim for property damages to the Vessel, which does not involve personal injury or death").

Neither is the OPA or CERCLA limitations period analogous because these statutory remedies are not analogous to the tort claims asserted by Plaintiffs. OPA is a strict liability regime and does not apply to this incident. *See Munoz v. Intercontinental Terminals Company LLC*, 85 F.4th 343, 347, 351-52 (5th Cir. 2023). CERCLA does not provide a private right of action other than for recovery of response costs, i.e., a wholly different remedy from the one sought by Plaintiffs here. *Id.* at 346-47.

Plaintiffs assert negligence-based claims against ITC. *Hillman* Dkt. 1. The analogous limitations period is therefore Texas' two-year limitations period for negligence. Courts have routinely held the same in similar contexts. *Agribusiness United DMCC v. Blue Water Shipping Co.*, Civil Action Case No. CV 16-15926, 2018 WL 1468160, at *12 (E.D. La. Mar. 26, 2018) ("In applying the doctrine of laches, the court first identifies the state statute of limitations that is analogous to the claim being asserted in admiralty jurisdiction."); *Kenney v. Trinidad Corp.*, 349 F.2d 832, 839 (5th Cir. 1965) ("[I]n applying the doctrine of laches, federal courts are usually guided by the period of the analogous state statute of limitations[.]"); *Morales v. Moore-McCormack*

9

*Lines, Inc.*, 208 F.2d 218, 220 (5th Cir. 1953) (while "[c]ourts of admiralty are not [] bound by common law limitations," they "adopt [those limitations] unless equitable reasons exist for not doing so.").

When employing the Texas two-year limitations period in the laches analysis, all parties agree that Plaintiffs bear the burden to show that their claims are not time barred. *Munoz* Dkt. 1604, Resp. at 18. *See also Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980); Thomas J. Schoenbaum *Admiralty and Maritime Law* § 6:36 (6th ed. 2023) (citing *Cunningham v. Interlake Steamship Co.*, 567 F. 3d 758, 761 (6th Cir. 2009)) ("[A]n analogous state or federal statute of limitations should be chosen as a benchmark by a court . . . after the statutory period, laches will be presumed and the burden shifts to the claimant to prove excusable delay and lack of prejudice.").

### C. Plaintiffs have no evidence of excusable delay or lack of prejudice.

Plaintiffs' sole proffered excuse for the untimely filing of their lawsuit is their purported belief that the OPA limitations period would apply to their claims. *Munoz* Dkt. 1604, Resp. at 20. To begin, Plaintiffs have supplied no competent summary judgment evidence to support this assertion, only argument of counsel, which is insufficient as a matter of law to carry their summary judgment burden. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.") (internal quotations omitted); *Khoja v. Just Energy (U.S.) Corp.*, No. 4:16-CV-03468, 2018 WL 11473329, at *10 (S.D. Tex. Dec. 7, 2018) (mere "argument of counsel" is "insufficient" to meet summary judgment "burden as a matter of law"). Moreover, it is a longstanding tenet that mistake of the law is no excuse, and that principle directly applies

10

here. *See Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) (counsel's erroneous interpretation of statute of limitations provision does not excuse failure to timely file federal habeas petition); *Green v. Quarterman*, No. 3:07-CV-0765-N, 2007 WL 2729909, at *2 (N.D. Tex. Sept. 19, 2007) (declining to apply equitable tolling where counsel was mistaken as to the applicable law).

Plaintiffs' unsubstantiated belief that a particular limitations period would apply does not suffice as "excusable delay" under the laches analysis. Nor does it explain why Plaintiffs waited approximately eight months to file suit after this Court issued its Report and Recommendation on OPA claims related to the incident. And, even if Plaintiffs had pursued OPA claims within the three-year limitations period for doing so, that would not have somehow revived otherwise time-barred tort claims. As a matter of law, Plaintiffs have not (and cannot) show excusable delay.

Plaintiffs have likewise failed to present competent summary judgment evidence of lack of prejudice to ITC. When laches applies and the analogous state limitations period has run, "it will be presumed that delay in bringing suit caused injury to the party sued unless the contrary is shown." *McChristian v. Lykes Bros. S. S. Co.*, 94 F. Supp. 149, 150 (S.D. Tex. 1950); *see also Morales*, 208 F.2d at 221. To overcome this presumption, Plaintiffs cannot merely allege that there was no prejudice to ITC. *Wilson v. Edwards Transp. Co.*, 120 F. Supp. 742, 744 (S.D. Tex. 1953). Rather, they must put forth specific facts showing that ITC was not injured by their delay. *Id.*

Plaintiffs admit that defense prejudice can exist when there has been "loss of records, destruction of evidence, fading memories, or unavailability of witnesses." *Munoz* Dkt. 1604, Resp. at 21 (citing *Pac. Dawn, LLC v. New Orleans Marine Service,*

11

*Inc.*, Civil Action No. 10-2852, 2012 WL 686034, at *4 (E.D. La. Mar. 2, 2012) (quoting *Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988))). Plaintiffs have failed to show the absence of such prejudice here with respect to Plaintiffs' unique claims. *See Wilson*, 120 F. Supp. at 744.

In an effort to demonstrate lack of prejudice, Plaintiffs point to *other* lawsuits related to the March 17, 2019 incident and ITC's motion to consolidate the *Hillman* matter into the *Munoz* consolidated action. *Munoz* Dkt. 1604, Resp. at 21. The fact that there are common questions of law and fact underlying the *Hillman* matter and the other cases in the *Munoz* consolidated action is no evidence of lack of prejudice as to the *Hillman* Plaintiffs' specific claims. It is those unique claims that ITC had no opportunity to address and that are susceptible to "loss of records, destruction of evidence, fading memories, or unavailability of witnesses." *Pac. Dawn*, 2012 WL 686034, at *4. Moreover, Plaintiffs overplay the purported overlap between their claims and those of the other Plaintiffs in the consolidated proceedings. Their own counsel has noted on the record that they are "definitely a separate group from the personal injury group" and "not quite the same as . . . the other commercial Plaintiffs." *See Munoz v. ITC, LLC*, No. 4:19-cv-01460, July 8, 2022 Status Conf. Tr. at 28-29.

Plaintiffs also criticize ITC for allegedly not "explain[ing] how it was prejudiced in its *defense* of the Hillman Plaintiffs' claims." *Munoz* Dkt. 1604, Resp. at 23 (emphasis in original). But that gets the burden precisely backwards. Plaintiffs bear the burden to show **lack of prejudice**; ITC bears no burden whatsoever. *Mecom*, 622 F.2d at 1215 ("Where, as here, the statute has run prior to instituting suit, the plaintiff must prove either absence of prejudice or excuse for delay to repel a claim of laches."). "Injury is

12

presumed from the statutory period of limitation in common-law actions, and, when equity adopts the statutory period, it adopts along with it the presumption of injury, until the contrary is shown." *Morales*, 208 F.2d at 220. Plaintiffs have presented no evidence that could support that showing here.[3]

## CONCLUSION

For the foregoing reasons, ITC's motion for summary judgment should be granted, dismissing with prejudice all claims asserted by Plaintiffs in the *Hillman* matter. ITC respectfully requests all such other and further relief, at law or in equity, to which it may be justly entitled.

---

[3] Plaintiffs also claim that ITC has misstated the law in asserting that lack of prejudice is demonstrated by establishing that the defendant was given notice and opportunity to prepare a defense prior to a lawsuit being filed. *Munoz* Dkt. 1604, Resp. at 24. The case Plaintiffs rely on for this proposition—*Bisso Marine Co., Inc. v. Conmaco, Inc.,* No. CIV. A. 99-0227, 2001 WL 434493, at *3 (E.D. La. Apr. 27, 2001)— improperly places the burden on the defendant to show lack of prejudice at the pleadings stage. Fifth Circuit law is clear—that burden rests with Plaintiffs, and they must put forth evidence that the delay in filing suit did no harm to ITC's defense of their claims. *See W. Wind Afr. Line, Ltd. v. Corpus Christi Marine Servs., Co.,* 834 F.2d 1232, 1234–35 (5th Cir. 1988) (finding no prejudice where plaintiff established defendants were given notice of the claim and the opportunity to protect their interests by investigating and gathering evidence necessary to mount a defense).

13

Dated:  April 3, 2024

OF COUNSEL:
Michael S. Goldberg
Texas Bar No. 08075800
Federal I.D. No. 01279
Benjamin Gonsoulin
Texas Bar No. 24099682
Federal I.D. No. 2969896
Kelly Hanen
Texas Bar No. 24101862
Federal I.D. No. 3038458
Elizabeth Furlow
Texas Bar No. 24109899
Federal I.D. No. 3402815
Mary Margaret Steinle
Texas Bar No. 24102418
Federal I.D. No. 3780887
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone:  (713) 229-1234
Facsimile:  (713) 229-1522
michael.goldberg@bakerbotts.com
ben.gonsoulin@bakerbotts.com
kelly.hanen@bakerbotts.com
elizabeth.furlow@bakerbotts.com
marymargaret.steinle@bakerbotts.com

Ivan M. Rodriguez
Texas Bar No. 24058977
Federal I.D. No. 4566982
Marc G. Matthews
Texas Bar No. 24055921
Federal I.D. No. 705809
PHELPS DUNBAR LLP
910 Louisiana, Suite 4300
Houston, Texas  77002
Telephone:  (713) 626-1386
Telecopier:  (713) 626-1388
ivan.rodriguez@phelps.com
marc.matthews@phelps.com

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Russell C. Lewis*
Russell C. Lewis
Attorney-in-Charge
Texas Bar No. 24036968
Federal I.D. No. 569523
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone:  (713) 229-1767
Facsimile:  (713) 229-2867
russell.lewis@bakerbotts.com

**ATTORNEYS FOR DEFENDANT INTERCONTINENTAL TERMINALS COMPANY LLC**

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2024, a copy of this document has been served on counsel of record for all parties via the Court's electronic filing system.

*/s/ Russell C. Lewis*
Russell C. Lewis
